UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ESTATE OF LE'QUON J. MCCOY *by special administrator* ANTOINETTE L. BROOMFIELD, ANTOINETTE L. BROOMFIELD *as assignee of the claims of* LATREDRIANA N. MCCOY, and ANTOINETTE L. BROOMFIELD,

Plaintiffs,

v.

THE CITY OF MILWAUKEE, WISCONSIN, JOSE FLORES, NIKOLAS ZENS, DAVID MICHAELS, and DOUGLAS PAVLIK,

Defendants.

Case No. 22-CV-320-JPS

**ORDER**

---

1.  **INTRODUCTION**

On August 1, 2019, Milwaukee Police Department ("MPD") Officers Jose Flores, Nikolas Zens, David Michaels, and Douglas Pavlik (collectively, the "Officer Defendants") were actively pursuing a stolen vehicle driven by Aaron Fitzgerald ("Fitzgerald"). ECF No. 1 at 3–4. When Fitzgerald blew through a red light, his vehicle struck Le'Quon McCoy's ("McCoy") vehicle, resulting in McCoy's death. *Id.* Based on these facts, McCoy[1] brings

---

[1]McCoy's mother, Antoinette Broomfield ("Broomfield"), is administrator of McCoy's estate and represents his estate in this matter. ECF No. 1 at 3. Broomfield is also named as a Plaintiff as assignee of the state law claims of McCoy's father's sole surviving heir, Latredriana McCoy, and in her own right. *Id.* at 2–3. Although all three named Plaintiffs are represented by the same person— Broomfield—the Court will refer to the named Plaintiffs collectively as "Plaintiffs" throughout this Order.

constitutional and state-law claims against the Officer Defendants and the City of Milwaukee ("Milwaukee") (collectively, "Defendants"). *Id.* at 11–12.

Defendants' first attempt at summary judgment motion practice was unsuccessful. *See* ECF Nos. 20 and 22 (Plaintiffs' motion to strike Defendants' summary judgment motion as noncompliant with the Court's dispositive motion protocols, and Defendants' notice of withdrawal of their summary judgment motion). The parties also attempted to mediate the case, but this effort was similarly unfruitful. ECF No. 26. The matter was scheduled for a jury trial in May 2023, but at the Final Pretrial Conference on May 2, 2023, the Court found that the parties were unprepared to proceed to trial and, accordingly, cancelled the trial date. ECF Nos. 13, 38. At that hearing, the Court noted that the parties had not adequately presented the issue of whether, under Federal Rule of Evidence 702 ("Rule 702"), Plaintiffs' proffered policing expert, Scott DeFoe ("DeFoe"), should be permitted to testify. ECF No. 38 at 2 (Court "emphasiz[ing] [its] gatekeeping role on expert testimony"); *see also* ECF No. 39 at 3, 5. The case has not been reset for trial at this time. The parties stipulated to file motions under Rule 702 well before the new dispositive motion deadline, which the Court set for November 30, 2023. ECF No. 43-1 at 2 and text order dated Aug. 21, 2023.

Currently before the Court is Plaintiffs' motion, under Rule 702, to permit Defoe's testimony. ECF No. 46. Defendants oppose the motion and Plaintiffs filed a reply brief.[2] ECF Nos. 48, 49. For the reasons and on the

---

[2]The Court earlier specified that "[r]esponses to [Rule 702] motions must be filed within seven (7) days [of the filing of the Rule 702 motion]" and that "[n]o reply briefs are permitted." ECF No. 10 at 8. Defendants' opposition was not timely under the Court's protocols but was timely under Civil Local Rule 7(b), which states that "[f]or all motions other than those for summary judgment or those

terms stated below, the Court will grant Plaintiffs' motion in part (with respect to one of DeFoe's proffered opinions) and deny it in part (with respect to DeFoe's other three proffered opinions). This Order also addresses, and denies without prejudice, an unrelated pending motion related to a supposed stipulation of fact contained in the parties' earlier pretrial submissions. ECF No. 35.

## 2. LEGAL STANDARD

Rule 702 governs the admission of expert testimony. This rule provides that

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and

---

brought . . . [as] Expedited Non-Dispositive Motion[s]," opposition briefs are due "within 21 days of service of the motion." Plaintiffs' reply was not permitted under the Court's protocols but was permitted under Civil Local Rule 7(c), which contemplates that reply briefs for non-dispositive and non-expedited motions are due 14 days after the opposition is served. Plaintiffs' reply was untimely under the same local rule (the second unexplained untimely filing by Plaintiffs in this case, *see infra* Section 4).

Regardless of whether these procedural shortcomings are the result of inadvertence to or confusion about the applicable rules (to be fair, the Court never made clear what briefing schedule would apply to a refiled Rule 702 motion), the Court will look past them. Because no party has moved to strike the other's filings on the basis of untimeliness or noncompliance with the Court's protocols, and, moreover, for the sake of a complete analysis, the Court has considered all three briefs in rendering the decision stated herein.

> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.[3] The proponent of expert evidence must show by a preponderance of the evidence that the expert's testimony is admissible. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). The district court plays an important role, though: it "is obliged to function as a 'gatekeeper' regarding expert testimony, which requires insuring that the proposed testimony is both relevant and reliable." *Fail-Safe, L.L.C. v. A.O. Smith Corp.*, 744 F. Supp. 2d 870, 886 (E.D. Wis. 2010) (citing *Daubert v.*

---

[3]Congress approved an amendment to the text of Rule 702, which will take effect on December 1, 2023. *See Pending Rules and Forms Amendments*, UNITED STATES COURTS, *available at* https://www.uscourts.gov/rules-policies/pending-rules-and-forms-amendments (last visited Nov. 8, 2023) (listing Rule 702 among those "projected to go into effect" on Dec. 1).

The amendment "clarif[ies] and emphasize[s] that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule." Advisory Committee's Note to April 24, 2023 Proposed Amendment to Rule 702 at 210, *available at* https://www.uscourts.gov/sites/default/files/2023_congressional_package_april_24_2023_0.pdf (last visited Nov. 8, 2023). It further clarifies that "[j]udicial gatekeeping is essential because just as jurors may be unable, due to lack of specialized knowledge, to evaluate meaningfully the reliability of scientific and other methods underlying expert opinion, jurors may also lack the specialized knowledge to determine whether the conclusions of an expert go beyond what the expert's basis and methodology may reliably support." *Id.* at 212. Although the rule, in both its original and amended forms does not "require[] the court to nitpick an expert's opinion in order to reach a perfect expression of what the [expert's] basis and methodology can support," it also "does not permit the expert to make claims that are unsupported by the expert's basis and methodology." *Id.* at 213.

The Court includes this information to address Plaintiffs' counsel's comments at the Final Pretrial Conference, which indicated his apparent belief that, in the absence of opposition to DeFoe's testimony from Defendants, the Court would not further scrutinize the admissibility of that testimony. *See* ECF No. 39 at 7 ("[T]here was a deadline set for filing Rule 702 motions, and none were filed . . ."). To the contrary, as emphasized here, the Court has an independent obligation to screen proffered experts and ensure they pass Rule 702's threshold.

*Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993) (hereinafter "*Daubert*")). This involves a "three-step analysis." *Id.* (citing *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007)).

First, the Court examines the proffered expert's qualifications, which are not limited to academic credentials, but also encompass "relevant expertise enabling him [or her] to offer responsible opinion testimony helpful to the judge or jury." *Id.* (citing *Ervin*, 492 F.3d at 904, and quoting *Tuf Racing Prods., Inc. v. Am. Suzuki Motor Corp.*, 223 F.3d 585, 591 (7th Cir. 2000)) (bracketing in original). "Rule 702 specifically contemplates the admission of testimony by experts whose knowledge is based on experience[.]" *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000) (quoting *Walker v. Soo Line R. Co.*, 208 F.3d 581, 591 (7th Cir. 2000)).

Next, the Court determines whether the "'expert's reasoning or methodologies underlying the testimony' are 'reliable.'" *Fail-Safe*, 744 F. Supp. 2d at 886 (quoting *Ervin*, 492 F.3d at 904). "The test for reliability is necessarily flexible." *Est. of Robinson ex rel. Irwin v. City of Madison*, No. 15-CV-502-JDP, 2017 WL 564682, at *8 (W.D. Wis. Feb. 13, 2017), *appeal dismissed sub nom. Est. of Robinson ex rel. Irwin v. Kenny*, No. 17-1342, 2017 WL 11814837 (7th Cir. Mar. 2, 2017). "*Daubert* identifies factors the court may consider when determining whether an expert's testimony is reliable . . . [but] the 'list of specific factors neither necessarily nor exclusively applies to all experts or in every case.'" *Id.* (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999)); *see also Fail-Safe*, 744 F. Supp. 2d at 886 (listing *Daubert* reliability "guideposts").

The analysis of whether a proffered expert's testimony is sufficiently reliable "must be 'tied to the facts' of a particular 'case.'" *Kumho*, 526 U.S. at 150 (quoting *Daubert*, 509 U.S. at 591). In any case, though, the Court is

Page 5 of 18
Case 2:22-cv-00320-JPS    Filed 11/08/23    Page 5 of 18    Document 50

responsible for "mak[ing] certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. "A witness who invokes 'my expertise' rather than analytic strategies widely used by specialists is not an expert as Rule 702 defines that term." *Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 419 (7th Cir. 2005).

Importantly, "the court is not concerned at the reliability stage with 'issues of credibility and persuasiveness,' as 'it is not the trial court's role to decide whether an expert's opinion is correct.'" *Fail-Safe*, 744 F. Supp. 2d at 887 (quoting *Deputy v. Lehman Bros., Inc.*, 345 F.3d 494, 505 (7th Cir. 2003)). The Court's focus is instead on "whether . . . the methodology underlying that testimony is sound." *Id.* (quoting *Deputy*, 345 F.3d at 505).

Finally, "a court must confirm that an expert's testimony is relevant" and will "assist the trier of fact to understand the evidence or to determine a fact in issue." *Fail-Safe*, 744 F. Supp. 2d at 887 (quoting *Ervin*, 492 F.3d at 904); *see also Est. of Robinson*, 2017 WL 564682 at *8 (citing *Daubert*, 509 U.S. at 591–92) ("[E]xpert evidence is relevant if it helps the jury understand a matter beyond the knowledge and experience of a layperson.").

### 3. ANALYSIS

Plaintiffs seek to admit DeFoe's testimony as to the following four opinions:

- That the Officer Defendants "[s]hould have [d]iscontinued the [p]ursuit," ECF No. 46 at 16 (citing ECF No. 30-1[4] at 8–9);

---

[4]Plaintiffs cite extensively to ECF No. 31 for DeFoe's expert report, *see generally* ECF No. 46, but his expert report actually appears at ECF No. 30-1.

- That MPD "[f]ail[ed] to [c]ontinually [e]valuate [r]isk," *id.* at 18–19 (citing ECF No. 30-1 at 12);
- That the Officer Defendants "[f]ail[ed] to be [a]ware of [f]actors [a]ffecting their [e]xercise of [j]udgment," *id.* at 19 (citing ECF No. 30-1 at 14–15); and
- That Milwaukee's "[o]utlier . . . [p]olicy [p]rohibiting [v]ehicle [i]ntervention [t]actics [c]reated [u]nreasonable [d]anger." *Id.* at 20–21 (citing ECF No. 30-1 at 16).

Plaintiffs' brief in support of their Rule 702 motion submits that DeFoe is qualified, by way of his own law enforcement experience and training, to render these opinions and that such opinions will be helpful to the jury, but does not offer much in the way of explanation as to how or why DeFoe's methods for arriving at these opinions are reliable. *See generally id.* As further support for their motion, Plaintiffs submit that DeFoe's testimony should be allowed because "[c]ourts frequently permit police practices expert to testify in cases where juries must decide issues related to alleged police misconduct[,]" *id.* at 7–8 (collecting cases); because DeFoe himself has been "permitted to testify regarding police training and practices in a wide variety of other situations," *id.* at 8–11 (collecting cases); and because a number of courts have admitted expert testimony on police practices in factually similar cases involving pursuits, *id.* at 11–15.

Defendants do not take issue with DeFoe's qualifications, and so the Court will not further examine that prong of the analysis. Defendants also do not respond to the several pages of briefing Plaintiffs have dedicated to listing cases in which DeFoe has been permitted to testify and in which police practices experts have been permitted to testify. Although the Court appreciates Plaintiffs' attempt to comply with its directive to provide

"every court order in which Mr. DeFoe was permitted to testify in a pursuit case" or "was precluded from testifying" in such a case, ECF No. 39 at 5, in light of the Court's conclusion that much of DeFoe's expert testimony does not pass Rule 702's reliability standard, the Court will not examine these cases further. The fact that DeFoe and similar experts have been permitted to testify in *other* courts, alone, does not give him free admission to this one nor does it relieve this Court of its gatekeeping function under Rule 702.

Defendants focus on contesting the reliability of DeFoe's methods for arriving at his proffered opinions. *See generally* ECF No. 48. Plaintiffs' reply brief responds to these reliability arguments and further argues that Defendants' reliability analysis is too rigid and that "expert opinion [is not] required to be rigorously scientific." ECF No. 49 at 13; *see also generally* ECF No. 49. The Court will examine each side's arguments in-depth as to each of the proffered opinions in turn. For the reasons stated below, DeFoe will only be permitted to testify to the first of the four opinions in his expert report.

### 3.1    Opinion One

DeFoe will be permitted to testify as to the first opinion proffered in his expert report: whether the Officer Defendants should have discontinued pursuing Fitzgerald's vehicle before he collided with McCoy's vehicle. This includes opining on whether allowing Fitzgerald to flee would have presented a danger to the public or seriously injured the Officer Defendants, and whether the Officer Defendants' conduct was consistent with the MPD vehicle pursuit policy. *See* ECF No. 30-1 at 8–12.

Defendants' criticism that this opinion is unsupported by DeFoe's report and "entirely conclusory," and therefore unreliable, ECF No. 48 at 5, is well-taken, but the Court does not agree. DeFoe explains that he arrived

at this opinion after comparing the facts of the case, including the "dangerous manner and excessive speeds" at which Fitzgerald was driving and the "evasive tactics" he used, with the MPD vehicle pursuit policy, all in light of his own law enforcement experience and training. ECF No. 30-1 at 8–9, 12. DeFoe's explanation for how and why he arrived at this opinion is minimal, but it is sufficient to persuade the Court that it is more likely than not that his opinion is "based on sufficient facts," "the product of reliable principles and methods," and resulted from "reliabl[e] appl[ication of] the principles and methods to the facts of the case. Rule 702(b)–(d).

Experts such as DeFoe are permitted to speak to professional practices as long as they stay within the bounds of "describing sound professional standards and identifying departures from them." *W. By & Through Norris v. Waymire*, 114 F.3d 646, 652 (7th Cir. 1997) (citing *Haley v. Gross*, 86 F.3d 630, 644–45 (7th Cir. 1996) and *Salas v. Carpenter*, 980 F.2d 299, 304–05 (7th Cir. 1992)). That is what DeFoe's first opinion does. The Court finds it to be sufficiently reliable to pass Rule 702's threshold. *Cf. Est. of Robinson*, 2017 WL 564682 at *10 (finding "police practices opinions sufficiently reliable" where "[the expert] applies the same methodology each time he examines police-related issues: he develops an understanding of the facts of a case, analyzes the officer's actions, compares that officer's actions to standard practices and training, and explains consistencies and/or inconsistencies between what the officer did and what applicable practices required or recommended").

This opinion is relevant to Plaintiffs' substantive due process claims against the Officer Defendants, which require a showing that the Officer Defendants were deliberately indifferent. *See* ECF No. 1 at 11; *see Flores v. City of South Bend*, 997 F.3d 725, 729 (7th Cir. 2021) ("A person seeking relief

Page 9 of 18
Case 2:22-cv-00320-JPS   Filed 11/08/23   Page 9 of 18   Document 50

under section 1983 for a violation of her Fourteenth Amendment right to substantive due process . . . must plead sufficient facts to establish that the officer acted with 'criminal recklessness—which is the same as deliberate indifference.'" (quoting *Hill v. Shobe*, 93 F.3d 418, 421 (7th Cir. 1996))).

In deciding whether the Officer Defendants violated Plaintiffs' constitutional rights, the factfinder "may consider" evidence about whether any of these defendants' conduct "complied with/violated" a "locally imposed procedure or regulation." Seventh Circuit Pattern Civil Jury Instruction 7.04, "Limiting Instruction Concerning Evidence of Statutes, Administrative Rules, Regulations, and Policies" (rev. 2017) ("*Compare Mays v. Springborn*, 575 F.3d 643, 650 (7th Cir. 2009) ("[A]lthough violation of the prison's rule against public searches was not, by itself, a violation of the constitution, it was relevant evidence on which the jury could have relied to conclude that the searches were done with an intent to harass.") (citation omitted) *with Thompson v. City of Chicago*, 472 F.3d 444, 453-55 (7th Cir. 2006) (finding no abuse of discretion in exclusion of police department general order in determining reasonableness of police conduct for Fourth Amendment purposes)."); *see also Abdullahi v. City of Madison*, 423 F.3d 763, 771–72 (7th Cir. 2005) (affirming trial court's permitting expert to testify on whether police officers' behavior complied with municipal policy).[5]

---

[5]Plaintiffs have not provided Wisconsin authority indicating that alleged violations of departmental policy or procedure are probative of, or admissible evidence of, whether the Officer Defendants were negligent under state law. *See* ECF No. 1 at 11 (alleging that the Officer Defendants "committed the common-law tort of negligent injury"). Under a basic relevancy analysis, testimony about whether the Officer Defendants complied with local policy and/or national policing standards is relevant to determining whether the Officer Defendants met the applicable standard of care. Fed. R. Evid. 401. The Court encourages the parties to further address this issue if the negligence claim is not disposed of on other grounds (such as governmental immunity).

Moreover, DeFoe's first opinion will be helpful to the jury in deciding the ultimate issues of whether the Officer Defendants acted with deliberate indifference and/or negligence. This opinion will be helpful because a police officer's decision about when and why to continue pursuing a suspect fleeing in a vehicle is not necessarily common knowledge, and members of a jury (if the case gets to a jury) may hold different and inconsistent beliefs about what is appropriate in different scenarios. *Cf. Bates v. King County*, No. C05-1348RSM, 2007 WL 1412889, at *3 (W.D. Wash. May 9, 2007) ("The appropriate response by a police officer to a person resisting arrest is not necessarily common knowledge."). DeFoe's expertise may help even out the learning curve in this regard. Accordingly, the Court finds that DeFoe's first opinion is more likely than not reliable and helpful; Defendants, of course, remain free to attack DeFoe's credibility.

### 3.2 Opinion Two

DeFoe's other opinions do not fare as well. His second opinion may have some indicia of reliability, but the Court finds that it would not be helpful to the factfinder and must be excluded. DeFoe opines, presumably as it is relevant to Plaintiffs' claims pursuant to *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), *see* ECF No. 1 at 12, that MPD "failed to continually evaluate the risk assessment criteria and determine whether the seriousness of the incident justified the continued pursuit" of Fitzgerald's vehicle. ECF No. 30-1 at 12 (also opining that MPD "failed to comply" with its own vehicle pursuit policy). Defendants again argue that this opinion has no support in the report. ECF No. 48 at 6–7. In reply, Plaintiffs point out that DeFoe did offer some explanation for this opinion, stating that, "based on [his] review of the facts in this matter, there were no

Page 11 of 18
Case 2:22-cv-00320-JPS   Filed 11/08/23   Page 11 of 18   Document 50

'calls for service' regarding a shooting involving a victim(s) nor were there 'calls for service' identifying" Fitzgerald's vehicle as stolen or involved in a crime. ECF No. 49 at 5 (citing ECF No. 30-1 at 13).[6]

It is unclear how this explanation links up with the proffered opinion. Perhaps Plaintiffs mean that, because there were no calls for service reporting Fitzgerald or his car as being involved in a crime or an act of violence, the criteria for initiating or continuing a pursuit were not met—and if the Officer Defendants or someone at MPD[7] had continually assessed the risk, they would have terminated the pursuit. But even assuming that this explanation meets Rule 702's reliability standards—a rather sketchy proposition—Plaintiffs have not shown why this opinion would be helpful to the factfinder. First, it is not meaningfully different from DeFoe's first opinion on whether the Office Defendants should have discontinued pursuing Fitzgerald's vehicle. Second, the Court does not see how this opinion offers the factfinder anything further that could not be shown through introduction of the Officer Defendants' testimony and the MPD policy itself.

---

[6] Large portions of DeFoe's report simply reproduce the relevant MPD policy, and neither DeFoe nor Plaintiffs have made any effort to utilize formatting styles to differentiate between what is DeFoe's opinion and what material underlies his opinion. This problem in combination with the frankly tenuous connection between DeFoe's explanation and his opinion make it understandable that Defendants did not identify this sentence as going to reliability.

[7] It is also unclear how MPD itself, the entity, would have assessed risk or could have failed to do so; indeed, as explained later, the policy in question here *did* provide for continual risk assessment as well as grounds for terminating a pursuit. Perhaps DeFoe means that the Officer Defendants failed to continually assess risk, or that their supervisors (who are not named as Defendants) did not do so. Plaintiffs have not clarified what significance, if any, they attach to DeFoe's wording.

The MPD policy at issue states, "[p]olice members who are engaged in a pursuit . . . must continually evaluate the risk assessment criteria and determine whether the seriousness of the incident justifies continuing the pursuit." ECF No. 30-1 at 12 (citing MPD pursuit policy at Section 660.20(G)(1) and (3)). It separately lists the risk assessment criteria. *Id.* at 9–10 (citing MPD pursuit policy at Section 660.10).[8] The policy speaks for itself; there is no dispute that it requires continual checking-in about the necessity of pursuit, and what factors are to be considered. Whether the Officer Defendants did, in fact, evaluate the risk assessment criteria can be established through their testimony. DeFoe's first opinion includes analysis of whether the Officer Defendants' analysis and application of those risk assessment criteria (articulated in the MPD pursuit policy at Section 660.10) were appropriate. The ultimate determination of whether the Officer Defendants' actions—whether complying with or departing from each dimension of the MPD policy—amounted to a constitutional violation is for the factfinder to decide. Based on how Plaintiffs have presented their case and their Rule 702 motion, the Court does not perceive that DeFoe's second opinion adds any measure of helpfulness. Accordingly, it will be excluded. Rule 702(a).

### 3.3   Opinion Three

DeFoe's opinion that the Officer Defendants failed to be aware of psychological factors impacting their decision to continue or terminate pursuit will also be excluded. Those "psychological factors" are outlined in a bulleted list of "attitudes and emotions [that] influence judgment and

---

[8]Neither DeFoe nor Plaintiffs explicitly state that these are indeed the "risk assessment criteria" to which DeFoe refers, but the Court cannot discern any other portion of the policy that would be considered a set of risk assessment criteria.

decision-making" and "[p]hysiological responses" (indicating what, Plaintiffs do not say) and other potential causes of those responses. ECF No. 30-1 at 15. DeFoe says that he knows about these factors because of his experience, but otherwise makes no reference whatsoever to the sources underlying his conclusion. Defendants challenge this opinion as unreliable, lacking authority or reference to authorship, and "complete insanity" that is possibly the "product of pure fabrication, fantasy, or self-serving bias." ECF No. 48 at 7.

While the Court does not adopt Defendants' invective, it agrees that DeFoe's third opinion is glaringly deficient. Psychological phenomena are measurable, and an expert making generalized claims about how police officers tend to experience such phenomena can and should make an effort to demonstrate that his claims have some grounding in empirical study and not just his own anecdotes. DeFoe has made no attempt to do so. While the Court respects that Defoe has many years of law enforcement experience, the report provides no basis to connect that experience to the proffered opinion. Why does DeFoe think these things and what makes him qualified to render opinions on psychological phenomena? What studies establish that these psychological responses occur frequently for officers and drive their decision-making? Do national standards or local policies require or recommend that officers consider these psychological factors as they are making decisions in the field? DeFoe provides no answer to any of these questions. The Court has no basis to assess the reliability of this opinion and therefore it must be excluded. Rule 702(b)–(d).

### 3.4 Opinion Four

Finally, DeFoe's fourth opinion, that MPD failed to establish policies to permit patrol officers, such as the Officer Defendants, to terminate

<em>Page 14 of 18</em>

vehicle pursuits in additional and perhaps safer ways, must be excluded. He opines that, had these options been available to the Officer Defendants, they "would have attempted to utilize them" to apprehend Fitzgerald's vehicle," thus preventing the fatal collision. ECF No. 30-1 at 16. DeFoe does not point to any national standards or authorities dictating that police departments should have such policies. He points to his own law enforcement experience as informing this opinion, but has not pointed to any police department that does have such a policy, or any instance in which such a policy was successfully deployed. The Court again has no basis to assess the reliability of this opinion and it must be excluded. Rule 702(b)–(d).

**4.     ADDITIONAL PENDING MOTION**

As part of their submissions before the originally scheduled May 2023 trial, the parties filed a stipulation of facts. ECF No. 32-8. This submission includes the following statement: "At all times during the pursuit, defendant officers used due care while operating their squad[] [cars]." *Id.* at 4. Shortly after this document was filed, Plaintiffs moved to correct the parties' stipulation by omitting this statement. ECF No. 35. Plaintiffs averred that including this statement was a mere "scrivener's error" because it had been included in their first draft of the stipulation, which itself was based on one of Defendants' earlier submissions, and the statement about the Defendant Officers using "due care" was mistakenly not omitted from later versions of the stipulation. *Id.* at 2. Plaintiffs acknowledge that the inclusion of this statement was a "serious error" because the question of due care is one of the "central liability questions presented by the[ir] state law claims . . . ." *Id.* Defendants opposed the motion on the basis that Plaintiffs did not confer with Defendants in

Page 15 of 18

Case 2:22-cv-00320-JPS    Filed 11/08/23    Page 15 of 18    Document 50

advance of filing the motion, and moreover had multiple chances to address their "scrivener's error," but failed to do so. ECF No. 37. Plaintiffs filed a reply brief—two weeks after it was due under Civil Local Rule 7(c) and without any attempt at explaining the filing delay—reiterating the arguments in their opening motion.

The Court will deny Plaintiffs' motion without prejudice. Plaintiffs' counsel almost certainly could and should have realized this error in the stipulation before it was submitted with the parties' pretrial materials; his lapse in attention to detail is concerning. However, in light of the pending dispositive motions deadline—which will require the parties to confer and submit a single statement of undisputed facts and an enumerated list of any factual disputes, *see* ECF No. 10 at 4—it would be premature for the Court to opine as to which facts Plaintiffs did and did not stipulate.[9] If one or both parties files a motion for summary judgment, they should hash out this issue in preparing the fact statements to accompany that motion. If no dispositive motions are filed, if dispositive motions reveal factual disputes on the question of "due care," or if the case is otherwise reset for trial, the parties may revisit the issue of which facts are properly the subject of a stipulation as they are preparing pretrial submissions.

## 5.    CONCLUSION

For the reasons and on the terms stated herein, Plaintiffs' motion under Rule 702 to permit the testimony of their policing expert, Scott DeFoe, is granted in part and denied in part. The effect of this decision applies with

---

[9] As an aside, whether the above statement, which is a legal conclusion, is properly the subject of a stipulation is a question that the parties' submissions does not answer. *See Saviano v. C.I.R.*, 765 F.2d 643, 645 (7th Cir. 1985) ("[W]hile the parties are free to stipulate to the factual elements of the transactions, the court is not bound by the legal conclusions implied by the terminology utilized.").

equal force to summary judgment motions, to the extent those will cite or rely on DeFoe's testimony, and, should this matter proceed to trial, to any testimony DeFoe might give at that time.

Plaintiffs have also filed a motion to amend Defoe's expert report, ECF No. 30-1, in order to clarify that he has reviewed additional materials since its initial submission; Defendants do not oppose that motion. ECF No. 47. The Court will grant the motion and permit Plaintiffs to file an amended expert report from DeFoe at the appropriate time, whether that is alongside a dispositive motion or with pretrial submissions. Any amended report from DeFoe shall be consistent with the Court's decision herein—that is, it should only include the opinion to which Defoe has been permitted to testify. For the avoidance of doubt: any amended report from DeFoe may provide additional information as to the one opinion to which DeFoe has been permitted to testify, but if Plaintiffs intend to offer a new or different opinion by DeFoe than what is expressed in his original expert report, that opinion would be subject to an additional round of Rule 702 analysis.

Finally, Plaintiffs' supplemental motion to amend or correct the statement of stipulated facts included with the parties' pretrial submissions, ECF No. 35, will be denied without prejudice.

Accordingly,

**IT IS ORDERED** that Plaintiffs the Estate of Le'Quon J. McCoy by Special Administrator Antoinette L. Broomfield, Antoinette L. Broomfield as assignee of the claims of Latredriana N. McCoy, and Antoinette L. Broomfield's motion to permit the testimony of Scott Defoe, ECF No. 46, be and the same hereby is **GRANTED in part** and **DENIED in part** as stated in this Order;

**IT IS FURTHER ORDERED** that Plaintiffs the Estate of Le'Quon J. McCoy by Special Administrator Antoinette L. Broomfield, Antoinette L. Broomfield as assignee of the claims of Latredriana N. McCoy, and Antoinette L. Broomfield's unopposed motion to amend Scott Defoe's expert report, ECF No. 47, be and the same hereby is **GRANTED**; any amended expert report shall be consistent with the terms of this Order; and

**IT IS FURTHER ORDERED** that Plaintiffs the Estate of Le'Quon J. McCoy by Special Administrator Antoinette L. Broomfield, Antoinette L. Broomfield as assignee of the claims of Latredriana N. McCoy, and Antoinette L. Broomfield's motion to amend or correct the statement of stipulated facts included with the parties' pretrial submissions, ECF No. 35, be and the same hereby is **DENIED without prejudice**.

Dated at Milwaukee, Wisconsin, this 8th day of November, 2023.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge