

**CITY OF BROOKFIELD POLICE DEPARTMENT**

**POLICY NUMBER:** 6.02

**POLICY:** Vehicle Pursuits

**REPLACES POLICY NUBMBER:** 41.01

**AMENDS POLICY DATE:** 08-09-2021

**WILEAG STANDARDS:** 6.1.4 – 6.1.4.1 – 6.1.4.2 – 6.1.4.3 – 6.1.4.4 – 6.1.4.5 – 6.1.4.6 – 6.1.4.7 – 6.2.11.1 – 6.2.11.2 – 6.2.11.3 – 6.2.11.4

**ISSUING AUTHORIY:** JAMES P. ADLAM
CHIEF OF POLICE

**ORIGINAL ISSUE:** 10-03-77

**LAST REVISON:** 06-15-22

**LAST REVIEWED:** 06-15-22

**DISSEMINATION:** Sworn Personnel

**TOTAL PAGES:** 12

## I.  PURPOSE

The purpose of this policy is to establish guidelines for making decisions regarding vehicular pursuits in compliance with Wisconsin Statute 346.03(6) and includes intervention options and review procedures.

## II.  POLICY

It is the policy of the City of Brookfield Police Department that all pursuits and emergency vehicle operations shall be conducted in accordance with State Statutes.  Vehicular pursuit of fleeing suspects can present a danger to the lives of the public, officers, and suspects involved in the pursuit.  All personnel shall observe and exercise due regard for the safety of all persons, and the principles of safety never become secondary.  It is the policy of the City of Brookfield Police Department to manage the execution of vehicle pursuits.

## III.  DEFINITIONS

A. <u>Vehicle Pursuit</u>   An active attempt by an on-duty officer, in an authorized emergency vehicle, to apprehend a fleeing suspect who is actively attempting to elude the police.

B. <u>Authorized Emergency Vehicles</u> - A motorized vehicle of this Department equipped with operable emergency equipment as designated by State law which gives both audible and visual signal using red and blue lights, head light flashers (if available) and a siren.

C. <u>Pursuit Vehicles</u> - Are police vehicles, operating as authorized emergency vehicles, directly involved in a pursuit;

1. <u>Primary Unit</u> - The police vehicle that initiates a pursuit or any unit that assumes control of the pursuit as the lead vehicle.

Exhibit 31

**VEHICLE PURSUITS POLICY 6.02**

    2. <u>Secondary Unit</u> - Any police vehicle, which becomes directly involved as a backup to the primary unit.

    3. <u>Additional Units</u> – Any police vehicle that is involved directly in the pursuit that is not the primary or secondary unit. The nature of the offense and potential for continued flight and resistance may require these additional resources.

D. <u>Emergency Vehicle Operation</u> - Operation of a police vehicle, giving visual signal by means of flashing, oscillating or rotating red, or red and blue lights and audible signal by means of a siren in accordance with S.S. 346.03.

E. <u>Street Paralleling</u> - The operation of a police vehicle on a street parallel to the street on which a pursuit is occurring.

F. <u>Imminent Threat -</u> Imminent threat means that there is a significant likelihood, based upon known facts and reasonable inferences, of death or serious injury if apprehension is delayed.

G. <u>Deadly Force</u> – The intentional use of a firearm or other instrument that creates a high probability of death or great bodily harm.

H. <u>Channeling</u> - Control Alternatives tactic used to divert a driver to a preferred location. The goal is to leave the driver with only one available route to travel, by blocking off alternatives. This allows officers to attempt to divert a fleeing driver out of a more populated area, or to an area that would be more conducive to an induced stop.

I. <u>Tire Deflation Devices</u> - Control Alternatives tactic involving a commercially available device used to puncture, thus deflating the tires on a fleeing vehicle to induce the driver to stop and surrender. The City of Brookfield utilizes Stop Sticks in accordance with the Tire Deflation Devices policy (see policy 41.02).

J. <u>Pursuit Intervention Technique (PIT)</u> – A trained Protective Alternative tactic that involves the controlled contact of a police vehicle with the pursued vehicle. It is intended to cause the pursued vehicle to spin out, impeding further flight, and ending the pursuit.

K. <u>Moving Roadblock</u> – Protective Alternative tactic involving the use of one or more moving police vehicles to surround the fleeing vehicle while gradually slowing police vehicles in an effort to induce the fleeing vehicle to a safe, gradual stop.

**VEHICLE PURSUITS POLICY 6.02**

L. Roadblock (With Escape Route) – Protective Alternative tactic involving the placement of an object or objects on the roadway in such a manner as to impede or alter the normal flow of traffic in order to induce a fleeing vehicle to stop.

M. Roadblock (No Escape Route) - Deadly Force tactic involving the use of one or more police vehicles, or other obstruction, to completely block a roadway so that any vehicle approaching the roadblock will be forced to stop or crash (deadly force must be justified, see Use of Force policy 01.06).

N. Ramming - Deadly Force tactic involving the deliberate contact by a Police vehicle in such a manner as to prevent further operation of the fleeing vehicle (deadly force must be justified, see Use of Force policy 01.06).

O. Pursuit Control – The law enforcement agency that manages and supervises the actual pursuing units. The agency with pursuit control is generally the agency whose unit is in the primary position.

P. Radio Control – A Dispatch Center that controls radio communications with a pursuing unit(s). Waukesha County Communications Center (WCC) or other PSAP (Public Safety Answering Points) that communicates with a pursuing unit shall maintain radio Control.

Q. Controlling Supervisor - A supervisor who directly oversees/coordinates a vehicle pursuit from time of notification to termination.

Attached Addendum on Intervention Options as Applied to Emergency Vehicle Operation

## IV. PROCEDURE

A. General Pursuit Guidelines - In any pursuit, safety considerations should outweigh considerations for apprehension. When the risk and danger to officer(s) involved, or to bystanders or innocent third parties outweighs the value of immediate apprehension, then the pursuit must not be initiated or be terminated despite the heinousness of the offense or the violence associated with the act committed by the fleeing subject.

B. Pursuit Initiation

1. Officers and supervisors must first identify the offense, the seriousness of the offense, and the need for immediate apprehension.

3

**VEHICLE PURSUITS POLICY 6.02**

2. A law enforcement officer in an authorized vehicle may initiate a vehicle pursuit when the subject vehicle is knowingly fleeing or actively attempting to elude and refusing to stop when properly directed to stop.

3. Officers need to use the objective reasonableness standards when assessing whether or not to initiate, become involved in or continue a pursuit. If the suspects driving behavior creates a more significant risk to public safety than the original offense, and officers are either precluded from using intervention techniques to induce the vehicle to stop or induce to stop techniques have been or would be ineffective, officers and supervisors should consider terminating the pursuit..

4. Personnel shall not initiate or actively participate in a Pursuit or associated High Risk Traffic Stop with any civilian personnel in the authorized emergency vehicle such as prisoners, witnesses, victims, a ride-along, reserves, civilian department members etc...

C. Pursuit Continuation

1. In determining whether or not to continue a pursuit, the officer shall consider the following:

   a. The seriousness of the offense.

   b. Road, weather, and environmental conditions.

   c. Population density and vehicular and pedestrian traffic.

   d. The relative performance capabilities of the pursuit vehicle and the vehicle being pursued.

   e. Information received from officers that have first-hand knowledge of specific articulable facts that directly involve the pursuit.

   f. Dangerousness posed to officers and the public, created by the operators driving behavior.

2. After stopping the pursued vehicle, officers shall utilize a High Risk Traffic Stop technique or other trained tactic based upon known details of the offense or offender(s) to take a suspect(s) into custody.

D. Termination of Pursuits

1. The primary pursuing unit shall continually re-evaluate and assess the pursuit situation and terminate the pursuit if the officer reasonably

4

### VEHICLE PURSUITS POLICY 6.02

believes the risks associated with continued pursuit are greater than the public safety benefit of making an immediate apprehension. Additionally, law enforcement officers will terminate vehicle pursuits under any of the following conditions:

a. The primary pursuit unit or a supervisor terminates the pursuit at any time.

b. When the distance between pursuing vehicles and suspect vehicle is so far that continued pursuit is unreasonable or the suspect vehicle's location is unknown.

c. When the officer's vehicle or emergency equipment malfunctions.

d. When it is necessary to stop and render aid to an injured person or persons, and no other unit is available to do so.

e. The suspect's identity or the elements of the offense have been established and immediate apprehension is no longer necessary to protect the community.

2. When the pursuit is terminated officers shall:

a. Acknowledge by repeating over the radio channel a termination order made by a supervisor, "Bravo _ _ _ terminate the pursuit, all Bravo units terminate," "Bravo _ _ _ is terminating the pursuit."

b. Air over the radio channel their decision to terminate the pursuit "Bravo _ _ _ is terminating the pursuit, all Bravo units terminate."

c. Officers involved in the pursuit return to posted speed limits, turn off emergency lights and sirens and continue non-emergency in the last known direction of suspect travel for a reasonable distance checking for crashes or other issues caused by the fleeing vehicle.

   i. The officers' body worn camera will remain activated while checking the suspects last known direction of travel.

E. Roles and Restrictions Applicable to Vehicles Involved in a Pursuit

1. All emergency vehicle operations shall be conducted in compliance with applicable traffic laws, regulations, and Wisconsin Statute 346.03.

2. When engaged in a pursuit, officers shall drive with due regard for the safety of other road users and pedestrians.

5

**VEHICLE PURSUITS POLICY 6.02**

3. Upon engaging in a pursuit, the pursuing officer shall activate the unit's emergency lights and siren. Both the emergency lights and siren shall remain activated during the entire pursuit.

4. Only two (2) police vehicles should be in direct pursuit (primary and secondary) unless overriding factors such as seriousness of offense, number of suspects, follow on tactics or directed by a supervisor warrant additional police vehicles direct involvement.

    a. Additional police vehicles may street parallel, or position themselves to assist, engage in foot pursuits, establish perimeters or observe escape routes.

    b. The number of police vehicles involved shall be commensurate with the seriousness of the situation.

5. Whenever possible, a marked patrol unit shall be used as the primary pursuing unit. When an unmarked emergency vehicle initiates a pursuit, the unmarked unit should relinquish the primary and secondary positions if marked units become engaged in the pursuit.

    a. Pursuing police vehicles, unless directed to, shall not pass other pursuing police vehicles.

F. Communications Center - Officer / Supervisor Responsibilities

1. Waukesha County Communications Center (WCC) shall maintain radio control on the Departments main channel and or the Chase channel while initiating necessary patches per WCC's protocols. This shall apply to pursuits with in the City of Brookfield and those that leave the city.

2. The primary unit, until relieved by the secondary unit, shall provide radio updates of required information (see G.1.).

3. During any pursuit involving the Department, the on-duty supervisor(s) shall monitor the radio channels being utilized and maintain control of all Department personnel involved in the pursuit.

4. If the controlling supervisor decides to terminate a pursuit they shall immediately broadcast that decision on the radio channel (see D.2.a.) and verify all involved units confirmations.

5. WCC shall notify the on duty supervisor and patrol units of pursuits entering the City of Brookfield from outside jurisdictions.

**VEHICLE PURSUITS POLICY 6.02**

6. A pursuit initiated by our agency may continue into another jurisdiction and continue to comply with all applicable state statutes and guidance of this policy. If the pursuit leaves the City of Brookfield and another jurisdiction takes over then our units and supervisor shall give control to the other law enforcement agency.

G. Designated Primary, Secondary and Support unit responsibilities

1. Officers may be directly involved as the primary unit, secondary unit and or support units.

2. Upon engaging in a pursuit, the officer shall activate their body worn camera, advise WCC of unit number, reason for the pursuit, location, direction and speed of the pursuit, the description of the pursued vehicle, traffic and road conditions and description of occupants if known.

3. The primary unit or then secondary unit shall keep WCC updated on the pursuit outlined under F.2. of the information under G.2.

4. The secondary unit, shall notify dispatch of their involvement, and when possible assume radio communications from the primary pursuit unit. The secondary unit is then responsible for providing all essential updated information required by policy. The secondary unit shall follow the primary unit at a safe distance.

5. Supporting units shall notify WCC of their unit number and nature of involvement with proper notification and coordination with pursuing units regarding actions such as:

   a. Positioning for high risk stop

   b. Tire deflation device deployment (per policy 41.02).

   c. Other intervention options outlined under the addendum.

6. If the pursuit leaves the city and another jurisdiction's squad takes over the primary position in the pursuit, the City of Brookfield Police squad shall take up the secondary position until such time that there are at least two squads from the other jurisdiction in place.

H. Supervisory Responsibilities

7

## VEHICLE PURSUITS POLICY 6.02

1. The supervisor assuming responsibility for the pursuit becomes the "controlling supervisor." The controlling supervisor continually evaluates the pursuit in accordance to this policy, monitors incoming information, coordinates and directs activities as needed to ensure that proper procedures are followed, and shall have the discretion to terminate the pursuit.

2. The controlling supervisor shall retain control over the pursuit until the suspect(s) is apprehended, the pursuit is turned over to another agency, or the pursuit is terminated.

3. When pursuit control is turned over to another law enforcement agency, the controlling supervisor shall ensure City of Brookfield Police Department officers are no longer engaged in the pursuit. Unless the pursuing department requests mutual aid for assistance or the controlling supervisor recognizes the seriousness of the offense(s) implies mutual aid or vested City of Brookfield interest.

4. If an accident or injury occurs because of the pursuit or the arrest, a supervisor must respond to that location to initiate an investigation and manage the scene.

5. The controlling supervisor, or designee, shall respond to the point of conclusion to render scene management, conduct investigations and ensure reports are initiated.

6. If the pursuit involves the death of an individual from an act or omission of an officer, or is likely to result in death, ensure adherence to Policy 41.22.

7. The controlling supervisor, prior to the end of their shift or as soon as possible, completes and forwards through the chain of command to the Chief of Police or designee for review the following:

   a. City of Brookfield pursuit review report

   b. Copies of all involved officers reports

   c. Copies of all involved officers body worn cameras

   d. Copy of TraCS Agency Pursuit Report

   e. Copy of Emergency Vehicle Involvement - MV3347 (if applicable)

   f. Copy of the WCC audio

8

      g. Copy of STOC Video (if applicable)

I. Forcible Stopping / Roadblocks

1. Intervention tactics such as ramming, partial roadblocks, and Tire Deflation Device (TDD) applications have associated hazards and may only be used by officers trained in their use and it is safe to perform. Supervisory preauthorization shall be sought before use, when possible. Pursuing units must be advised of the location of any roadblocks or deployed stop sticks before the pursuit reaches that area. Officers decision making process will include the presence of vehicular or pedestrian traffic, time of day, physical aspects of the roadway, and other environmental factors. The location selected should provide the greatest degree of safety for officers and the public.

2. When employing a roadblock with escape route, all squad emergency lights must be activated. If the TDD is deployed, attempt to funnel the suspect vehicle over the TDD by utilizing a roadblock with escape route. Officers shall only utilize a roadblock with escape route or TDD when they have a reasonable amount of time to deploy and remove themselves to a safe distance or to adequate cover.

      a. TDD systems are assigned to designated patrol vehicles. Trained officers with sufficient time to deploy the TDD shall do so in accordance with use, safety considerations and deployment guidance set forth by the Tire Deflation Devices Policy 41.02.

3. A moving roadblock is an attempt to stop a fleeing vehicle by positioning a squad in front of or to the side(s) of the pursued vehicle. This method shall only be utilized for slow speed (less than 30 miles per hour) pursuits and when safe to do so.

4. Only department members with advanced practical training in the use of the Pursuit Intervention Technique (PIT) are authorized to use the technique. Trained officers should only use PIT when it is safe to do so. Supervisor authorization should be requested if time permits.

      a. PIT is a trained tactic that involves the controlled contact of a police vehicle with the fleeing vehicle. It is intended to cause the suspect vehicle to spin out, impeding further progress and ending the pursuit.

b. A trained officer conducts the PIT tactic by positioning their squad so that its front corner is next to the pursued vehicle's rear corner. The officer matches speed with the suspect, makes gentle contact between the vehicles, and then steers their squad into the pursued vehicle. This causes the pursued vehicle to spin while the officer is able to maintain control of the squad.

c. The successful completion of the PIT maneuver can cause the suspect to lose control of their vehicle; therefor officers must carefully consider the location to conduct the PIT and the presence of pedestrian and vehicle traffic before executing the maneuver.

d. Upon successful completion of the PIT maneuver officers shall set themselves into positions for a high-risk traffic stop or other trained tactic based upon known details of the offense or offender(s).

e. PIT maneuvers employed at high speeds have a greater risk of injury. PIT maneuvers employed at speeds greater than 35 mph are generally not allowed unless there are special circumstances or when the severity of the offense justifies the increased risk.

f. Restrictions:

  i. The maneuver may only be employed when the risk of harm to others resulting in the continuation of a pursuit is greater than the risk of harm to others in the employment of the PIT.

  ii. The PIT maneuver requires solid contact between the squad and suspect vehicle. A PIT maneuver should not be employed when there is a large difference in bumper height between vehicles that would prohibit solid contact. PIT maneuvers should not be utilized on pickups or similar type vehicles with a camper shell or camper.

  iii. The PIT maneuver shall not be used on motorcycles unless the use of deadly force is justified.

  iv. Whenever possible, employment of the PIT tactic should be coordinated with the shift supervisor and additional officers/squads.

VEHICLE PURSUITS POLICY 6.02

    v.  Officers shall not employ the PIT tactic when transporting prisoners or citizens.

5.  A total roadblock, with no escape route, is the complete obstruction of the roadway that does not allow the pursued vehicle an escape route. Total roadblocks shall only be employed when deadly force is justified (see Use of Force Policy 01.06).

6.  The intentional ramming of a fleeing vehicle is considered deadly force and governed by the Use of Force Policy 01.06.

7.  The Use of Force Policy 01.06 governs discharging firearms at or from a moving vehicle.

J.  Other-Jurisdictional Pursuits

1.  When another agency is in pursuit outside of our city and the pursuit is proceeding towards our jurisdiction, the duty watch commander can authorize patrol units to use intervention tactics in accordance with this policy to protect lives within the City of Brookfield.

2.  City of Brookfield officers will not become directly involved in pursuits originating outside our jurisdiction that do not meet our pursuit criteria unless approved by a supervisor with special circumstances present.

K.  Procedure for Reporting and the Administrative Review of a Pursuit

1.  Any officer or supervisor(s) that is engaged in any aspect of a pursuit will complete a written narrative or supplemental report detailing their involvement and pertinent circumstances. The appropriate supervisor to determine if this policy was complied with in order to detect and correct any training deficiencies shall review reports.

2.  The Chief of Police shall assign the appropriate department member who files pursuit reports required by the State.

3.  If an emergency vehicle was damaged due to the officer intentionally colliding with another vehicle, or the vehicle driver intentionally colliding with an emergency vehicle, a supervisor shall ensure the Emergency Vehicle Involvement form (MV3347) is completed and submitted. This form removes the crash from the officer's driving record.

4.  If a department vehicle was damaged because of the vehicle pursuit, a supervisor shall ensure the City of Brookfield Risk Management and equipment repair forms are completed as appropriate.

**VEHICLE PURSUITS POLICY 6.02**

5. If a department vehicle was damaged because of an accident during the vehicle pursuit, an outside agency shall be requested to investigate the accident and complete any required MV4000.

6. Pursuant to Wis. Stat. 85.07 (8)(b), the Director of Services shall transmit pursuit reports to the Wisconsin State Patrol via the WILENET system no later than August 15th of each year for pursuits engaged in during the preceding 12 months.

L. Training

1. All sworn personnel shall be given initial and periodic update training in the Department's Pursuit Policy.

2. All sworn personnel are required to attend four hours of biennial Pursuit Training Curriculum as required in Wis. Stats. 165.85(4)(bn)1m.

_____   6-15-2022
JAMES P. ADLAM                    DATE
CHIEF OF POLICE

JPA: BF/AG

Attachments
1. Addendum – EVOC Intervention Options

VEHICLE PURSUITS POLICY 6.02

## ADDENDUM

**Intervention Options**

**Table 1: Intervention Options as Applied to Emergency Vehicle Operation**

| Mode | Tactic(s) | Purpose |
|---|---|---|
| **Presence** | Authorized emergency vehicle | To present a visible display of authority |
| **Dialogue** | Emergency lights<br>Siren<br>Communication with dispatch<br>Approach contact | To persuade |
| **Control Alternatives** | Multiple units<br>Tire Deflation Devices<br>Barricades<br>Channelization<br>Non-Approach Contact | To overcome passive resistance, active resistance, or their threats |
| **Protective Alternatives** | Pursuit intervention technique (PIT)<br>Moving roadblock (Boxing-in)<br>Roadblocks (with escape route)<br>High-risk contact | To overcome continued resistance, assaultive behavior, or their threats |
| **Deadly Force** | Ramming<br>Roadblock (no escape route)<br>Shooting from a moving vehicle<br>High-risk contact with shots fired | To stop an imminent threat |

13

CBPD OPEN RECORDS RELEASE



# Vehicle Pursuits

## 307.1  PURPOSE AND SCOPE

Vehicle pursuits expose innocent citizens, law enforcement officers and fleeing violators to the risk of serious injury or death. The primary purpose of this policy is to provide officers with guidance in balancing the safety of the public and themselves against law enforcement's duty to apprehend violators of the law (Wis. Stat. § 346.03(6); Wis. Admin. Code LES § 3.07).

Another purpose of this policy is to minimize the potential for pursuit-related crashes. Vehicle pursuits require officers to exhibit a high degree of common sense and sound judgment. Officers must not forget that the immediate apprehension of a suspect is generally not more important than the safety of the public and pursuing officers.

See attachment: Vehicle Pursuits Procedures.pdf

### 307.1.1  PHILOSOPHY

Deciding whether to pursue a motor vehicle is a critical decision that must be made quickly and under difficult and unpredictable circumstances. In recognizing the risk to public safety created by vehicle pursuits, no officer or supervisor shall be criticized or disciplined for deciding not to engage in a vehicle pursuit due to the risk involved. This includes circumstances where department policy would permit the initiation or continuation of the pursuit. It is recognized that vehicle pursuits are not always predictable and decisions made pursuant to this policy will be evaluated according to the totality of the circumstances reasonably available at the time of the pursuit.

Officers must remember that the most important factors to the successful conclusion of a pursuit are proper self-discipline and sound professional judgment. Officers conduct during the course of a pursuit must be objectively reasonable; that is, what a reasonable officer would do under the circumstances. An individual's unreasonable desire to apprehend a fleeing suspect at all costs has no place in professional law enforcement.

## 307.2  DEFINITIONS

Definitions related to this policy include:

**Vehicle pursuit** - An event involving one or more peace officers attempting to apprehend a suspect who is attempting to avoid arrest while operating a motor vehicle by using high speed or other evasive tactics, such as increasing the speed of the vehicle, extinguishing the lights of the vehicle, disregarding traffic warning signs, stop signs, red lights, driving off a roadway, turning suddenly or driving in a legal manner but willfully failing to yield to an officer signal to stop (Wis. Stat. § 85.07(8)(a)). (Insert state definition of vehicle pursuit)

An active attempt by a Law Enforcement Officer (LEO), on-duty in an authorized law enforcement vehicle to apprehend one or more occupants of a moving motor vehicle, providing the driver of such vehicle is aware of the attempt and is resisting apprehension by maintaining or increasing his or her speed or by ignoring the LEO's attempt to stop him or her.

Copyright Lexipol, LLC 2022/08/11, All Rights Reserved.
Published with permission by Green Bay Police Department

Case 2:22-cv-00634-LA    Filed 11/22/23    Page 15 of 150    Document 62-1

Exhibit 32

## Vehicle Pursuits

State statute 346.04(2t) prohibits a motorist from failing to stop for an officer's visible and/or audio signal to stop, which may result in a slow speed follow. This may occur when an officer attempts to stop an impaired motorist, elderly motorist with diminished faculties, or a person suffering a medical emergency. In such cases, officer's may continue to follow the motorist and employ trained induced to stop techniques (e.g., boxing-in technique) to bring the motorist to a safe and controlled stop. For the purposes of this policy, incidents of this nature are not considered vehicle pursuits. However, if the actions of the motorist change, such as increasing their speed, extinguishing lights, or making evasive maneuvers to elude, then the criteria for initiation and continuation outlined in this policy shall apply.

**Blocking or vehicle intercept** - A slow-speed coordinated maneuver where two or more law enforcement vehicles simultaneously intercept and block the movement of a suspect vehicle, the driver of which may be unaware of the impending enforcement stop. The goal is containment and preventing a pursuit. Blocking is not a moving or stationary road block.

**Boxing-in / Moving Roadblock-** A tactic designed to stop a violator's vehicle by surrounding it with law enforcement vehicles and then slowing all vehicles to a stop.

**Ramming** - A non-trained deadly force technique in which abrupt and  deliberate act of impacting a violator's vehicle with another vehicle to functionally damage or otherwise force the violator's vehicle to stop.

**Roadblocks** - A tactic designed to stop a violator's vehicle by intentionally placing a vehicle or other immovable object in the path of the violator's vehicle.

**Closed Roadblocks**-No alternate route provided.  If the suspect does not voluntarily stop, they will crash with the great potential for injury and death to the suspect and others in the area.  Use of a Closed Roadblock is considered "Deadly Force" and should only be implemented when use of deadly force would otherwise be justified.

**Open Roadblock-**The roadway is either not completely blocked, or leaves an alternate route (or run out lane) for the suspect vehicle to take. The intention is to provide a show of force to convince the suspect that escape is improbable, thereby inducing them to stop.  Open roadblock is considered an intermediate use of force.

**Tire deflation device, spikes or tack strips** - A device that extends across the roadway and is designed to puncture the tires of the pursued vehicle.

**Authorized Emergency Vehicles-** A marked or unmarked police vehicle with emergency lights visible for 360 degrees, and an audible siren that is commonly used to perform the full functions of a patrol unit.  For the purposes of the Green Bay Police Department Pursuit Policy, authorized emergency vehicles shall be limited to marked patrol vehicles, unmarked patrol vehicles, and motorcycles.

**Unmarked Emergency Vehicle-** .Department vehicles equipped with emergency lights visible for 360 an audible siren. This vehicle does not display law enforcement decals, and markings or City of Green Bay Police placards, and is commonly used in patrol.

Copyright Lexipol, LLC 2023/08/11, All Rights Reserved.
Published with permission by Green Bay Police Department

Case 2:22-cv-00340-LA    Filed 12/20/23    Page 16 of 150    Document 62-1

**Marked Patrol Vehicle**-Department vehicles equipped with flashing, or oscillating red and blue lights (emergency lights) visible for 360 degrees, and audible siren. This vehicle displays law enforcement markings, or City of Green Bay Police placards and are commonly used in patrol.

**Pursuit Intervention Technique (PIT)**-A low speed maneuver intended to terminate the pursuit by causing the violator's vehicle to spin out and come to a stop. This trained technique utilizes controlled contact between a police vehicle and a pursued vehicle which is intended to cause the driver of the pursued vehicle to lose control of their vehicle.

**Specialty Vehicles-** Motorcycles, paddy wagons, pick-up trucks, non-pursuit rated sport utility trucks, SWAT vehicles, dive truck, investigative vehicle, Community Service Intern vehicles, or any other non-patrol operation vehicle.

**Violent Felony-**A crime classified as a felony, by the State of Wisconsin, that involves physical violence or the mention or implication of a weapon by the suspect.

**Take off** - Initial movement from a stationary position or the act of attempting to make a vehicle contact for any law violation. For example, an officer operating stationary radar "takes off" to conduct a vehicle contact.

**Catch up** - Closing the distance between the officer and the violators vehicle. An officer may use emergency lights and sirens and drive with due regard to catch up to the law violator. This is not considered a pursuit and officers should not report that they are "in pursuit" when trying to catch up to a law violator.

**Initiation** - The initiation of a pursuit occurs when the violator vehicle knowingly attempts to avoid apprehension by increasing speed and/or, extinguishing the lights of the vehicle and/or, disregarding traffic warning signs, stop signs, red lights, driving off a roadway, turning suddenly and/or driving in a legal manner but willfully failing to yield to an officers signal to stop.

**Continuance** - The period of time after initiation and before termination that requires an officer to evaluate if they should continue the initiated pursuit. There is no ideal time period. This policy recognizes that stress and human factors may delay decision-making regarding continuance of a pursuit. The longer a pursuit continues, particularly at high speeds, the more likely it is that someone will be injured as a result.

**Termination** - The end of a pursuit, which may occur when the officer stops pursuing, the fleeing vehicle stops, or an authorized technique is used to stop the fleeing vehicle.

## 307.3  OFFICER RESPONSIBILITIES

It is the policy of this department that a vehicle pursuit shall be conducted with the visible signal of at least one flashing, oscillating or rotating red light, or a blue and red light, and also an audible signal by means of a siren or exhaust whistle activated on an authorized emergency vehicle (Wis. Stat. § 346.03(3)).

The following policy is established to provide officers with guidelines for driving with due regard and caution for the safety of all persons using the highway (Wis. Stat. § 346.03(5)).

Copyright Lexipol, LLC 2023/08/11, All Rights Reserved.
Published with permission by Green Bay Police Department

Case 2:22-cv-00740-LA    Filed 12/20/23    Page 17 of 150    Document 62-1

All officers actively engaged in a vehicle pursuit must understand and practice the responsibility they have as the pursuit officer to terminate any pursuit that may pose a greater threat to the public than the need to apprehend the subject immediately.

### 307.3.1  WHEN TO INITIATE AND/OR CONTINUE A PURSUIT

Green Bay Police Department officers may continue in vehicle pursuits of suspects that officers have probable cause to believe has committed is committing or is about to commit a violent felony, has a warrant for a violent felony or prior to initiation of a traffic stop the driver has demonstrated driving behaviors that would present a clear and immediate threat to the safety of the general public, and therefore the necessity of immediate apprehension outweighs the level of danger to the public created by the vehicle pursuit.

Officers are authorized to initiate a pursuit when it is reasonable to believe that a suspect is attempting to evade arrest or detention by fleeing in a vehicle that has been given a signal to stop by a peace officer (Wis. Stat. § 346.03; Wis. Admin. Code § LES 3.07(1)(a). The determination to continue pursuit must be balanced with the nature of the underlying offense, the danger posed to the officer, other motorists and pedestrians, and the suspect, with the necessity for immediate apprehension,

A few examples of dangerous driving behavior include, but are not limited to:

•     Driving into oncoming traffic.

•     Wrong way on a divided highway

•     Driving behavior that presents a clear and immediate threat to the safety of others and, therefore, the need for apprehension outweighs the level of danger created by a vehicle pursuit (e.g. reckless driving or negligent operation of a vehicle that creates an unreasonable risk of death or great bodily harm to another).

•     Dangerous behaviors indicative of impaired driving by either alcohol and/or drugs that has the high probability of death or great bodily harm to the public or pedestrians.

A few examples of violent felonies include, but are not limited to:

•     Homicide or attempted homicide.

•     Robbery where the suspect mentions or implies he/she has a weapon.

•     1st or 2nd degree Sexual assault.

•     Physical assault on a law enforcement officer.

•     Armed burglary (e.g., home invasion)

•     Kidnapping.

This policy recognizes that there are distinct phases of a vehicle contact and/or pursuit, which include:

Copyright Lexipol, LLC 2023/08/11, All Rights Reserved.
Published with permission by Green Bay Police Department

Case 2:22-cv-00340-LA    Filed 12/20/23    Page 18 of 150    Document 62-1

- **Take off** -to conduct a vehicle contact from a stationary or mobile position. For example, an officer clocks someone speeding and "takes off to conduct a vehicle contact. This is not considered a pursuit.

- **Catch up** - to close the distance between the officer and the violators vehicle to make a vehicle contact.. This time period of catching up is not considered a pursuit.,

- **Initiation** - violator knowingly attempts to avoid apprehension. This is the beginning of the pursuit.

- **Continuation**- evaluation time necessary to determine if the pursuit should continue, consistent with this policy.

- **T ermination**- the end of the pursuit.

Green Bay Police Officers are expected to attempt vehicle contacts with motorists who commit or are suspected of committing traffic and/or law violations.

The following factors individually and collectively shall be considered in deciding whether to initiate or continue a pursuit (Wis. Stat. § 346.03(6)):

(a) (a) The seriousness of the known or reasonably suspected crime and its relationship to community safety.

(b) The importance of protecting the public and balancing the known offense and the apparent need for immediate capture against the risks to officers, innocent motorists and others.

(c) The apparent nature of the fleeing suspect (e.g., whether the suspect represents a serious threat to public safety).

(d) The identity of the suspect has been verified and there is comparatively minimal risk in allowing the suspect to be apprehended at a later time.

(e) The safety of the public in the area of the pursuit, including the type of area, time of day, the amount of vehicular and pedestrian traffic (e.g., school zones) and the speed of the pursuit relative to these factors.

(f) The pursuing officer's familiarity with the area of the pursuit, the quality of communication between the pursuing units and the dispatcher/supervisor, and the driving capabilities of the pursuing officers under the conditions of the pursuit.

(g) The weather, traffic and road conditions that unreasonably increase the danger of the pursuit when weighed against the risks resulting from the suspect's escape.

(h) The performance capabilities of the vehicles used in the pursuit in relation to the speed and other conditions of the pursuit.

(i) Vehicle Speeds

(j) Other persons in or on the pursued vehicle (e.g., passengers, co-offenders and hostages).

(k) The availability of other resources.

Copyright Lexipol, LLC 2023/08/11, All Rights Reserved.
Published with permission by Green Bay Police Department

Case 2:22-cv-00340-PP Filed 12/20/23 Page 19 of 150 Document 62-1

(l)  The police unit is carrying passengers other than on-duty police officers. Pursuits shall not be undertaken with a prisoner or a civilian ride-along is in the pursuit vehicle. Officers are prohibited from dropping off civilian ride-alongs.

## 307.3.2  WHEN TO TERMINATE A PURSUIT

Pursuits should be discontinued whenever the totality of objective circumstances known or which reasonably ought to be known to the officer or supervisor during the pursuit indicates that the present risk of continuing the pursuit reasonably appears to outweigh the risk resulting from the suspect's escape (Wis. Admin. Code § LES 3.07(1)(c)).

Operating an emergency vehicle in a pursuit with emergency lights and siren does not relieve the operator of an authorized emergency vehicle of the duty to drive with due regard for the safety of all persons and does not protect the driver from the consequences of reckless disregard for the safety of others (Wis. Stat. § 346.03(5)).

The above factors on when to initiate and continue a pursuit are expressly included herein and will apply equally to the decision to discontinue as well as the decision to initiate or continue a pursuit. Officers and supervisors must objectively and continuously weigh the seriousness of the offense against the potential danger to innocent motorists, themselves and the public when electing to continue a pursuit. In the context of this policy, the term "terminate" shall be construed to mean to discontinue or to stop pursuing the the fleeing vehicle.

In addition to the factors listed above, the following factors should be considered when deciding whether to terminate a pursuit:

(a)  The distance between the pursuing officers and the fleeing vehicle is so great that further pursuit would be futile or require the pursuit to continue for an unreasonable time or distance.

(b)  The pursued vehicle's location is no longer definitely known.

(c)  The officer's pursuit vehicle sustains damage or a mechanical failure that renders it unsafe to drive.

(d)  The pursuit vehicle has an emergency equipment failure that causes the vehicle to no longer qualify for use in emergency operations (Wis. Stat. § 346.03(3)).

(e)  Extended pursuits of violators for misdemeanors not involving abuse or risk of serious harm (independent of the pursuit) are discouraged.

(f)  The hazards to uninvolved bystanders or motorists.

(g)  When the identity of the offender is known and it does not reasonably appear that the need for immediate capture outweighs the risks associated with continuing the pursuit, officers should strongly consider discontinuing the pursuit and apprehending the offender at a later time (Wis. Stat. § 346.175(3)(a)).

(h)  When directed to terminate the pursuit by a supervisor.

(i)  When it is necessary to stop to render aid to an injured person and no other officer is available to do so (Wis. Admin. Code § LES 3.07(1)(c)(5)).

Copyright Lexipol, LLC 2022/08/11, All Rights Reserved.
Published with permission by Green Bay Police Department

Case 2:22-cv-00340-LA  Filed 12/20/23  Page 20 of 150  Document 62-1

### 307.3.3  SPEED GUIDELINES

The speed of a pursuit is a factor that should be evaluated on a continuing basis by the officer and supervisor. Vehicle speeds shall be taken into consideration to prevent endangering public safety, officer safety and the safety of the occupants of the fleeing vehicle (Wis. Stat. § 346.03(6)).

Should high vehicle speeds be reached during a pursuit, officers and supervisors shall also consider these factors when determining the reasonableness of the speed of the pursuit.

(a)  Pursuit speeds have become unreasonably unsafe for the surrounding conditions.

(b)  Pursuit speeds have exceeded the driving ability of the officer.

(c)  Pursuit speeds are beyond the capabilities of the pursuit vehicle, thus making its operation unsafe.

## 307.4  PURSUIT UNITS

Pursuit units shall be limited to four authorized emergency vehicles, unless more are authorized by a supervisor.

An officer or supervisor may request additional units to join a pursuit if, after assessing the factors outlined above, it appears that the number of officers involved would not be insufficient to safely arrest the suspect. All other officers shall stay out of the pursuit but should remain alert to its progress and location.

Marked patrol vehicles should take lead for unmarked vehicles involved in a pursuit.

### 307.4.1  MOTORCYCLE OFFICERS

Officers operating motorcycles may initiate a pursuit. Officers operating motorcycles may continue the pursuit until a marked patrol vehicle arrives. The marked patrol vehicle equipped with emergency overhead lighting should replace a police motorcycle in gradual order up until three marked patrol vehicles in the pursuit. At that time, the officer on the motorcycle shall disengage from the pursuit and shall assume a support role. Supervisors may authorize exceptions based on the circumstances. It is imperative that the rider constantly evaluate their riding skills, and the justification/desirability of continuing to participate in the pursuit. Regardless of circumstances a rider may disengage to the level of danger presented by the pursued vehicle.

### 307.4.2  VEHICLES WITHOUT EMERGENCY EQUIPMENT

Vehicles not equipped with a red or blue emergency light and siren are prohibited from initiating or joining in any pursuit. Officers in such vehicles may provide support to pursuing units as long as the vehicle is operated in compliance with all traffic laws.

### 307.4.3  PRIMARY UNIT RESPONSIBILITIES

The initial pursuing officer will be designated as the primary pursuit unit and will be responsible for the conduct of the pursuit unless it is unable to remain reasonably close enough to the violator's

Copyright Lexipol, LLC 2022/08/11, All Rights Reserved.
Published with permission by Green Bay Police Department

vehicle. The primary responsibility of the officer initiated in a pursuit is the apprehension of the suspect without unreasonable danger to him/herself or other persons.

The primary unit should notify the Communications Center, commencing with a request for priority radio traffic, that a vehicle pursuit has been initiated, and as soon as practicable, provide information including, but not limited to:

(a)    The reason for the pursuit.

(b)    The location and direction of travel.

(c)    The speed of the fleeing vehicle.

(d)    The description of the fleeing vehicle and license number, if known.

(e)    The number of occupants.

(f)    The identity or description of the known occupants.

(g)    The weather, road and traffic conditions.

(h)    The identity of other agencies involved in the pursuit.

(i)    Information concerning the use of firearms, threat of force, injuries, hostages or other unusual hazards.

Once a secondary unit joins a pursuit, the officer in the secondary unit shall be responsible for broadcasting the progress of the pursuit. Unless circumstances reasonably indicate otherwise, the primary unit should relinquish the responsibility of broadcasting the progress of the pursuit to a secondary unit or aircraft joining the pursuit to minimize distractions and allow the primary unit to concentrate foremost on safe pursuit tactics.

## 307.4.4   SECONDARY UNIT RESPONSIBILITIES
The second officer in the pursuit is responsible for:

(a)    Immediately notifying the dispatcher of his/her entry into the pursuit.

(b)    Remaining at a safe distance behind the primary unit unless directed to assume the role of primary officer, or if the primary unit is unable to continue the pursuit.

(c)    Broadcasting the progress of the pursuit unless the situation indicates otherwise.

(d)    Serving as backup to the primary unit once the subject has been stopped.

## 307.4.5   SUPPORT UNITS
Officers that are not actively engaged in the pursuit, but are in close proximity to the pursuit route may assist by deploying stop sticks or blocking off intersections. Support units may also assist in the high risk vehicle stop or a perimeter at the termination of a pursuit. During an active pursuit, a unit will only be considered a "support unit" if they are ahead of the direction of pursuit travel. Support units may drive in emergency mode, but must use Due Regard. Officers who are out of

Copyright Lexipol, LLC 2023/08/11, All Rights Reserved.
Published with Permission by Green Bay Police Department

Case 2:22-cv-00340-PP   Filed 12/20/23   Page 22 of 150   Document 62-1

position, and attempting to catch up to the pursuit WILL NOT be considered support staff and will be deemed in violation of this policy.

### 307.4.6  PURSUIT DRIVING TACTICS

The decision to use specific driving tactics requires the same assessment of considerations outlined in the factors to be considered concerning pursuit initiation and termination. The following are tactics for units involved in the pursuit:

(a) Officers, considering their driving skills and vehicle performance capabilities, will space themselves from other involved vehicles such that they are able to see and avoid hazards or react safely to maneuvers by the fleeing vehicle.

(b) Officers may proceed past a red or stop signal or stop sign but only after slowing down and using due regard as may be necessary for safe operation (Wis. Stat § 346.03(2) (a)).

(c) Because intersections can present increased risks, the following tactics should be considered:

1. Available units not directly involved in the pursuit may proceed safely to controlled intersections ahead of the pursuit in an effort to warn cross traffic.

2. Pursuing units shall exercise due regardand slow down as may be necessary for safe operation when proceeding through controlled intersections.

(d) As a general rule, officers should not pursue a vehicle driving the wrong way on a roadway, highway or freeway. In the event the pursued vehicle does so, the following tactics should be considered:

1. Maintaining visual contact with the pursued vehicle by paralleling on the correct side of the roadway.

2. Requesting other units to observe exits available to the suspect.

(e) Notifying the Wisconsin State Patrol or other law enforcement agency if it appears the pursuit may enter their jurisdiction.

(f) Officers involved in a pursuit should not attempt to pass other units unless the situation indicates otherwise or they are requested to do so by the primary unit and a clear understanding of the maneuver process exists between the involved officers.

### 307.4.7  TACTICS/PROCEDURES FOR UNITS NOT INVOLVED IN THE PURSUIT

Officers are authorized to use emergency equipment at intersections along the pursuit path to clear intersections of vehicular and pedestrian traffic to protect the public. Officers should remain in their assigned area and should not become involved with the pursuit unless directed otherwise by a supervisor.

Non-pursuing personnel needed at the termination of the pursuit should respond in a non-emergency manner, observing the rules of the road, unless directed otherwise.

Copyright Lexipol, LLC 2023/08/11, All Rights Reserved.
Published with permission by Green Bay Police Department

The primary unit, secondary units, and support units should be the only units operating under emergency conditions (emergency lights and siren) unless other units are assigned to the pursuit.

### 307.4.8 SPECIALTY AND UNMARKED PATROL VEHICLES

Officers operating unmarked patrol vehicles may initiate and continue a pursuit, but only until a marked patrol vehicle can take over as the primary unit continuing the pursuit. The unmarked vehicle may continue as the secondary unit.

Specialty vehicles may support in a pursuit by positioning themselves for surveillance or deployment of stop sticks. Specialty vehicles shall not get directly involved in the pursuit without supervisory approval.

### 307.5 SUPERVISORY CONTROL AND RESPONSIBILITIES

It is the policy of this department that available supervisory and management control will be exercised over all vehicle pursuits involving officers from this department.

A patrol supervisor of the officer initiating the pursuit, or if unavailable, the shift commander will be responsible for the following:

(a) Upon becoming aware of a pursuit, immediately notifying involved officers and the Communications Center of supervisory presence and ascertaining all reasonably available information to continuously assess the situation and risk factors associated with the pursuit in order to ensure that the pursuit is conducted within established department guidelines.

(b) Engaging in the pursuit, when appropriate, to provide on-scene supervision.

(c) Exercising management and control of the pursuit, even if not engaged in it.

(d) Ensuring that no more than the number of required law enforcement units needed are involved in the pursuit under the guidelines set forth in this policy.

(e) Directing that the pursuit be terminated if, in his/her judgment, it is not justified to continue the pursuit under the guidelines of this policy.

(f) Ensuring that the proper radio channel is being used.

(g) Ensuring that the officer(s) are adequately broadcasting location, speed, direction and all other due regard elements.

(h) Ensuring the notification and/or coordination of outside agencies if the pursuit either leaves or is likely to leave the jurisdiction of this agency.

(i) Control and manage GBPD units when a pursuit enters another jurisdiction.

(j) Respond to the location where the pursuit ended.

(k) Preparing a post-pursuit debrief and analysis of the pursuit for training purposes

(l) Write a report

(m) Make notification to Operations Captain

(n) Ensuring that an appropriate after action review (AAR) is completed after all available information is reviewed (e.g., verbal summary from officer(s) involved, review of written

Copyright Lexipol, LLC 2023/08/11, All Rights Reserved.
Published with permission by Green Bay Police Department

reports, review of video footage, etc.). The AAR will be completed on the appropriate form consistent with this policy (Section 307.9).

### 307.5.1   SHIFT COMMANDER RESPONSIBILITIES

Upon becoming aware that a pursuit has been initiated, the Shift Commander should monitor and continually assess the situation and ensure the pursuit is conducted within the guidelines and requirements of this policy. If a supervisor of higher rank, such as a captain, is advised that a pursuit is in progress, then the supervisor of higher rank will take on this responsibility.

The Shift Commander shall review all pertinent reports for content and completeness It is recommended that a supervisor who is also a certified and current EVOC instructor is consulted and allowed to review all available information (e.g., reports, video / audio records, dispatch audio, etc.) to determine if the pursuit was initiated, continued, and terminated consistent with this policy.

## 307.6   COMMUNICATIONS

If the pursuit is confined within the City limits, radio communications will be conducted on the primary channel unless instructed otherwise by a supervisor or communications dispatcher. If the pursuit leaves the jurisdiction of this department or such is imminent, involved units should, whenever available, switch radio communications to an emergency channel most accessible by participating agencies and units.

### 307.6.1   LOSS OF PURSUED VEHICLE

When the pursued vehicle is lost, the pursuing unit(s) should broadcast pertinent information to assist other units in locating the vehicle. The pursuing unit(s) will be responsible for coordinating any further search for either the pursued vehicle or suspects fleeing on foot.

When officers have been involved in a pursuit that is consistent with the initiation criteria (Section 307.3.1) and the pursuithas been terminated, if the vehicle is located later, officers may attempt to stop the vehicle. This subsequent vehicle contact is considered a new incident and the requirements of this policy apply. If an officer locates a suspect vehicle that was previously involved in a pursuit, and terminated because it did not meet the initiation criteria (Section 307.3.1), the officer shall not re-engage the suspect vehicle solely based on the original offense it was initially pursued for. If new criteria, consistent with this policy exists, officers may attempt a new vehicle contact. If there is a time delay from the termination of the first pursuit to the time the officer locates the suspect vehicle again, officers must follow the criteria within this policy to determine whether to attempt a stop, initiate and/or continue a pursuit. There is no ideal time delay and the decision to make a new vehicle contact will be based upon the totality of the circumstances.

## 307.7   INTERJURISDICTIONAL CONSIDERATIONS

The Brown County inter-agency pursuit agreement is to establish guidelines for the pursuit of vehicles by Brown County Law Enforcement agencies when one or more agencies are involved, and/or the pursuit crosses jurisdictional boundaries. This agreement provides an expectation of how each law enforcement agency will respond in the event that a pursuit enters another

Copyright Lexipol, LLC 2023/08/11, All Rights Reserved.
Published with permission by Green Bay Police Department

Case 2:22-cv-00340-LA   Filed 12/20/23   Page 25 of 150   Document 62-1

jurisdiction. This document is intended only to supplement individual agency pursuit policies and not supersede such policies. If a pursuit enters the City of Green Bay and initiation and/ or continuation is not in accordance with this policy, a supervisor will request that the pursuit is terminated. Per the Brown County Interagency Pursuit agreement, if the pursuit continues, a supervisor will assign one squad to trail the route of the pursuit (not be directly involved) while in our jurisdiction. The purpose of the trailing squad is to assist with directions, locations and dispatching medical, emergency, or other police units until the pursuit leaves our jurisdiction.

## 307.8  PURSUIT INTERVENTION

Pursuit intervention is an attempt to terminate the ability of a suspect to continue to flee in a motor vehicle through tactical application of technology, tire deflation devices, blocking, boxing-in, PIT, ramming or roadblock procedures.

### 307.8.1  WHEN USE IS AUTHORIZED

In deciding whether to use intervention tactics, officers/supervisors should balance the risk of allowing the pursuit to continue with the potential hazards arising from the use of each tactic to the public, the officers and persons in or on the pursued vehicle. With this in mind, the decision to use any intervention tactic should be reasonable in light of the circumstances apparent to the officer at the time of the decision.

### 307.8.2  USE OF FIREARMS

The use of firearms to disable a pursued vehicle is not generally an effective tactic and involves all the dangers associated with discharging firearms. Officers should not utilize firearms during an ongoing pursuit unless the conditions and circumstances meet the requirements authorizing the use of deadly force. Nothing in this section shall be construed to prohibit any officer from using a firearm to stop a suspect from using a vehicle as a deadly weapon.

### 307.8.3  INTERVENTION STANDARDS

Any pursuit intervention tactic, depending upon the conditions and circumstances under which it is used, may present dangers to the officers, the public or anyone in or on the vehicle being pursued. Certain applications of intervention tactics may be construed to be a use deadly force and are subject to the requirements for such use. Officers shall consider these facts and requirements prior to deciding how, when, where and if an intervention tactic should be employed.

(a)  A moving road block may be appropriate in low-speed pursuits.  They can also be used for intoxicated drivers and disoriented drivers who fail to stop at the request of law enforcement. This is a coordinated technique and involves a minimum of three squad cars - one in front, one in back, and one to the side (just behind the driver door).  A fourth squad  can also be used, if necessary. Once in position, the squads gradually slow, bringing the suspect vehicle to a safe, gradual stop.  Because this technique places officers at a tactical disadvantage, this technique should not be used if the suspect has displayed a weapon or has been involved in a violent felony.

(b)  Only officers trained in the use of PIT are authorized to use this procedure.  It is recognized that the vehicle dynamics of both the pursuing and fleeing vehicles can

Copyright Lexipol, LLC 2023/08/11, All Rights Reserved.
Published with permission by Green Bay Police Department

pose a danger to the public. Factors that should be included in the officers decision on where to implement a PIT maneuver should include the width and type of the roadway, proximity to intersections, parked cars, pedestrians, homes, businesses, and the like. All officers must understand that the speed at which a PIT maneuver is attempted is directly proportionate to these dangers. Because of these reasons, the suggested top speed should be approximately 45 mph, but it is understood that other circumstances may be in play to justify a PIT attempted at a higher speeds.

(c) Ramming a fleeing vehicle, is a non-trained deadly force technique and should be done only after other reasonable tactical means at the officer's disposal have been exhausted or would not have been effective. This tactic should be reserved for situations where there does not appear to be another reasonable alternative method. When ramming is used as a means to stop a fleeing vehicle, the following factors should be present: (The Operations Captain will be notified immediately if this technique is used)

   1. The suspect is an actual or suspected felon who reasonably appears to represent a serious threat to the public if not apprehended.

   2. The suspect is driving with willful or wanton disregard for the safety of other persons or is driving in a reckless and life-endangering manner. If there does not reasonably appear to be a present or immediately foreseeable serious threat to the public, the use of ramming is not authorized

(d) Tire deflation devices should be deployed only when it is reasonably apparent that only the pursued vehicle will be affected by their use. Prior to the deployment of stop sticks, the officer shall notify, if practicable, pursuing units and the supervisor of the intent and location. Officers should carefully consider the limitations of such devices as well as the potential risk to officers, the public and occupants of the pursued vehicle. If the pursued vehicle is a motorcycle or moped this technique will not be used.If a vehicle transporting hazardous materials or a school bus transporting children, officers and supervisors should weigh the potential consequences against the need to immediately stop the vehicle.The suggested speed for use of a tire deflation device is approximately 25 mph and over.No officer shall deploy a tire deflation device until they have been trained.

(e) Because closed roadblocks involve a potential for serious injury or death to occupants of the pursued vehicle if the suspect does not stop, the intentional placement of closed roadblocks in the direct path of a pursued vehicle is generally discouraged and should not be deployed without prior approval of a supervisor, and only then under extraordinary conditions when all other reasonable intervention techniques have failed or reasonably appear ineffective and the need to immediately stop the pursued vehicle substantially outweighs the risk of injury or death to occupants of the pursued vehicle, officers or other members of the public.

## 307.8.4 CAPTURE OF SUSPECTS

Proper self-discipline and sound professional judgment are the keys to a successful conclusion of a pursuit and apprehension of evading suspects. Officers shall use only that amount of force that reasonably appears necessary under the circumstances to properly perform their lawful duties.

Copyright Lexipol, LLC 2022/08/11, All Rights Reserved.
Published with permission by Green Bay Police Department

Case 2:22-cv-00342-PP   Filed 12/20/23   Page 27 of 150   Document 62-1

Unless relieved by a supervisor, the primary officer should coordinate efforts to apprehend the suspect following the pursuit. Officers should consider the safety of the public and the involved officers when formulating plans to contain and capture the suspect.

## 307.9   REPORTING AND REVIEW REQUIREMENTS

All appropriate reports shall be completed to comply with local and state regulations (Wis. Stat. § 85.07(8)(b)).

(a)   The primary officer shall complete a GERP report and the Tracs pursuit form. Any other pursuit units directly involved in the pursuit (Section 307.4), including the application of termination methods, will complete a report narrative. A supervisor may also direct officers to complete a report narrative

(b)   The on-duty field supervisor notified of the pursuit, and not directly involved in the pursuit, shall promptly complete an after action report that addresses the following:

1.   Date and time of pursuit

2.   Length of pursuit in distance and time

3.   Involved units and officers

4.   Initial reason and circumstances surrounding the pursuit

5.   Starting and termination points

6.   Alleged offense, charges filed or disposition: arrest, citation or other release

7.   Arrestee information should be provided if applicable

8.   Injuries and/or property damage

9.   Medical treatment

10.   The outcome of the pursuit

11.   Name of supervisor handling or at the scene

12.   A preliminary determination that the pursuit appears to be in compliance with this policy or that additional review and/or follow-up is warranted

(c)   After receiving copies of reports, logs and other pertinent information, the Chief of Police or the authorized designee shall conduct or assign the completion of a post-pursuit review as appropriate to the circumstances. The reviewer shall be a current EVOC instructor.

(d)   When determining if the involved officers actions were objectively reasonable and in compliance with this policy, any supervisor or reviewer is required to adhere to the following standards set forth in Graham v. Connor (1989): "The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, and its calculus must embody an allowance for the fact that police officers are often forced to make split-second decisions about the amount of force necessary in a particular situation. " Decisions, actions, and perceptions under the stress of a pursuit may be different than what is captured on dash camera. Reviewing supervisors are encouraged to speak with officers regarding any discrepancies. Supervisors should

Copyright Lexipol, LLC 2022/08/11, All Rights Reserved.
Published with permission by Green Bay Police Department

encourage officers to review available footage prior to report writing and explain discrepancies between human recollection and video footage.

(e) At least annually, but no later than June 30th of every even-numbered year, the Chief of Police or the authorized designee shall direct a documented review and analysis of department vehicle pursuits to minimally include policy suitability, policy compliance, policy modification and training needs (Wis. Stat. § 346.03(6)).

## 307.9.1   REGULAR AND PERIODIC PURSUIT TRAINING
In addition to initial and supplementary training on pursuits, all certified sworn employees will participate, no less than biennially, in at least four hours of training addressing this policy, pursuit guidelines, driving techniques, new technology and the importance of vehicle safety and protecting the public at all times. Training will include recognition of the need to balance the known offense and the need for immediate capture against the risks to officers and others. At least four hours of the training curriculum will be based on the model standards promulgated by the Law Enforcement Standards Board (LESB) and shall be delivered by a LESB-certified Emergency Vehicle Operations and Control (EVOC) instructor (Wis. Stat. § 165.85; Wis. Admin. Code § LES 3.07(4)). For purposes of LESB reporting obligations, the time period for annual training begins July 1st, and ends June 30th.

## 307.9.2   POLICY REVIEW
Certified members of this department shall certify electronically by acknowledging this policy that they have received, read and understand this policy initially and upon any amendments (Wis. Stat. § 346.03(6)).

## 307.10   PURSUIT DRIVING ANALYSIS COMMITTEE (PDAC)
Bi-annually, a PDAC review team comprised of EVOC and/or Vehicle Contacts instructors from the Training Unit will convene for the sole purpose of reviewing all vehicle pursuits and make recommendations related to training, performance, and management of vehicle pursuits and this policy. The review team will also collect data (e.g., reasons for pursuits, speeds, termination, etc.) to help enhance training, reduce errors, and improve the safety of all officers and the public. The PDAC will present its findings to the Commander of Operations in a timely manner.

Copyright Lexipol, LLC 2023/08/11, All Rights Reserved.
Published with permission by Green Bay Police Department

# Vehicle Pursuits

## 307.1   PURPOSE AND SCOPE

Vehicle pursuits expose innocent citizens, law enforcement officers and fleeing violators to the risk of serious injury or death. The primary purpose of this policy is to provide officers with guidance in balancing the safety of the public and themselves against law enforcement's duty to apprehend violators of the law (Wis. Stat. § 346.03(6); Wis. Admin. Code LES § 3.07).

Another purpose of this policy is to minimize the potential for pursuit-related crashes. Vehicle pursuits require officers to exhibit a high degree of common sense and sound judgment. Officers must not forget that the immediate apprehension of a suspect is generally not more important than the safety of the public and pursuing officers.

### 307.1.1   PHILOSOPHY

Deciding whether to pursue a motor vehicle is a critical decision that must be made quickly and under difficult and unpredictable circumstances. In recognizing the risk to public safety created by vehicle pursuits, no officer or supervisor shall be criticized or disciplined for deciding not to engage in a vehicle pursuit due to the risk involved. This includes circumstances where department policy would permit the initiation or continuation of the pursuit. It is recognized that vehicle pursuits are not always predictable and decisions made pursuant to this policy will be evaluated according to the totality of the circumstances reasonably available at the time of the pursuit.

**Officers must remember that the most important factors to the successful conclusion of a pursuit are proper self-discipline and sound professional judgment. Officers conduct during the course of a pursuit must be objectively reasonable; that is, what a reasonable officer would do under the circumstances. An individual's unreasonable desire to apprehend a fleeing suspect at all costs has no place in professional law enforcement.**

When appropriate, officers should consider the use of the Pursuit Intervention Technique as a use of force to prevent a pursuit from occurring or to induce the fleeing vehicle to stop as soon as practical.

## 307.2   DEFINITIONS

Definitions related to this policy include:

**Vehicle pursuit** - An event involving one or more peace officers attempting to apprehend a suspect who is attempting to avoid arrest while operating a motor vehicle by using high speed or other evasive tactics, such as increasing the speed of the vehicle, extinguishing the lights of the vehicle, disregarding traffic warning signs, stop signs, red lights, driving off a roadway, turning suddenly or driving in a legal manner but willfully failing to yield to an officer's signal to stop (Wis. Stat. § 85.07(8)(a)).

**Blocking or vehicle intercept** - A slow-speed coordinated maneuver where two or more law enforcement vehicles simultaneously intercept and block the movement of a suspect vehicle, the

Copyright Lexipol, LLC 2021/07/12, All Rights Reserved.
Published with permission by Greenfield Police Department

Case 2:22-cv-00240-PP   Filed   Exhibit 33   50   Document 62-1

driver of which may be unaware of the impending enforcement stop. The goal is containment and preventing a pursuit. Blocking is not a moving or stationary road block.

**Boxing-in** - A tactic designed to stop a violator's vehicle by surrounding it with law enforcement vehicles and then slowing all vehicles to a stop.

**Pursuit Intervention Technique (PIT)** - A trained maneuver intended to terminate the pursuit by causing the violator's vehicle to spin out and come to a stop.

**Ramming** - The deliberate act of impacting a violator's vehicle with another vehicle to functionally damage or otherwise force the violator's vehicle to stop.

**Roadblocks** - A tactic designed to stop a violator's vehicle by intentionally placing a vehicle or other immovable object in the path of the violator's vehicle.

**Tire deflation device, spikes or tack strips** - A device that extends across the roadway and is designed to puncture the tires of the pursued vehicle.

## 307.3  OFFICER RESPONSIBILITIES

It is the policy of this department that a vehicle pursuit shall be conducted with the visible signal of at least one flashing, oscillating or rotating red light, or a blue and red light, and also an audible signal by means of a siren or exhaust whistle activated on an authorized emergency vehicle (Wis. Stat. § 346.03(3)).

The following policy is established to provide officers with guidelines for driving with due regard and caution for the safety of all persons using the highway (Wis. Stat. § 346.03(5)).

### 307.3.1  WHEN TO INITIATE A PURSUIT

Officers are authorized to initiate a pursuit when it is reasonable to believe that a suspect is attempting to evade arrest or detention by fleeing in a vehicle that has been given a signal to stop by a peace officer (Wis. Stat. § 346.03; Wis. Admin. Code LES § 3.07(1)(a)).

The following factors individually and collectively shall be considered in deciding whether to initiate or continue a pursuit (Wis. Stat. § 346.03(6)):

(a) The seriousness of the known or reasonably suspected crime and its relationship to community safety.

(b) The importance of protecting the public and balancing the known or reasonably suspected offense and the apparent need for immediate capture against the risks to officers, innocent motorists and others.

(c) The apparent nature of the fleeing suspect (e.g., whether the suspect represents a serious threat to public safety).

(d) The identity of the suspect has been verified and there is comparatively minimal risk in allowing the suspect to be apprehended at a later time.

Copyright Lexipol, LLC 2021/07/12, All Rights Reserved.
Published with permission by Greenfield Police Department

(e)    The safety of the public in the area of the pursuit, including the type of area, time of day, the amount of vehicular and pedestrian traffic (e.g., school zones) and the speed of the pursuit relative to these factors.

(f)    The pursuing officer's familiarity with the area of the pursuit, the quality of communication between the pursuing units and the dispatcher/supervisor, and the driving capabilities of the pursuing officers under the conditions of the pursuit.

(g)    The weather, traffic and road conditions that unreasonably increase the danger of the pursuit when weighed against the risks resulting from the suspect's escape.

(h)    The performance capabilities of the vehicles used in the pursuit in relation to the speed and other conditions of the pursuit.

(i)    Vehicle speeds.

(j)    Other persons in or on the pursued vehicle (e.g., passengers, co-offenders and hostages)

(k)    The police unit is carrying passengers other than on-duty police officers. Pursuits should not be undertaken with a prisoner in the pursuit vehicle unless exigent circumstances exist, and then only after the need to apprehend the suspect is weighed against the safety of the prisoner in transport. A unit containing more than a single prisoner should not participate in a pursuit.

## 307.3.2 WHEN TO TERMINATE A PURSUIT

Pursuits should be discontinued whenever the totality of objective circumstances known or which reasonably ought to be known to the officer or supervisor during the pursuit indicates that the present risk of continuing the pursuit reasonably appears to outweigh the risk resulting from the suspect's escape (Wis. Admin. Code LES § 3.07(1)(c)).

Operating an emergency vehicle in a pursuit with emergency lights and siren does not relieve the operator of an authorized emergency vehicle of the duty to drive with due regard for the safety of all persons and does not protect the driver from the consequences of reckless disregard for the safety of others (Wis. Stat. § 346.03(5)).

The above factors on when to initiate a pursuit are expressly included herein and will apply equally to the decision to discontinue as well as the decision to initiate a pursuit. Officers and supervisors must objectively and continuously weigh the seriousness of the offense against the potential danger to innocent motorists, themselves and the public when electing to continue a pursuit. In the context of this policy, the term "terminate" shall be construed to mean to discontinue or to stop chasing the fleeing vehicle, disengage all emergency lights and siren, pull to the side of the roadway and stop as soon as it is safe to do so.

In addition to the factors listed above, the following factors should be considered when deciding whether to terminate a pursuit:

Copyright Lexipol, LLC 2021/07/12, All Rights Reserved.
Published with permission by Greenfield Police Department

(a) Suspect vehicle factors including driving the wrong way on a divided highway, driving into oncoming traffic or on the wrong side of the roadway and driving the wrong way on a one-way street.

(b) The distance between the pursuing officers and the fleeing vehicle is so great that further pursuit would be futile or require the pursuit to continue for an unreasonable time or distance.

(c) The pursued vehicle's location is no longer definitely known.

(d) The officer's pursuit vehicle sustains damage or a mechanical failure that renders it unsafe to drive.

(e) The pursuit vehicle has an emergency equipment failure that causes the vehicle to no longer qualify for use in emergency operations (Wis. Stat. § 346.03(3)).

(f) As an officer safety issue, as a pursuit continues or leaves our jurisdiction, the ability of bacup officers to respond or assist is an important risk factor to consider in determining whether or not to continue the pursuit.

(g) Extended pursuits of violators for misdemeanors not involving abuse or risk of serious harm (independent of the pursuit) are discouraged.

(h) The hazards to uninvolved bystanders or motorists.

(i) When the identity of the offender is known and it does not reasonably appear that the need for immediate capture outweighs the risks associated with continuing the pursuit, officers should strongly consider discontinuing the pursuit and apprehending the offender at a later time (Wis. Stat. § 346.175(3)(a)).

(j) When directed to terminate the pursuit by a supervisor.

(k) When it is necessary to stop to render aid to an injured person and no other officer is available to do so (Wis. Admin. Code LES § 3.07(1)(c)5).

### 307.3.3 TERMINATION PROCEDURE

When an officer determines that they intend to terminate a pursuit, they shall announce over the radio "I'm terminating the pursuit".

(a) The dispatcher will respond "Terminate, Terminate, Terminate. All squads, terminate the pursuit."

(b) Dispatchers will conduct a roll-call of squads to ensure reception of the order to terminate.

When a supervisor or intends to terminate a pursuit, they will announce over the radio "Terminate, Terminate, Terminate. All squads terminate the pursuit."

(a) The dispatcher will respond. "All squads terminate the pursuit.

(b) Dispatchers will conduct a roll-call of squads to ensure reception of the order to terminate.

*Vehicle Pursuits*

---

Unless an immediate need to render aid exists or strong officer safety considerations exist, pursuing units will immediately pull to the side of the road and stop until released by the supervisor.

### 307.3.4  SPEED LIMITS

The speed of a pursuit is a factor that should be evaluated on a continuing basis by the officer and supervisor. Vehicle speeds shall be taken into consideration to prevent endangering public safety, officer safety and the safety of the occupants of the fleeing vehicle (Wis. Stat. § 346.03(6)).

Should high vehicle speeds be reached during a pursuit, officers and supervisors shall also consider these factors when determining the reasonableness of the speed of the pursuit.

    (a)    Pursuit speeds have become unreasonably unsafe for the surrounding conditions.

    (b)    Pursuit speeds have exceeded the driving ability of the officer.

    (c)    Pursuit speeds are beyond the capabilities of the pursuit vehicle, thus making its operation unsafe.

### 307.4  PURSUIT UNITS

Pursuit units should be limited to three vehicles (two units and a supervisor). However, the number of units involved will vary with the circumstances.

An officer or supervisor may request additional units to join a pursuit if, after assessing the factors outlined above, it appears that the number of officers involved would be insufficient to safely arrest the suspect. All other officers shall stay out of the pursuit but should remain alert to its progress and location.

Distinctively marked patrol vehicles should replace unmarked vehicles involved in a pursuit whenever practicable.

### 307.4.1  MOTORCYCLE OFFICERS

Officers operating a police motorcycle shall not initate or join in any pursuit. Officers operating a police motorcycle will take into account the lack of protection a motorcycle may provide when deciding if and what type of support to provide to pursuing units.

### 307.4.2  VEHICLES WITHOUT EMERGENCY EQUIPMENT

Vehicles not equipped with a red or blue emergency light and siren are prohibited from initiating or joining in any pursuit. Officers in such vehicles may provide support to pursuing units as long as the vehicle is operated in compliance with all traffic laws.

### 307.4.3  PRIMARY UNIT RESPONSIBILITIES

The initial pursuing officer will be designated as the primary pursuit unit and will be responsible for the conduct of the pursuit unless it is unable to remain reasonably close enough to the violator's vehicle. The primary responsibility of the officer initiating the pursuit is the apprehension of the suspect without unreasonable danger to him/herself or other persons.

Copyright Lexipol, LLC 2021/07/12, All Rights Reserved.
Published under license by Greenfield Police Department.

Case 2:22-cv-00240-JPS   Filed 12/20/23   Page 34 of 150   Document 62-1

The primary unit should notify the Dispatch Center, commencing with a request for priority radio traffic, that a vehicle pursuit has been initiated, and as soon as practicable, provide information including, but not limited to:

(a)   The reason for the pursuit.

(b)   The location and direction of travel.

(c)   The speed of the fleeing vehicle.

(d)   The description of the fleeing vehicle and license number, if known.

(e)   The number of occupants.

(f)   The identity or description of the known occupants.

(g)   The weather, road and traffic conditions.

(h)   The identity of other agencies involved in the pursuit.

(i)   Information concerning the use of firearms, threat of force, injuries, hostages or other unusual hazards.

(j)   Actions of the fleeing vehicle such as travelling the wrong way on a divided highway, driving in the wrong lane of traffic, driving the wrong way on a one-way street, disregarding signs and signals and behaviors forcing other vehicles to take evasive action.

Unless relieved by a supervisor or secondary unit, the officer in the primary unit shall be responsible for broadcasting the progress of the pursuit. Unless circumstances reasonably indicate otherwise, the primary unit should relinquish the responsibility of broadcasting the progress of the pursuit to a secondary unit to minimize distractions and allow the primary unit to concentrate foremost on safe pursuit tactics.

## 307.4.4   SECONDARY UNIT RESPONSIBILITIES
The second officer in the pursuit is responsible for:

(a)   Immediately notifying the dispatcher of his/her entry into the pursuit.

(b)   Remaining at a safe distance behind the primary unit unless directed to assume the role of primary officer, or if the primary unit is unable to continue the pursuit.

(c)   Broadcasting the progress of the pursuit unless the situation indicates otherwise. Such broadcasts should include, but are not limited to:

   1.   Speed of the fleeing vehicle.

   2.   Description of the fleeing vehicle.

   3.   Weather, road and traffic conditions.

   4.   Information concerning the use of firearms, threat of force, injuries, hostages or other unusual hazards.

Case 2:22-cv-00240-JPS   Filed 12/20/23   Page 35 of 150   Document 62-1

5. Actions of the fleeing vehicle such as travelling the wrong way on a divided highway, driving in the wrong lane of traffic, driving the wrong way on a one-way street, disregarding signs and signals and behaviors forcing other vehicles to take evasive actions.

(d) Serving as backup to the primary unit once the subject has been stopped.

(e) Terminating the pursuit if the secondary unit believes the present risk of continuing the pursuit reasonably appears to outweigh the risk resulting from the suspect's escape.

## 307.4.5  PURSUIT DRIVING TACTICS

The decision to use specific driving tactics requires the same assessment of considerations outlined in the factors to be considered concerning pursuit initiation and termination. The following are tactics for units involved in the pursuit:

(a) Officers, considering their driving skills and vehicle performance capabilities, will space themselves from other involved vehicles such that they are able to see and avoid hazards or react safely to maneuvers by the fleeing vehicle.

(b) Officers may proceed past a red or stop signal or stop sign but only after slowing down as may be necessary for safe operation (Wis. Stat § 346.03(2)(a)).

(c) Because intersections can present increased risks, the following tactics should be considered:

1. Available units not directly involved in the pursuit may proceed safely to controlled intersections ahead of the pursuit in an effort to warn cross traffic.

2. Pursuing units shall exercise due caution and slow down as may be necessary for safe operation when proceeding through controlled intersections.

(d) As a general rule, officers should not pursue a vehicle driving the wrong way on a roadway, highway or freeway. In the event the pursued vehicle does so, the following tactics should be considered:

1. Maintaining visual contact with the pursued vehicle by paralleling on the correct side of the roadway.

2. Requesting other units to observe exits available to the suspect.

(e) Officers involved in a pursuit should not attempt to pass other units unless the situation indicates otherwise or they are requested to do so by the primary unit and a clear understanding of the maneuver process exists between the involved officers.

## 307.4.6  TACTICS/PROCEDURES FOR UNITS NOT INVOLVED IN THE PURSUIT

Units not involved in the pursuit should remain alert to its progress and location. Non-pursuing units are authorized to use emergency equipment at intersections along the pursuit path to clear

Copyright Lexipol, LLC 2021/07/12, All Rights Reserved.
Published with permission by Greenfield Police Department

intersections of vehicular and pedestrian traffic to protect the public and/or provide other support for the pursing units.

If the pursuit leaves the city, non-involved units will remain in the city unless otherwise directed by a supervisor.

### 307.4.7   PURSUIT TRAILING
In the event that the initiating unit from this agency disengages from active pursuit due to relinquishing control of the pursuit to another unit(s) or jurisdiction, that initiating unit may, with permission of a supervisor, trail the pursuit to the termination point in order to provide information and assistance for the arrest of the suspect.

The term "trail" means to follow the path of the pursuit at a safe speed, while obeying all traffic laws and without activating emergency equipment. If the pursuit is at a slow rate of speed, the trailing unit will maintain sufficient distance from the pursuit units to clearly indicate an absence of participation in the pursuit.

## 307.5   SUPERVISORY CONTROL AND RESPONSIBILITIES
It is the policy of this department that available supervisory and management control will be exercised over all vehicle pursuits involving officers from this department.

The field supervisor of the officer initiating the pursuit, or if unavailable, the nearest field supervisor will be responsible for the following:

(a)   Upon becoming aware of a pursuit, immediately notifying involved officers and the Dispatch Center of supervisory presence and ascertaining all reasonably available information to continuously assess the situation and risk factors associated with the pursuit in order to ensure that the pursuit is conducted within established department guidelines.

(b)   Engaging in the pursuit, when appropriate, to provide on-scene supervision.

(c)   Exercising management and control of the pursuit even if not engaged in it.

(d)   Ensuring that no more than the number of required law enforcement units needed are involved in the pursuit under the guidelines set forth in this policy.

(e)   Directing that the pursuit be terminated if, in his/her judgment, it is not justified to continue the pursuit under the guidelines of this policy.

  1.   When terminating a pursuit, the supervisor will annouce "TERMINATE, TERMINATE, TERMINATE" over the primary pursuit channel.

  2.   Dispatch will acknowledge: "All squads terminate the pursuit."

(f)   Ensuring that the proper radio channel is being used.

(g)   Ensuring the notification and/or coordination of outside agencies if the pursuit either leaves or is likely to leave the jurisdiction of this agency.

Copyright Lexipol, LLC 2021/07/12, All Rights Reserved.
Published with permission by Greenfield Police Department

(h)   Control and manage GPD units when a pursuit enters another jurisdiction.

(i)   Responding to the termination area to assess the involved officers condition, obtain a briefing and determine immediate needs.

(j)   Preparing a post-pursuit critique and analysis of the pursuit for training purposes.

### 307.5.1   SHIFT COMMANDER RESPONSIBILITIES

Upon becoming aware that a pursuit has been initiated, the Shift Commander should monitor and continually assess the situation and ensure the pursuit is conducted within the guidelines and requirements of this policy. The Shift Commander has the final responsibility for the coordination, control and termination of a vehicle pursuit and shall be in overall command.

The Shift Commander shall review all pertinent reports.

### 307.6   COMMUNICATIONS

If the pursuit is confined within the City limits, radio communications will be conducted on the primary channel unless instructed otherwise by a supervisor or communications dispatcher. If the pursuit leaves the jurisdiction of this department or such is imminent, dispatchers will broadcast the pursuit over Sheriff F2.

### 307.6.1   THE DISPATCH CENTER RESPONSIBILITIES

Upon notification that a pursuit has been initiated, the Dispatch Center will be responsible for:

(a)   Coordinating pursuit communications of the involved units and personnel.

(b)   Notifying and coordinating with other involved or affected agencies as practicable.

(c)   Ensuring that a field supervisor is notified of the pursuit.

(d)   Assigning an incident number and logging all pursuit activities.

(e)   Broadcasting pursuit updates as well as other pertinent information as necessary.

(f)   Notifying the Shift Commander as soon as practicable.

### 307.6.2   LOSS OF PURSUED VEHICLE

When the pursued vehicle is lost, the primary unit should broadcast pertinent information to assist other units in locating the vehicle. The primary unit will be responsible for coordinating any further search for either the pursued vehicle or suspects fleeing on foot.

### 307.7   INTERJURISDICTIONAL CONSIDERATIONS

When a pursuit enters another agency's jurisdiction, the primary officer or supervisor, taking into consideration distance traveled, unfamiliarity with the area and other pertinent facts, should determine whether to request the other agency to assume the pursuit. Unless entry into another jurisdiction is expected to be brief, it is generally recommended that the primary officer or supervisor ensure that notification is provided to each outside jurisdiction into which the pursuit is reasonably expected to enter, regardless of whether such jurisdiction is expected to assist.

Copyright Lexipol, LLC 2021/07/12, All Rights Reserved.
Published with permission by Greenfield Police Department

Case 2:22-cv-00240-DJ    Filed 12/20/23    Page 38 of 150    Document 62-1

### 307.7.1 ASSUMPTION OF PURSUIT BY ANOTHER AGENCY

Greenfield Police Department officers will discontinue the pursuit when another agency has assumed the pursuit, unless the continued assistance of the Greenfield Police Department is requested by the agency assuming the pursuit. Upon discontinuing the pursuit, the primary unit may proceed upon request, with or at the direction of a supervisor, to the termination point to assist in the investigation. A supervisor should coordinate with the agency managing the termination point to determine the supervisor's need to respond or otherwise assist in the investigation. The supervisor should obtain any information that is necessary for inclusion in any reports from the agency managing the termination point.

The role and responsibilities of officers at the termination of a pursuit that was initiated by this department shall be coordinated with appropriate consideration of the units from the agency assuming the pursuit.

Notification of a pursuit in progress should not be construed as a request to join the pursuit. Requests to or from another agency to assume a pursuit should be specific. Because of communication limitations between local agencies, a request for another agency's assistance will mean that its personnel will assume responsibility for the pursuit. For the same reasons, when a pursuit leaves another jurisdiction and a request for assistance is made to this department, the other agency should relinquish control.

### 307.7.2 PURSUITS EXTENDING INTO THIS JURISDICTION

The agency that initiates a pursuit shall be responsible for conducting the pursuit. Units from this department should not join a pursuit unless specifically requested to do so by the agency whose peace officers are in pursuit. The exception to this is when a single unit from the initiating agency is in pursuit. Under this circumstance, a unit from this department may join the pursuit until sufficient units from the initiating agency join the pursuit.

When a request is made for this department to assist or take over a pursuit that has entered this jurisdiction, the supervisor should consider these additional factors:

    (a)    Ability to maintain the pursuit

    (b)    Circumstances serious enough to continue the pursuit

    (c)    Adequate staffing to continue the pursuit

    (d)    The public's safety within this jurisdiction

    (e)    Safety of the pursuing officers

As soon as practicable, a supervisor or the Shift Commander should review a request for assistance from another agency. The Shift Commander or supervisor, after consideration of the above factors, may decline to assist in or assume the other agency's pursuit.

Assistance to a pursuing outside agency by officers of this department will terminate at the City limits provided that the pursuing peace officers have sufficient assistance from other sources. Ongoing participation from this department may continue only until sufficient assistance is present.

Copyright Lexipol, LLC 2021/07/12, All Rights Reserved.
Published under permission by Greenfield Police Department

Case 2:22-cv-00240-TLN Filed 12/20/23   Page 39 of 150   Document 62-1

In the event that a pursuit from another agency terminates within this jurisdiction, officers shall notify the initiating agency of the termination of the pursuit, provide appropriate assistance to peace officers from the initiating and other involved agencies including, but not limited to, scene control, coordination and completion of supplemental reports and any other assistance requested or needed.

## 307.8  PURSUIT INTERVENTION

Pursuit intervention is an attempt to terminate the ability of a suspect to continue to flee in a motor vehicle through tactical application of technology, tire deflation devices, blocking, boxing-in, PIT, ramming or roadblock procedures.

### 307.8.1  WHEN USE IS AUTHORIZED

Use of blocking, boxing-in, ramming or roadblock procedures should be employed only after approval of a supervisor.

Use of the Pursuit Intervention Technique (PIT) and tire deflation devices should be employed when an officer believes it is appropriate according to their training, experience and the conditions present.

In deciding whether to use intervention tactics, officers/supervisors should balance the risk of allowing the pursuit to continue with the potential hazards arising from the use of each tactic to the public, the officers and persons in or on the pursued vehicle. With this in mind, the decision to use any intervention tactic should be reasonable in light of the circumstances apparent to the officer at the time of the decision.

### 307.8.2  USE OF FIREARMS

The use of firearms to disable a pursued vehicle is not generally an effective tactic and involves all the dangers associated with discharging firearms. Officers should not utilize firearms during an ongoing pursuit unless the conditions and circumstances meet the requirements authorizing the use of deadly force. Nothing in this section shall be construed to prohibit any officer from using a firearm to stop a suspect from using a vehicle as a deadly weapon.

### 307.8.3  INTERVENTION STANDARDS

Any pursuit intervention tactic, depending upon the conditions and circumstances under which it is used, may present dangers to the officers, the public or anyone in or on the vehicle being pursued. Certain applications of intervention tactics may be construed to be a use of deadly force and are subject to the requirements for such use. Officers shall consider these facts and requirements prior to deciding how, when, where and if an intervention tactic should be employed.

    (a)    Only those officers trained in the use of the PIT will be authorized to use this procedure upon consideration of the circumstances and conditions presented at the time, including the potential for injury to officers, the public and occupants of the pursued vehicle. When feasible officers should employ a PIT manuever to terminate the pursuit rather than continuing to pursue. Officers are not required to seek approval prior to applying a PIT.

Copyright Lexipol, LLC 2021/07/12, All Rights Reserved.
Published with permission by Greenfield Police Department

(b)   Officers may consider using the PIT manuver as a use of force to prevent a pursuit from occuring when a subject displays behavior indicative of fleeing from an officer.

(c)   Blocking or vehicle intercept should only be considered in cases involving felony suspects or impaired drivers who pose a threat to public safety, and when officers reasonably believe that attempting a conventional enforcement stop will likely result in the driver attempting to flee in the vehicle. Because of the potential risk involved, this technique should only be employed by officers who have received training in such tactics and after giving consideration to the following:

1.   The need to immediately stop the suspect vehicle or prevent it from leaving substantially outweighs the risk of injury or death to occupants of the suspect vehicle, officers or other members of the public.

2.   All other reasonable intervention techniques have failed or reasonably appear ineffective.

3.   Employing the blocking maneuver does not unreasonably increase the risk to officer safety.

4.   The target vehicle is stopped or traveling at a low speed.

5.   At no time should civilian vehicles be used to deploy this technique.

(d)   Ramming a fleeing vehicle should be done only after other reasonable tactical means at the officer's disposal have been exhausted. This tactic should be reserved for situations where there does not appear to be another reasonable alternative method. When ramming is used as a means to stop a fleeing vehicle, the following factors should be present:

(e)   1.   The suspect is an actual or suspected felon who reasonably appears to represent a serious threat to the public if not apprehended.

2.   The suspect is driving with willful or wanton disregard for the safety of other persons or is driving in a reckless and life-endangering manner. If there does not reasonably appear to be a present or immediately foreseeable serious threat to the public, the use of ramming is not authorized.

(f)   Pursuing officers should obtain supervisor approval before attempting to box in a suspect vehicle during a pursuit. The use of such a technique must be carefully coordinated with all involved units, taking into consideration the circumstances and conditions apparent at the time, as well as the potential risk of injury to officers, the public and occupants of the pursued vehicle.

(g)   Tire deflation devices should be deployed only when it is reasonably apparent that only the pursued vehicle will be affected by their use. Prior to the deployment of spike strips, the officer shall notify pursuing units and the supervisor of the intent

Copyright Lexipol, LLC 2021/07/12, All Rights Reserved.
Published with permission by Greenfield Police Department

and location. Officers should carefully consider the limitations of such devices as well as the potential risk to officers, the public and occupants of the pursued vehicle. If the pursued vehicle is a motorcycle, a vehicle transporting hazardous materials or a school bus transporting children, officers and supervisors should weigh the potential consequences against the need to immediately stop the vehicle.

(h) Because roadblocks involve a potential for serious injury or death to occupants of the pursued vehicle if the suspect does not stop, the intentional placement of roadblocks in the direct path of a pursued vehicle is generally discouraged and should not be deployed without prior approval of a supervisor, and only then under extraordinary conditions when all other reasonable intervention techniques have failed or reasonably appear ineffective and the need to immediately stop the pursued vehicle substantially outweighs the risk of injury or death to occupants of the pursued vehicle, officers or other members of the public.

## 307.8.4 CAPTURE OF SUSPECTS
Proper self-discipline and sound professional judgment are the keys to a successful conclusion of a pursuit and apprehension of evading suspects. Officers shall use only that amount of force that reasonably appears necessary under the circumstances to properly perform their lawful duties.

Unless relieved by a supervisor, the primary officer should coordinate efforts to apprehend the suspect following the pursuit. Officers should consider the safety of the public and the involved officers when formulating plans to contain and capture the suspect.

## 307.9 REPORTING AND REVIEW REQUIREMENTS
All appropriate reports shall be completed to comply with local and state regulations (Wis. Stat. § 85.07(8)(b)).

(a) The primary officer shall complete appropriate crime/arrest reports.

(b) Other officers involved in the pursuit shall complete appropriate reports and suppliments or as directed by the duty supervisor.

(c) The duty supervisor will be responsible for notifying the shift commander about the details of the pursuit as soon as practical and should minimally contain the following information:

1. Date and time of pursuit

1. Length of pursuit in distance and time

2. Involved units and officers

3. Initial reason and circumstances surrounding the pursuit

4. Starting and termination points

5. Alleged offense, charges filed or disposition: arrest, citation or other release

6. Arrestee information should be provided if applicable

Copyright Lexipol, LLC 2021/07/12, All Rights Reserved.
Published with permission by Greenfield Police Department
Case 2:22-cv-00240-LA    Filed 12/20/23    Page 42 of 150    Document 62-1

      7.    Injuries and/or property damage

      8.    Medical treatment

      9.    The outcome of the pursuit

      10.    A preliminary determination that the pursuit appears to be in compliance with this policy or that additional review and/or follow-up is warranted

(d)    The duty supervisor is responsible for filling out of the Wisconsin Law Enforcement Pursuit Report (Form SP4533) and filing it electronically. (Wis. Stat. § 85.07(8)(b))

(e)    As soon as practical after the pursuit, officers are responsible for inspecting their vehicle for damage and roadworthiness, and reporting any damage or deficiencies found.

## 307.9.1   REGULAR AND PERIODIC PURSUIT TRAINING

In addition to initial and supplementary training on pursuits, all certified sworn employees will participate, no less than biennially, in at least four hours of training addressing this policy, pursuit guidelines, driving techniques, new technology and the importance of vehicle safety and protecting the public at all times. Training will include recognition of the need to balance the known offense and the need for immediate capture against the risks to officers and others. At least four hours of the training curriculum will be based on the model standards promulgated by the Law Enforcement Standards Board (LESB) and shall be delivered by a LESB-certified Emergency Vehicle Operations and Control (EVOC) instructor (Wis. Stat. § 165.85; Wis. Admin. Code LES § 3.07(4)). For purposes of LESB reporting obligations, the time period for annual training begins July 1st, and ends June 30th.

## 307.9.2   POLICY REVIEW

Certified members of this department shall certify in writing that they have received, read and understand this policy initially and upon any amendments (Wis. Stat. § 346.03(6)).

## 307.9.3   PURSUIT REVIEW BOARD

A Pursuit Review Board will be appointed by the Chief of Police for the purpose of reviewing pursuits, policy compliance, training needs and other factors. The Pursuit Review Board will meet as necessary but not less than monthly to review each pursuit and provide guidance and recommendations. The results of each review will be provided to the Chief of Police.

Pursuit Review Board recommendations may be used as the basis for officer counseling, training, policy modification, or other purposes as determined by the Chief.

Copyright Lexipol, LLC 2021/07/12, All Rights Reserved.
Published with permission by Greenfield Police Department

Case 2:22-cv-00340-JPS   Filed 12/20/23   Page 43 of 150   Document 62-1

# HALES CORNERS POLICE DEPARTMENT

| GENERAL ORDER | | | |
|---|---|---|---|
| TITLE **VEHICLE PURSUITS** | | | |
| NUMBER 510 | EFFECTIVE 03/01/01 | LAST UPDATE 07/19/22 | PAGES 10 |
| REVIEW PERIOD Annual | | REFERENCE | |

*NOTE: This General Order is for internal use only, and does not enlarge an officer's civil or criminal liability in any way. It should not be construed as the creation of a higher standard of safety or care in an evidentiary sense, with respect to third party claims. Violations of this directive, if proven, can only form the basis of a complaint by the department, and then only in a non-judicial administrative setting.*

## TABLE OF CONTENTS

DEFINITIONS ........................................................................................................................ 2
INITIATION OF PURSUIT ................................................................................................... 3
CONTINUATION OF PURSUITS ........................................................................................ 3
TERMINATION OF PURSUITS ........................................................................................... 4
PRIMARY UNIT RESPONSIBILITIES IN PURSUIT INCIDENTS ................................... 5
ASSISTING OFFICERS RESPONSIBILITES IN PURSUIT ................................................ 5
SUPERVISORY RESPONSIBILITIES IN PURSUIT INCIDENTS ..................................... 6
COMMUNICATIONS RESPONSIBILITY IN PURSUITS .................................................. 6
PURSUIT MANEUVERS AND TECHNIQUES ................................................................... 7
USE OF FORCIBLE STOPS DURING VEHICLE PURSUITS ............................................ 8
MULTI-JURISDICTIONAL PURSUITS .............................................................................. 9
PURSUIT DEBRIEFING ....................................................................................................... 9
REPORTING ......................................................................................................................... 9
INFORMING AND TRAINING OF AGENCY PERSONNEL ........................................... 10

## I. PURPOSE

The purpose of this General Order is to establish guidelines for vehicle pursuits involving the Village of Hales Corners Police Department

## II. POLICY

It is the policy of the Village of Hales Corners Police Department that all pursuits and emergency vehicle operations shall be conducted in accordance with state statutes, motor vehicle laws, and department policy. All personnel shall observe and exercise due regard for the safety of all person(s), and no vehicle pursuit shall be of such importance that the principles of safety become secondary.

## III. AUTHORITY

Wisconsin §346.03: Applicability of rules of the road to authorized emergency vehicles.
Wisconsin §346.04: Obedience to traffic officers, signs, signals; fleeing from an officer
Wisconsin §346.175: Vehicle owner's liability for fleeing a traffic officer.
Wisconsin §346.19(2): Duty to drive with due regard.

Exhibit 34

## IV. DEFINITIONS

A. Pursuit: A pursuit is a continued attempt to stop the operator of a motor vehicle who, after having received a visual and audible signal from an authorized emergency police vehicle, knowingly flees or attempts to elude any police officer by willful or wanton disregard of such signals.

B. Authorized Emergency Vehicles: Police vehicles equipped with a siren and flashing, oscillating, or rotating red; or red and blue, lights.

C. Pursuit Vehicles:  Any police vehicles involved in a pursuit.

Primary Unit:  The police vehicle that initiates a pursuit or any unit that assumes control of the pursuit as the lead vehicle.

Secondary Unit:  Any police vehicle that becomes directly involved as back up to the Primary Unit.

Assisting Unit:  Any other police vehicle actively engaged in an effort to control the pursuit and/or apprehend the offender.

D. Emergency Vehicle Operation: Operation of a police vehicle, giving a visual signal by means of flashing, oscillating or rotating red, or red and blue lights and an audible signal by means of a siren in accordance with §346.03. Additional information contained in the General Order #31 on *Emergency Vehicle Operation*.

E. Imminent Threat: An imminent threat means that there is a significant likelihood, based upon known facts, of death or serious injury if apprehension if delayed.

F. Road Block: This is a Deadly Force Intervention Option in which one or more police vehicles, or other obstruction(s), are used to block a roadway so that any vehicle approaching the location will be forced to stop or crash.

G. Boxing In: The use of one or more moving police vehicles to surround the fleeing vehicle while gradually slowing police vehicles to force the fleeing vehicle to a safe and gradual stop.

H. Partial Road Block: The placement of an object, or objects, on the roadway in a way that impeded or alters the normal flow of traffic to induce a fleeing vehicle to stop.

I. Ramming:  This is a Deadly Force Intervention Option in which deliberate contact by a police vehicle is made to the fleeing vehicle in such a manner as to prevent further operation of the fleeing vehicle.

J. Street Paralleling: The operation of a police vehicle on a street that is parallel to the street on which a pursuit is occurring in an effort to control the pursuit by containing the pursuit and warning other motorists.

K. Tire Puncture Devices: Commercially available devices, referred to as: Spike or Stop Strips; whose use is intended to puncture the tires on a fleeing vehicle to induce the driver to stop.

L. Trail: Follow the path of the pursuit at a safe speed, while obeying all traffic laws and without activating emergency equipment. If the pursuit is at a slow rate of speed, the trailing unit will maintain sufficient distance from the pursuit units to clearly indicate an absence of participation in the pursuit.

## V.   INITIATION OF PURSUIT

Any law enforcement officer in an authorized emergency police vehicle may initiate a pursuit when a suspect is attempting to avoid apprehension by failing to stop for the visual and audible signal. The pursuit of any vehicle that is failing to stop for an officer's signal is authorized in accordance with the following:

A. **Felonies** – Officers may pursue, attempt to stop and apprehend, as expeditiously and safely as possible, any person in a vehicle who the officer has reasonable grounds to believe:

   1. Has committed or attempted to commit a felony involving the use or threatened use of a weapon or threatened the use of deadly force with a high probability exists that the suspect, if not immediately apprehended, may cause death or great bodily harm to him/herself or others.

B. Officers may pursue any person if they are operating a vehicle in a manner which creates a probability of death or great bodily harm prior to the initiation of a vehicle contact.

C. **All Other Criminal Violations** – Officers may pursue and attempt to apprehend any person who is eluding apprehension in a vehicle when the officer has reasonable grounds to believe the person has committed any criminal violation, but shall discontinue pursuit when the act of pursuit, in itself, creates an unreasonable risk of death or great bodily harm to any person. The act of fleeing alone cannot be the exclusive criminal action to justify compliance with this policy.

D. Officers will not initiate or become involved in a pursuit while there is a citizen occupant in the squad.

## VI.   CONTINUATION OF PURSUITS

In determining whether or not to continue a pursuit that has been justifiably initiated, officers should consider the following factors:

A. Whether continuation of the pursuit would likely create a danger to the public, officer(s) or subject(s) which is apparently greater than the value of apprehending the subject(s), due to such factors as, but not limited to, the following:

   1. Road conditions;
   2. Weather conditions;
   3. Density of population;
   4. Severity of the crime;
   5. Necessity of pursuit by vehicle.

B. Whether the vehicle's registration or violator's identification has been established so that later apprehension may be accomplished, and, in the officer's opinion, there is no apparent

Case 2:22-cv-00320-JPS   Filed 12/20/23   Page 46 of 150   Document 62-1

continuing need for immediate apprehension (per provisions of §346.175 WI Statutes.)

C. Officers faced with the decision of whether or not to engage in a pursuit should also consider the following factors:

1. The officers training and experience.

2. Time of day that the pursuit was initiated.

3. Pursuit speeds are beyond the capability of the pursuit vehicle.

4. Apparent driving experience of suspect.

5. Number of occupants. The greater number of occupants the less desirable a pursuit.

6. The officer's familiarity with the area the pursuit is heading.

7. Speeds involved in the pursuit.

8. Quality of radio transmissions.

9. Officer Safety, as a pursuit continues, the ability and availability of backup officers.

VII. TERMINATION OF PURSUITS

A. Law enforcement officers will immediately terminate vehicle pursuits under any of the following conditions:

1. Immediately upon order of termination by a Shift Commander.

2. When it is necessary to stop to render aid to an injured person or persons, and no other unit is immediately available to do so.

3. When the officer's vehicle or emergency equipment malfunctions.

4. When the pursued vehicle's location is unknown.

B. Law enforcement officers should consider the termination of vehicle pursuits under any of the following conditions:

1. When the continuing distance between the pursuing and fleeing vehicles is such that further pursuit is futile;

2. When speeds exceed 80 miles per hour on non-interstate highways while in active pursuit;

3. When speeds are in excess of 100 miles per hour on interstate highways while in active pursuit;

Case 2:22-cv-00320-JPS   Filed 12/20/23   Page 47 of 150   Document 62-1

4. When it is determined that the vehicle is occupied by more than two or more persons and it is undetermined if the passengers are co-offenders, hostages, or unwilling participants.

## VIII. PRIMARY UNIT RESPONSIBILITIES IN PURSUIT INCIDENTS

The officer that initiates a vehicle pursuit has certain responsibilities that, if at all possible, must be met.

A. The officer must continue to operate his/her vehicle with due regard for the safety of him/herself, other motorists and/or pedestrians.

B. Once the officer has initiated the pursuit of a fleeing violator, the officer should advise the dispatcher of the following:

1. Squad number and the fact that the officer is in pursuit

2. Reason for the pursuit

3. Location of the fleeing vehicle

4. Speed of the fleeing vehicle

5. Direction of travel of the fleeing vehicle

6. Description of the fleeing vehicle

7. Number of occupants in the fleeing vehicle

C. Officers in pursuit shall continually evaluate weather, road, and traffic conditions during the pursuit.

D. Officers that are advised of an outside agency that is pursuing a vehicle into Hales Corners and requesting assistance will respond and assist with the pursuit if the pursuit meets the guidelines of this policy, or if ordered to do so by a supervisor.

## IX. ASSISTING OFFICERS RESPONSIBILITES IN PURSUIT

Hales Corners squads advised of a pursuit, should begin to head into the area of the pursuit to be available to assist. Normally only two police vehicles will actually pursue the violator, however there may be situations where more assistance is required. Once a secondary squad has joined the pursuit, the secondary officer should take over radio communication for the pursuit. The secondary officer should continue to update dispatch as to the location of the pursuit, the direction of the pursuit, speed of the violators, and any other pertinent information. Other Hales Corners squads not directly involved in the pursuit may proceed as an emergency vehicle to the area of the pursuit to be available to parallel the pursuit path, to assist in applying approved techniques to end the pursuit and assist with high risk vehicle stop tactics should the pursuit end.

With the permission of a supervisor, a unit may also trail the pursuit to the point of termination in order to provide information and assistance for the arrest of the suspect.

Case 2:22-cv-00320-JPS   Filed 12/20/23   Page 48 of 150   Document 62-1

## X.    SUPERVISORY RESPONSIBILITIES IN PURSUIT INCIDENTS

A pursuing officer has the authority to initiate, continue, or terminate a pursuit. On duty supervisors should be notified of pursuits and should monitor progress of pursuits. A shift commander may order termination of a pursuit for any reason and should coordinate any tactics or techniques.

A. The shift commander of the agency that initiated a vehicle pursuit shall at all times remain in command of personnel from his/her agency, regardless of whether or not the pursuit enters another jurisdiction, and has the authority to order termination or continuation of a pursuit for any reason.

B. The shift commander of an agency initiating a vehicle pursuit shall continually evaluate the pursuit based on the guidelines of this policy and any additional guidelines established by his/her agency to determine if the pursuit should continue or be terminated. The shift commander shall order his/her personnel to terminate the pursuit when the danger posed by continued pursuit outweighs the value of the apprehension of the suspect(s).

C. The initiating agency shift commander shall direct the actions of the pursuing officer(s) from his/her agency and may request assistance from other agencies in order to conclude the pursuit as safely and as quickly as possible.

D. If during the pursuit, the initiating officer relinquishes the primary pursuit role, the shift commander from that agency shall turn over operational command of the pursuit to the shift commander of the replacement primary pursuit officer.

E. When the pursuit is concluded with the suspect vehicle being stopped, the supervisors shall determine how many squads are needed for assistance. Only those squads needed should be permitted to proceed to the scene of the stop.

## XI.    COMMUNICATIONS RESPONSIBILITY IN PURSUITS

When Dispatch is advised that a unit is in pursuit, the following steps will be taken:

A. The pursuing unit will be given radio priority

B. Notify the on duty supervisor(s) of the pursuit if they are not aware.

C. Ascertain from Primary Unit if not already broadcast:

1.  Location

2.  Direction of travel

3.  Description of the fleeing vehicle

4.  Reason for the pursuit

D. Establish radio patch between the Primary Unit's current talkgroup and OACHASE, or OALAWCALL if OACHASE is in use.

Case 2:22-cv-00320-JPS   Filed 12/20/23   Page 49 of 150   Document 62-1

E. The dispatcher will monitor the pursuit and obtain updates on the location and direction of travel of the pursuit as necessary.

F. If it appears that the pursuit will head out of the Village's borders, the dispatcher will determine which agency to notify and advise them of the reason for the pursuit and a description of the fleeing vehicle while also requesting mutual aid from that agency. The dispatcher will then continually update the other agency as to the location of the pursuit and any other pertinent information.

G. If an outside agency informs Dispatch that they are in pursuit, and heading into Hales Corners, the dispatcher will determine if the agency is requesting assistance from Hales Corners and the reason for the outside agency's pursuit.

   1. If assistance is requested Dispatch will immediately advise all squads of the nature of the outside agency's pursuit, the direction of the pursuit, and the description of the fleeing vehicle.

   2. If assistance is not requested, dispatch will advise the shift commander of the outside agency's pursuit.

XII. PURSUIT MANEUVERS AND TECHNIQUES

A. Force To Stop Techniques – shall be used in accordance with Section XIV.

B. Tire Puncture Devices - shall be used in accordance with the Section XIII.

C. Traffic Control Devices – due regard must be used whenever officers disregard traffic signs and signals. All available warning devices shall be utilized.

D. Passing - there shall be no attempt by an officer operating Pursuit Vehicles to pass another unless the officer received permission from the Primary Unit or Shift Commander.

E. Controlled Access Highways – The preferred method for officers pursuing vehicles that are fleeing the wrong way on Interstate or controlled access highways or divided roadways is to parallel their path in the lanes of proper traffic direction with the intent of forewarning oncoming traffic of the approaching hazard.

F. Officers involved should use high risk vehicle contact tactics to take the fleeing driver and all other occupants into custody once the pursuit ends.

XIII. TIRE PUNCTURE DEVICES - SPIKE STRIPS

A. Spike strips may be deployed when such action represents the most effective and expedient means of apprehending a suspect.

B. Spike strips may be used with any vehicle except motorcycles.

C. Spike Strips shall be used in accordance with the following general provisions to enhance the ability of officers to apprehend occupants of a fleeing motor vehicle.

Case 2:22-cv-00320-JPS   Filed 12/20/23   Page 50 of 150   Document 62-1

D. PROCEDURES – Any attempt to deploy spike strips shall be done so in a reasonable manner with consideration being given to the following criteria:

1. The presence of vehicular or pedestrian traffic, weather conditions, visibility, time of day, and the ability to establish the deployment of spike strips at a location which affords the greatest degree of safety.

2. Sufficient time, based upon the location and speed of the pursuit, must be available to deploy the spike strips safely.

E. CRITERIA FOR USE – The following criteria should be met for any spike strip deployment:

1. The spike strip location should be as well lit as possible and emergency vehicle lighting systems should be activated.

2. Police vehicles shall not be parked so as to intentionally force a collision.

3. Spike strip locations shall be selected so as to provide approaching vehicles adequate time and distance to stop voluntarily and avoid a collision.

4. If possible, all nonrelated traffic should be diverted away from the selected location.

5. All persons shall be removed from the area of the spike strip deployment and officers should move away from their parked vehicles to prevent injury in the event that a collision occurs.

6. Spike strips shall be deployed for a minimum amount of time prior to their intended use and shall be removed as soon as possible after the completion of their use.

7. Spike strips should be removed even before their intended use if it becomes apparent that the spike strip deployment is creating an unreasonable hazard.

F. SHIFT COMMANDER RESPONSIBILITIES - The Shift Commander shall be responsible from the time of notification of the pursuit until the event is concluded.

1. The Shift Commander shall direct the establishment of spike strip deployment and ensure the pursuing units are informed of the location of deployed spike strips.

2. The Shift Commander shall prohibit officers from deploying spike strips in a manner that creates an unreasonable risk to the public, officers, or the suspect.

G. OFFICER RESPONSIBILITIES

1. Officers shall deploy spike strips in accordance with this General Order.

2. Officers shall inform the pursuing units and communications of spike strips deployment as soon as it appears likely the ongoing pursuit will be encountering the spike strips.

XIV. USE OF FORCIBLE STOPS DURING VEHICLE PURSUITS

Case 2:22-cv-00320-JPS   Filed 12/20/23   Page 51 of 150   Document 62-1

It is the Department's policy that Force to Stop Techniques will only be used when there is an imminent threat of death because they are, like the use of firearms, an application of Deadly Force. Force to stop techniques include the following:

A. Roadblocks: A roadblock consists of an object placed on the roadway in such a manner as to completely block the normal flow of traffic and leaves no escape route for the fleeing driver. The use of a roadblock must be authorized by the Shift Commander and is prohibited except when the use of Deadly Force is warranted.

   1. Even when its use is justified the roadblock must still be clearly visible and provide adequate warning to allow vehicles to come to a safe stop.

B. Ramming: Using a police vehicle to intentionally make contact with the vehicle being driven by the fleeing violator. Deliberate contact or otherwise forcing the suspect vehicle into parked cars, ditches, or other obstacles is prohibited unless Deadly Force is warranted.

XV. MULTI-JURISDICTIONAL PURSUITS

A. Inter-Jurisdictional Pursuits - Dispatch will, at the direction of the Shift Commander, notify outside agencies of a pursuit in our jurisdiction and advise if it is a request for assistance or merely a courtesy notification.

B. Officers should not get involved in other jurisdictional pursuits unless specifically ordered by the Shift Commander or requested under mutual aid. In these instances, all departmental pursuit policies are in effect.

C. The Shift Commanders of agencies assisting in a pursuit shall coordinate the deployment of officers involved in the pursuit in the use of pursuit tactics and techniques as may be necessary to control and safely terminate the pursuit; however,

   1. The Hales Corners Shift Commander shall at all times remain in command of Hales Corners Police personnel, regardless of whether or not the pursuit enters another jurisdiction,

   2. The Shift Commander of any other agency involved shall at all times remain in command of that agency's personnel, regardless of the jurisdiction of the pursuit.

D. A Shift Commander from an assisting agency may at any time withdraw their agency's personnel from participation in a pursuit. Notification of withdrawal should be made by the withdrawing agency via the appropriate talkgroup so that all personnel involved in the pursuit are made aware of the withdrawal.

E. When the pursuit concludes with the stopping of the suspect vehicle, the Shift Commander of the Primary Unit's agency should determine how many squads are needed for assistance. Only those squads needed should proceed to the scene of the stop.

XVI. PURSUIT DEBRIEFING AND REPORTING

A. A Case number shall be assigned to all pursuit incidents.

Case 2:22-cv-00320-JPS   Filed 12/20/23   Page 52 of 150   Document 62-1

B. All Hales Corners police officers who become involved in a vehicle pursuit, either as a primary pursuing officer or as an assisting officer, shall file a complete written report regarding the incident. A case report number shall be assigned to the incident. The primary officer involved will also complete the *TraCS Pursuit form* and the *HCPD Pursuit Data – Officer Report.*

C. Pursuit incidents will be analyzed and forwarded to the Chief of Police to determine adherence to agency policy. This review will be conducted by a Pursuit Analysis Team which consists of the Operations Lieutenant and a Patrol Sergeant.

The purpose of the Pursuit Analysis Team is as follows:

- To promote a safe working environment for all employees and citizens.
- To correct unsafe work practices.
- To recommend appropriate training or corrective action to be taken to the Chief of Police. All recommendations to the Chief of Police shall be advisory.

This analysis should take place upon receipt of all available reports, including the *Pursuit Data – Officer Report*. If possible, a member of the Pursuit Analysis Team should drive the pursuit route, prior to final analysis.

D. The shift commander shall ensure that a *Wisconsin Law Enforcement Pursuit Report* Form be submitted any time a Hales Corners Police officer is involved in a pursuit, regardless if the pursuit originated in the Village of Hales Corners.

E. §85.07(8) Wisconsin Statutes requires law enforcement agencies to annually submit data to the Department of Transportation regarding vehicle pursuits that occur in their jurisdiction. The format for reporting the data will be as prescribed by the Wisconsin State Patrol.

XVII. INFORMING AND TRAINING OF AGENCY PERSONNEL

A. The contents of this General Order shall be reviewed by the Chief of Police or his/her designee at an interval of no less than every other year.

B. By June 30th of each even numbered year, all personnel shall review this General Order. In addition, each law enforcement officer shall biennially complete at least 4 hours of training from curricula based upon model standards promulgated by the Law Enforcement Standards Board.

C. In addition to this General Order the Hales Corners Police Department shall provide written guidelines to its officers regarding emergency vehicle operations pursuant to §346.03(6) Wisconsin Statutes.

| ISSUED BY: | HISTORY: | | | |
|---|---|---|---|---|
| | Effective: | 03/01/2001 | Revised: | 02/25/2019 |
| *[signature]* | GO Format: | 10/27/2003 | Reviewed: | 04/09/2020 |
| Eric R. Cera | Reviewed: | 07/20/2004 | Reviewed: | 05/04/2021 |
| Chief of Police | Revised: | 09/05/2008 | Revised: | 07/02/2021 |
| | Reviewed: | 05/23/2012 | Revised: APH | 07/19/2022 |
| | Revised: | 07/07/2014 | | |
| | Revised: | 05/18/2016 | | |

**Hales Corners Police Department Pursuit Data - Officer Report**

In compliance with HCPD General Orders; Emergency Vehicle Operation and Pursuits. In the event of a pursuit, the primary officer is required to complete this report and submit it to the Operations Lieutenant when the incident report is complete to ensure all information is included.

| | |
|---|---|
| Pursuit Date: | Day of Week: |
| Primary Officer: | Officer Experience: |
| Commanding Officer: | Road Supervisor: |
| Total Squads Involved in Pursuit: | Total Officers Involved in Pursuit: |

| | | | | | |
|---|---|---|---|---|---|
| Reason for Pursuit: | ☐ Ordinance Violation | ☐ Traffic Offense | ☐ Criminal Traffic | | |
| | ☐ Misdemeanor | ☐ Felony | ☐ Wanted Person | | |
| | ☐ Other: | | | | |

| | | | | | |
|---|---|---|---|---|---|
| Pursuit: Time Started | | Pursuit: Time Ended | | Elapsed Time: | |
| Pursuit Location: Start | | | | | |
| Pursuit Location: End | | | | | |
| Length of Pursuit | | mile(s) | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| Weather Conditions: | Temperature: | | ☐ Clear | ☐ Cloudy | ☐ Rain | |
| | | | ☐ Snow | ☐ Fog | ☐ Sleet | |
| | | | ☐ Other: | | | |
| | Visibility: | | ☐ Clear | ☐ Limited | | |
| Road Conditions: | ☐ Dry | ☐ Wet | ☐ Other: | | | |
| Vehicular Traffic: | ☐ None | ☐ Light | ☐ Moderate | | ☐ Heavy | |
| Pedestrian Traffic: | ☐ None | ☐ Light | ☐ Moderate | | ☐ Heavy | |

| | |
|---|---|
| Maximum Speed - Primary Squad: | |
| Est. Maximum Speed - Fleeing Vehicle: | |

| | | | | |
|---|---|---|---|---|
| Crash Information: | Deaths: | | ☐ N/A | |
| | Great Bodily Injury: | | ☐ N/A | |
| | Property Damage Value: | $ | ☐ N/A | |
| Outcome of Pursuit: | ☐ Terminated by Officer ☐ Terminated by Supervisor | | | |
| | ☐ Terminated by Shift Commander ☐ Motor Vehicle Crash | | | |
| | ☐ Violator Stopped on Own Accord ☐ Violator Vehicle Failure | | | |
| | ☐ Violator Abandoned Vehicle/Apprehended | | | |
| | ☐ Violator Abandoned Vehicle/Escaped | | | |
| | ☐ Lawful Intervention: | | | |

Case 2:22-cv-00320-JPS   Filed 12/20/23   Page 54 of 150   Document 62-1



# Hales Corners Police Department
## Pursuit Analysis

Date:

To:       Chief of Police

From:

Subject:   Pursuit Analysis

Case #:                    Crash Rprt #:                    Tracs Rprt #:

**Pursuit Analysis Determination**

After reviewing all available reports, debriefing the primary/secondary officers (if applicable), road supervisor (if applicable), driving the pursuit route, the following determinations were made:

HCPD General Order 510 – *Pursuits*                    ☐ Complied    ☐ Non-Compliance

HCPD General Order 518 – *Emergency Vehicle Operation*        ☐ Complied    ☐ Non-Compliance

If an officer(s) did not comply with Department Standards – submit an I/O to Chief of Police identifying areas of non-compliance.

| Operations Lieutenant: | | Date: | |
|---|---|---|---|
| Patrol Sergeant: | | Date: | |

# Vehicle Pursuits

## 307.1  PURPOSE AND SCOPE

Vehicle pursuits expose innocent citizens, law enforcement officers and fleeing violators to the risk of serious injury or death. The primary purpose of this policy is to provide officers with guidance in balancing the safety of the public and themselves against law enforcement's duty to apprehend violators of the law (Wis. Stat. § 346.03(6); Wis. Admin. Code § LES 3.07).

Another purpose of this policy is to minimize the potential for pursuit-related crashes. Vehicle pursuits require officers to exhibit a high degree of common sense and sound judgment. Officers must not forget that the immediate apprehension of a suspect is generally not more important than the safety of the public and pursuing officers.

### 307.1.1  PHILOSOPHY

Deciding whether to pursue a motor vehicle is a critical decision that must be made quickly and under difficult and unpredictable circumstances. In recognizing the risk to public safety created by vehicle pursuits, no officer or supervisor shall be criticized or disciplined for deciding not to engage in a vehicle pursuit due to the risk involved. This includes circumstances where department policy would permit the initiation or continuation of the pursuit. It is recognized that vehicle pursuits are not always predictable and decisions made pursuant to this policy will be evaluated according to the totality of the circumstances reasonably available at the time of the pursuit.

Officers must remember that the most important factors to the successful conclusion of a pursuit are proper self-discipline and sound professional judgment. Officers conduct during the course of a pursuit must be objectively reasonable; that is, what a reasonable officer would do under the circumstances. An individual's unreasonable desire to apprehend a fleeing suspect at all costs has no place in professional law enforcement.

## 307.2  DEFINITIONS

Definitions related to this policy include:

**Vehicle pursuit** - An event involving one or more peace officers attempting to apprehend a suspect who is attempting to avoid arrest while operating a motor vehicle by using high speed or other evasive tactics, such as increasing the speed of the vehicle, extinguishing the lights of the vehicle, disregarding traffic warning signs, stop signs, red lights, driving off a roadway, turning suddenly or driving in a legal manner but willfully failing to yield to an officer's signal to stop (Wis. Stat. § 85.07(8)(a)).

**Blocking or vehicle intercept** - A slow-speed coordinated maneuver where two or more law enforcement vehicles simultaneously intercept and block the movement of a suspect vehicle, the driver of which may be unaware of the impending enforcement stop. The goal is containment and preventing a pursuit. Blocking is not a moving or stationary road block.

**Boxing-in** - A tactic designed to stop a violator's vehicle by surrounding it with law enforcement vehicles and then slowing all vehicles to a stop.

Copyright Lexipol, LLC 2022/10/21, All Rights Reserved.
Published with permission by Manitowoc Police Department

Case 2:22-cv-00340-LA Filed ... Exhibit 35 ...0  Document 62-1

**Pursuit Intervention Technique (PIT)** - A low-speed maneuver intended to terminate the pursuit by causing the violator's vehicle to spin out and come to a stop.

**Ramming** - The deliberate act of impacting a violator's vehicle with another vehicle to functionally damage or otherwise force the violator's vehicle to stop.

**Roadblocks** - A tactic designed to stop a violator's vehicle by intentionally placing a vehicle or other immovable object in the path of the violator's vehicle.

**Tire deflation device, spikes or tack strips** - A device that extends across the roadway and is designed to puncture the tires of the pursued vehicle.

## 307.3   OFFICER RESPONSIBILITIES

It is the policy of this department that a vehicle pursuit shall be conducted with the visible signal of at least one flashing, oscillating or rotating red light, or a blue and red light, and also an audible signal by means of a siren or exhaust whistle activated on an authorized emergency vehicle (Wis. Stat. § 346.03(3)).

The following policy is established to provide officers with guidelines for driving with due regard and caution for the safety of all persons using the highway (Wis. Stat. § 346.03(5)).

### 307.3.1   WHEN TO INITIATE A PURSUIT

Officers are authorized to initiate a pursuit when it is reasonable to believe that a suspect is attempting to evade arrest or detention by fleeing in a vehicle that has been given a signal to stop by a peace officer (Wis. Stat. § 346.03; Wis. Admin. Code LES § 3.07(1)(a)).

The following factors individually and collectively shall be considered in deciding whether to initiate or continue a pursuit (Wis. Stat. § 346.03(6)):

(a)   The seriousness of the known or reasonably suspected crime and its relationship to community safety. (In most cases serious felonies ONLY.)

(b)   The importance of protecting the public and balancing the known or reasonably suspected offense and the apparent need for immediate capture against the risks to officers, innocent motorists and others.

(c)   The apparent nature of the fleeing suspect (e.g., whether the suspect represents a serious threat to public safety).

(d)   The identity of the suspect has been verified and there is comparatively minimal risk in allowing the suspect to be apprehended at a later time.

(e)   The safety of the public in the area of the pursuit, including the type of area, time of day, the amount of vehicular and pedestrian traffic (e.g., school zones) and the speed of the pursuit relative to these factors.

Copyright Lexipol, LLC 2022/10/21, All Rights Reserved.
Published with permission by Manitowoc Police Department

(f)  The pursuing officer's familiarity with the area of the pursuit, the quality of communication between the pursuing units and the dispatcher/supervisor, and the driving capabilities of the pursuing officers under the conditions of the pursuit.

(g)  The weather, traffic and road conditions that unreasonably increase the danger of the pursuit when weighed against the risks resulting from the suspect's escape.

(h)  The performance capabilities of the vehicles used in the pursuit in relation to the speed and other conditions of the pursuit.

(i)  Vehicle speeds.

(j)  Other persons in or on the pursued vehicle (e.g., passengers, co-offenders and hostages).

(k)  The availability of other resources, such as aircraft assistance.

(l)  The police unit is carrying passengers other than on-duty police officers. Pursuits should not be undertaken with a prisoner in the pursuit vehicle unless exigent circumstances exist, and then only after the need to apprehend the suspect is weighed against the safety of the prisoner in transport. A unit containing more than a single prisoner should not participate in a pursuit.

## 307.3.2   WHEN TO TERMINATE A PURSUIT

Pursuits should be discontinued whenever the totality of objective circumstances known or which reasonably ought to be known to the officer or supervisor during the pursuit indicates that the present risk of continuing the pursuit reasonably appears to outweigh the risk resulting from the suspect's escape (Wis. Admin. Code § LES 3.07(1)(c)).

Operating an emergency vehicle in a pursuit with emergency lights and siren does not relieve the operator of an authorized emergency vehicle of the duty to drive with due regard for the safety of all persons and does not protect the driver from the consequences of reckless disregard for the safety of others (Wis. Stat. § 346.03(5)).

The above factors on when to initiate a pursuit are expressly included herein and will apply equally to the decision to discontinue as well as the decision to initiate a pursuit. Officers and supervisors must objectively and continuously weigh the seriousness of the offense against the potential danger to innocent motorists, themselves and the public when electing to continue a pursuit. In the context of this policy, the term "terminate" shall be construed to mean to discontinue or to stop chasing the fleeing vehicle.

In addition to the factors listed above, the following factors should be considered when deciding whether to terminate a pursuit:

(a)  The distance between the pursuing officers and the fleeing vehicle is so great that further pursuit would be futile or require the pursuit to continue for an unreasonable time or distance.

Case 1:22-cv-00244-PP   Filed 12/20/23   Page 58 of 150   Document 62-1

(b)    The pursued vehicle's location is no longer definitely known.

(c)    The officer's pursuit vehicle sustains damage or a mechanical failure that renders it unsafe to drive.

(d)    The pursuit vehicle has an emergency equipment failure that causes the vehicle to no longer qualify for use in emergency operations (Wis. Stat. § 346.03(3)).

(e)    Extended pursuits of violators for misdemeanors not involving abuse or risk of serious harm (independent of the pursuit) are discouraged.

(f)    The hazards to uninvolved bystanders or motorists.

(g)    When the identity of the offender is known and it does not reasonably appear that the need for immediate capture outweighs the risks associated with continuing the pursuit, officers should strongly consider discontinuing the pursuit and apprehending the offender at a later time (Wis. Stat. § 346.175(3)(a)).

(h)    When directed to terminate the pursuit by a supervisor.

(i)    When it is necessary to stop to render aid to an injured person and no other officer is available to do so (Wis. Admin. Code § LES 3.07(1)(c)(5)).

### 307.3.3   SPEED LIMITS
The speed of a pursuit is a factor that should be evaluated on a continuing basis by the officer and supervisor. Vehicle speeds shall be taken into consideration to prevent endangering public safety, officer safety and the safety of the occupants of the fleeing vehicle (Wis. Stat. § 346.03(6)).

Should high vehicle speeds be reached during a pursuit, officers and supervisors shall also consider these factors when determining the reasonableness of the speed of the pursuit.

(a)    Pursuit speeds have become unreasonably unsafe for the surrounding conditions.

(b)    Pursuit speeds have exceeded the driving ability of the officer.

(c)    Pursuit speeds are beyond the capabilities of the pursuit vehicle, thus making its operation unsafe.

### 307.4   PURSUIT UNITS
Pursuit units should be limited to three vehicles (two units and a supervisor). However, the number of units involved will vary with the circumstances.

An officer or supervisor may request additional units to join a pursuit if, after assessing the factors outlined above, it appears that the number of officers involved would be insufficient to safely arrest the suspect. All other officers shall stay out of the pursuit but should remain alert to its progress and location. Any officer who drops out of a pursuit may then, if necessary, proceed to the termination point at legal speeds, following the appropriate rules of the road.

Distinctively marked patrol vehicles should replace unmarked vehicles involved in a pursuit whenever practicable.

Copyright Lexipol, LLC 2022/10/21, All Rights Reserved.
Published with permission by Manitowoc Police Department

Case 22-cv-00340-JPS    Filed 12/20/23    Page 59 of 150    Document 62-1

### 307.4.1  MOTORCYCLE OFFICERS

A distinctively marked patrol vehicle equipped with emergency overhead lighting should replace a police motorcycle as primary and/or secondary pursuit unit as soon as practicable.

### 307.4.2  VEHICLES WITHOUT EMERGENCY EQUIPMENT

Vehicles not equipped with a red or blue emergency light and siren are prohibited from initiating or joining in any pursuit. Officers in such vehicles may provide support to pursuing units as long as the vehicle is operated in compliance with all traffic laws.

### 307.4.3  PRIMARY UNIT RESPONSIBILITIES

The initial pursuing officer will be designated as the primary pursuit unit and will be responsible for the conduct of the pursuit unless it is unable to remain reasonably close enough to the violator's vehicle. The primary responsibility of the officer initiating the pursuit is the apprehension of the suspect without unreasonable danger to him/herself or other persons.

The primary unit should notify JDC - Joint Dispatch Center, commencing with a request for priority radio traffic, that a vehicle pursuit has been initiated, and as soon as practicable, provide information including, but not limited to:

 (a) The reason for the pursuit.

 (b) The location and direction of travel.

 (c) The speed of the fleeing vehicle.

 (d) The description of the fleeing vehicle and license number, if known.

 (e) The number of occupants.

 (f) The identity or description of the known occupants.

 (g) The weather, road and traffic conditions.

 (h) The identity of other agencies involved in the pursuit.

 (i) Information concerning the use of firearms, threat of force, injuries, hostages or other unusual hazards.

Unless relieved by a supervisor or secondary unit, the officer in the primary unit shall be responsible for broadcasting the progress of the pursuit. Unless circumstances reasonably indicate otherwise, the primary unit should relinquish the responsibility of broadcasting the progress of the pursuit to a secondary unit or aircraft joining the pursuit to minimize distractions and allow the primary unit to concentrate foremost on safe pursuit tactics.

### 307.4.4  SECONDARY UNIT RESPONSIBILITIES

The second officer in the pursuit is responsible for:

 (a) Immediately notifying the dispatcher of his/her entry into the pursuit.

Copyright Lexipol, LLC 2022/10/21, All Rights Reserved.
Published with permission by Manitowoc Police Department

   (b)    Remaining at a safe distance behind the primary unit unless directed to assume the role of primary officer, or if the primary unit is unable to continue the pursuit.

   (c)    Broadcasting the progress of the pursuit unless the situation indicates otherwise.

   (d)    Serving as backup to the primary unit once the subject has been stopped.

## 307.4.5  PURSUIT DRIVING TACTICS

The decision to use specific driving tactics requires the same assessment of considerations outlined in the factors to be considered concerning pursuit initiation and termination. The following are tactics for units involved in the pursuit:

   (a)    Officers, considering their driving skills and vehicle performance capabilities, will space themselves from other involved vehicles such that they are able to see and avoid hazards or react safely to maneuvers by the fleeing vehicle.

   (b)    Officers may proceed past a red or stop signal or stop sign but only after slowing down as may be necessary for safe operation (Wis. Stat. § 346.03(2)).

   (c)    Because intersections can present increased risks, the following tactics should be considered:

       1.    Available units not directly involved in the pursuit may proceed safely to controlled intersections ahead of the pursuit in an effort to warn cross traffic.

       2.    Pursuing units shall exercise due caution and slow down as may be necessary for safe operation when proceeding through controlled intersections.

   (d)    As a general rule, officers should not pursue a vehicle driving the wrong way on a roadway, highway, or freeway. In the event the pursued vehicle does so, the following tactics should be considered:

       1.    Requesting assistance from an available air unit.

       2.    Maintaining visual contact with the pursued vehicle by paralleling on the correct side of the roadway.

       3.    Requesting other units to observe exits available to the suspect.

   (e)    Notifying the Wisconsin State Patrol or other law enforcement agency if it appears the pursuit may enter their jurisdiction.

   (f)    Officers involved in a pursuit should not attempt to pass other units unless the situation indicates otherwise or they are requested to do so by the primary unit and a clear understanding of the maneuver process exists between the involved officers.

## 307.4.6  TACTICS/PROCEDURES FOR UNITS NOT INVOLVED IN THE PURSUIT

There should be no paralleling of the pursuit route. Officers are authorized to use emergency equipment at intersections along the pursuit path to clear intersections of vehicular and pedestrian traffic to protect the public. Officers should remain in their assigned area and should not become involved with the pursuit unless directed otherwise by a supervisor.

Copyright Lexipol, LLC 2022/10/21, All Rights Reserved.
Published with permission by Manitowoc Police Department

Case 2:22-cv-00340-BHL    Filed 12/20/23    Page 61 of 150    Document 62-1

Non-pursuing personnel needed at the termination of the pursuit should respond in a non-emergency manner, observing the rules of the road.

The primary unit, secondary unit and supervisor should be the only units operating under emergency conditions (emergency lights and siren) unless other units are assigned to the pursuit.

### 307.4.7   PURSUIT TRAILING

In the event that the initiating unit from this agency relinquishes control of the pursuit to another unit or jurisdiction, that initiating unit may, with permission of a supervisor, trail the pursuit to the termination point in order to provide information and assistance for the arrest of the suspect.

The term "trail" means to follow the path of the pursuit at a safe speed, while obeying all traffic laws and without activating emergency equipment. If the pursuit is at a slow rate of speed, the trailing unit will maintain sufficient distance from the pursuit units to clearly indicate an absence of participation in the pursuit.

## 307.5   SUPERVISORY CONTROL AND RESPONSIBILITIES

It is the policy of this department that available supervisory and management control will be exercised over all vehicle pursuits involving officers from this department.

The field supervisor of the officer initiating the pursuit, or if unavailable, the nearest field supervisor will be responsible for the following:

(a)   Upon becoming aware of a pursuit, immediately notifying involved officers and JDC - Joint Dispatch Center of supervisory presence and ascertaining all reasonably available information to continuously assess the situation and risk factors associated with the pursuit in order to ensure that the pursuit is conducted within established department guidelines.

(b)   Engaging in the pursuit, when appropriate, to provide on-scene supervision.

(c)   Exercising management and control of the pursuit even if not engaged in it.

(d)   Ensuring that no more than the number of required law enforcement units needed are involved in the pursuit under the guidelines set forth in this policy.

(e)   Directing that the pursuit be terminated if, in his/her judgment, it is not justified to continue the pursuit under the guidelines of this policy.

(f)   Ensuring that aircraft assistance is requested, if available.

(g)   Ensuring that the proper radio channel is being used.

(h)   Ensuring the notification and/or coordination of outside agencies if the pursuit either leaves or is likely to leave the jurisdiction of this agency.

(i)   Control and manage MTPD units when a pursuit enters another jurisdiction.

(j)   Preparing a post-pursuit critique and analysis of the pursuit for training purposes.

Copyright Lexipol, LLC 2022/10/21, All Rights Reserved.
Published under license by Manitowoc Police Department

Case 22-cv-00340-bbc   Filed 12/20/23   Page 62 of 150   Document 62-1

### 307.5.1 SHIFT COMMANDER RESPONSIBILITIES
Upon becoming aware that a pursuit has been initiated, the Shift Commander should monitor and continually assess the situation and ensure the pursuit is conducted within the guidelines and requirements of this policy. The Shift Commander has the final responsibility for the coordination, control and termination of a vehicle pursuit and shall be in overall command.

The Shift Commander shall review all pertinent reports for content and forward them to the Assistant Chief.

## 307.6 COMMUNICATIONS
If the pursuit is confined within the City limits, radio communications will be conducted on the primary channel unless instructed otherwise by a supervisor or communications dispatcher. If the pursuit leaves the jurisdiction of this department or such is imminent, involved units should, whenever available, switch radio communications to an emergency channel most accessible by participating agencies and units.

### 307.6.1 LOSS OF PURSUED VEHICLE
When the pursued vehicle is lost, the primary unit should broadcast pertinent information to assist other units in locating the vehicle. The primary unit will be responsible for coordinating any further search for either the pursued vehicle or suspects fleeing on foot.

## 307.7 INTERJURISDICTIONAL CONSIDERATIONS
When a pursuit enters another agency's jurisdiction, the primary officer or supervisor, taking into consideration distance traveled, unfamiliarity with the area and other pertinent facts, should determine whether to request the other agency to assume the pursuit. Unless entry into another jurisdiction is expected to be brief, it is generally recommended that the primary officer or supervisor ensure that notification is provided to each outside jurisdiction into which the pursuit is reasonably expected to enter, regardless of whether such jurisdiction is expected to assist.

### 307.7.1 ASSUMPTION OF PURSUIT BY ANOTHER AGENCY
Manitowoc Police Department officers will discontinue the pursuit when another agency has assumed the pursuit, unless the continued assistance of the Manitowoc Police Department is requested by the agency assuming the pursuit. Upon discontinuing the pursuit, the primary unit may proceed upon request, with or at the direction of a supervisor, to the termination point to assist in the investigation. A supervisor should coordinate with the agency managing the termination point to determine the supervisor's need to respond or otherwise assist in the investigation. The supervisor should obtain any information that is necessary for inclusion in any reports from the agency managing the termination point.

The role and responsibilities of officers at the termination of a pursuit that was initiated by this department shall be coordinated with appropriate consideration of the units from the agency assuming the pursuit.

Notification of a pursuit in progress should not be construed as a request to join the pursuit. Requests to or from another agency to assume a pursuit should be specific. Because of

Copyright Lexipol, LLC 2022/10/21, All Rights Reserved.
Published with permission by Manitowoc Police Department

Case 2:22-cv-00340-LA   Filed 12/20/23   Page 63 of 150   Document 62-1

communication limitations between local agencies, a request for another agency's assistance will mean that its personnel will assume responsibility for the pursuit. For the same reasons, when a pursuit leaves another jurisdiction and a request for assistance is made to this department, the other agency should relinquish control.

## 307.7.2  PURSUITS EXTENDING INTO THIS JURISDICTION

The agency that initiates a pursuit shall be responsible for conducting the pursuit. Units from this department should not join a pursuit unless specifically requested to do so by the agency whose peace officers are in pursuit. The exception to this is when a single unit from the initiating agency is in pursuit. Under this circumstance, a unit from this department may join the pursuit until sufficient units from the initiating agency join the pursuit.

When a request is made for this department to assist or take over a pursuit that has entered this jurisdiction, the supervisor should consider these additional factors:

(a)  Ability to maintain the pursuit

(b)  Circumstances serious enough to continue the pursuit

(c)  Adequate staffing to continue the pursuit

(d)  The public's safety within this jurisdiction

(e)  Safety of the pursuing officers

As soon as practicable, a supervisor or the Shift Commander should review a request for assistance from another agency. The Shift Commander or supervisor, after consideration of the above factors, may decline to assist in or assume the other agency's pursuit.

Assistance to a pursuing outside agency by officers of this department will terminate at the City limits provided that the pursuing peace officers have sufficient assistance from other sources. Ongoing participation from this department may continue only until sufficient assistance is present.

In the event that a pursuit from another agency terminates within this jurisdiction, officers shall notify the initiating agency of the termination of the pursuit, provide appropriate assistance to peace officers from the initiating and other involved agencies including, but not limited to, scene control, coordination and completion of supplemental reports and any other assistance requested or needed.

## 307.8  PURSUIT INTERVENTION

Pursuit intervention is an attempt to terminate the ability of a suspect to continue to flee in a motor vehicle through tactical application of technology, tire deflation devices, blocking, boxing-in, PIT, ramming or roadblock procedures.

### 307.8.1  WHEN USE IS AUTHORIZED

Use of pursuit intervention tactics should be employed only after approval of a supervisor. In deciding whether to use intervention tactics, officers/supervisors should balance the risk of allowing the pursuit to continue with the potential hazards arising from the use of each tactic to

Copyright Lexipol, LLC 2022/10/21, All Rights Reserved.
Published with permission by Manitowoc Police Department

the public, the officers and persons in or on the pursued vehicle. With this in mind, the decision to use any intervention tactic should be reasonable in light of the circumstances apparent to the officer at the time of the decision.

### 307.8.2   USE OF FIREARMS
The use of firearms to disable a pursued vehicle is not generally an effective tactic and involves all the dangers associated with discharging firearms. Officers should not utilize firearms during an ongoing pursuit unless the conditions and circumstances meet the requirements authorizing the use of deadly force. Nothing in this section shall be construed to prohibit any officer from using a firearm to stop a suspect from using a vehicle as a deadly weapon.

### 307.8.3   INTERVENTION STANDARDS
Any pursuit intervention tactic, depending upon the conditions and circumstances under which it is used, may present dangers to the officers, the public or anyone in or on the vehicle being pursued. Certain applications of intervention tactics may be construed to be a use of deadly force and are subject to the requirements for such use. Officers shall consider these facts and requirements prior to deciding how, when, where and if an intervention tactic should be employed.

(a) Blocking or vehicle intercept should only be considered in cases involving felony suspects or impaired drivers who pose a threat to public safety, and when officers reasonably believe that attempting a conventional enforcement stop will likely result in the driver attempting to flee in the vehicle. Because of the potential risk involved, this technique should only be employed by officers who have received training in such tactics and after giving consideration to the following:

1. The need to immediately stop the suspect vehicle or prevent it from leaving substantially outweighs the risk of injury or death to occupants of the suspect vehicle, officers or other members of the public.

2. All other reasonable intervention techniques have failed or reasonably appear ineffective.

3. Employing the blocking maneuver does not unreasonably increase the risk to officer safety.

4. The target vehicle is stopped or traveling at a low speed.

5. At no time should civilian vehicles be used to deploy this technique.

(b) Only those officers trained in the use of the PIT will be authorized to use this procedure and only then with approval of a supervisor upon consideration of the circumstances and conditions presented at the time, including the potential for injury to officers, the public and occupants of the pursued vehicle.

(c) Ramming a fleeing vehicle should be done only after other reasonable tactical means at the officer's disposal have been exhausted. This tactic should be reserved for situations where there does not appear to be another reasonable alternative method.

Copyright Lexipol, LLC 2023/10/21, All Rights Reserved.
Published with permission by Manitowoc Police Department

Case 2:22-cv-00340-LA   Filed 12/20/23   Page 65 of 150   Document 62-1

When ramming is used as a means to stop a fleeing vehicle, the following factors should be present:

1.  The suspect is an actual or suspected felon who reasonably appears to represent a serious threat to the public if not apprehended.

2.  The suspect is driving with willful or wanton disregard for the safety of other persons or is driving in a reckless and life-endangering manner. If there does not reasonably appear to be a present or immediately foreseeable serious threat to the public, the use of ramming is not authorized.

(d)  As with all intervention techniques, pursuing officers should obtain supervisor approval before attempting to box in a suspect vehicle during a pursuit. The use of such a technique must be carefully coordinated with all involved units, taking into consideration the circumstances and conditions apparent at the time, as well as the potential risk of injury to officers, the public and occupants of the pursued vehicle.

(e)  Tire deflation devices should be deployed only when it is reasonably apparent that only the pursued vehicle will be affected by their use. Prior to the deployment of spike strips, the officer shall notify pursuing units and the supervisor of the intent and location. Officers should carefully consider the limitations of such devices as well as the potential risk to officers, the public and occupants of the pursued vehicle. If the pursued vehicle is a motorcycle, a vehicle transporting hazardous materials or a school bus transporting children, officers and supervisors should weigh the potential consequences against the need to immediately stop the vehicle.

(f)  Because roadblocks involve a potential for serious injury or death to occupants of the pursued vehicle if the suspect does not stop, the intentional placement of roadblocks in the direct path of a pursued vehicle is generally discouraged and should not be deployed without prior approval of a supervisor, and only then under extraordinary conditions when all other reasonable intervention techniques have failed or reasonably appear ineffective and the need to immediately stop the pursued vehicle substantially outweighs the risk of injury or death to occupants of the pursued vehicle, officers or other members of the public.

## 307.8.4  CAPTURE OF SUSPECTS
Proper self-discipline and sound professional judgment are the keys to a successful conclusion of a pursuit and apprehension of evading suspects. Officers shall use only that amount of force that reasonably appears necessary under the circumstances to properly perform their lawful duties.

Unless relieved by a supervisor, the primary officer should coordinate efforts to apprehend the suspect following the pursuit. Officers should consider the safety of the public and the involved officers when formulating plans to contain and capture the suspect.

Copyright Lexipol, LLC 2022/10/21, All Rights Reserved.
Published with permission by Manitowoc Police Department

Case 22-cv-00340-BHL  Filed 12/20/23  Page 66 of 150  Document 62-1

## 307.9   REPORTING AND REVIEW REQUIREMENTS

All appropriate reports shall be completed to comply with local and state regulations (Wis. Stat. § 85.07(8)(b)).

(a)   The primary officer shall complete appropriate crime/arrest reports.

(b)   The primary officer or supervisor shall complete the appropriate pursuit report.

(c)   After first obtaining available information, the on-duty field supervisor shall promptly complete a Supervisor's Log or interoffice memorandum, briefly summarizing the pursuit to the Chief of Police or the authorized designee. This memo should minimally contain the following information:

    1.   Date and time of pursuit

    2.   Length of pursuit in distance and time

    3.   Involved units and officers

    4.   Initial reason and circumstances surrounding the pursuit

    5.   Starting and termination points

    6.   Alleged offense, charges filed or disposition: arrest, citation or other release

    7.   Arrestee information should be provided if applicable

    8.   Injuries and/or property damage

    9.   Medical treatment

    10.   The outcome of the pursuit

    11.   Name of supervisor handling or at the scene

    12.   A preliminary determination that the pursuit appears to be in compliance with this policy or that additional review and/or follow-up is warranted

(d)   After receiving copies of reports, logs and other pertinent information, the Chief of Police or the authorized designee shall conduct or assign the completion of a post-pursuit review as appropriate to the circumstances.

(e)   At least annually, but no later than June 30th of every even-numbered year, the Chief of Police or the authorized designee shall direct a documented review and analysis of department vehicle pursuits to minimally include policy suitability, policy compliance, policy modification and training needs (Wis. Stat. § 346.03(6)).

(f)   The Office Manager shall compile and report information on vehicle pursuits engaged in during the previous 12 months to the Wisconsin State Patrol/Department of Transportation via WisDOJ WILENET system's Law Enforcement Pursuit Report. The report shall be filed no later than August 15th of each year and shall contain information on (Wis. Stat. § 85.07(8)(b)):

Copyright Lexipol, LLC 2022/10/21, All Rights Reserved.
Published with permission by Manitowoc Police Department

Case 2:22-cv-00340-PP   Filed 12/20/23   Page 67 of 150   Document 62-1

1.    The circumstances of the vehicle pursuit, including the distance, location and maximum speed.

2.    The reasons for initiating the vehicle pursuit.

3.    The outcome of the vehicle pursuit, including the number of deaths or great bodily injuries and an estimate of the value of any property damage.

## 307.9.1   REGULAR AND PERIODIC PURSUIT TRAINING
In addition to initial and supplementary training on pursuits, all certified sworn employees will participate, no less than biennially, in at least four hours of training addressing this policy, pursuit guidelines, driving techniques, new technology and the importance of vehicle safety and protecting the public at all times. Training will include recognition of the need to balance the known offense and the need for immediate capture against the risks to officers and others. At least four hours of the training curriculum will be based on the model standards promulgated by the Law Enforcement Standards Board (LESB) and shall be delivered by a LESB-certified Emergency Vehicle Operations and Control (EVOC) instructor (Wis. Stat. § 165.85; Wis. Admin. Code § LES 3.07(4)). For purposes of LESB reporting obligations, the time period for annual training begins July 1st, and ends June 30th.

## 307.9.2   POLICY REVIEW
Certified members of this department shall certify in writing that they have received, read and understand this policy initially and upon any amendments (Wis. Stat. § 346.03(6)).

Copyright Lexipol, LLC 2022/10/21, All Rights Reserved.
Published with permission by Manitowoc Police Department

 **Police Department**



RECEIVED
MAY 1 9 2023
JEFF SCOTT OLSON



May 17, 2023

Jeff Scott Olson
The Jeff Scott Olson Law Firm
1025 Quinn Drive, Suite 500
Waunakee, WI 53597-2502

I have received your Open Records request regarding the South Milwaukee Police Department pursuit policy and a copy is included with this letter.

**APPEAL PROCEDURE**: Our determination is subject to review by mandamus under Section 19.37 of the Wisconsin Statutes or upon application to the Attorney General or the District Attorney.

Thank you.

Sincerely,

Dan Margetta
Records Custodian
South Milwaukee Police Department

Exhibit 36

William Jessup · Chief of Police · Phone: 414.768.8060 · Fax: 414.768.8067
Police Department · 2424 15th Avenue · South Milwaukee, Wisconsin 53172

Case 2:22-cv-00320-JPS · Filed 12/20/23 · Page 69 of 150 · Document 62-1



# SOUTH MILWAUKEE POLICE

## GENERAL ORDER 22-25

**INDEX AS:** Operation of Emergency Vehicles     **REPLACES: G.O. 21-25**
Pursuit     EFFECTIVE: 3-26-2021
Escorts

**WILEAG:** 1.7.6, 5.1.2, 6.1.3, 6.1.4, 6.1.6, 6.2.10, 6.2.11, 9.1.6, 9.1.7

---

**SUBJECT:** Operation of Emergency Vehicles

**PURPOSE:** The purpose of this General Order is to establish guidelines for emergency operation of vehicles in accordance with the provisions of Wisconsin State Statutes 346.03 and 165.85 and to promote the safety of both police officers and the public. It is also to establish procedures for making decisions with regard to vehicle pursuits.

This order consists of the following numbered sections:

I.     DEFINITIONS

II.     USE OF SEAT BELTS

III.     USE OF AUTHORIZED EMERGENCY EQUIPMENT ON POLICE VEHICLES

IV.     OPERATION OF EMERGENCY VEHICLES

V.     CONSIDERATIONS

VI.     EMERGENCY RESPONSE

VII.     RESPONSE TO CRIMES IN PROGRESS

VIII.     PURSUIT

IX.     ROAD BLOCKS

X.    DEADLY FORCE

XI.   VEHICLE ESCORTS

XII.  IN MEMORIAM

XIII. RE-EVALUATION DATE

VX.   EFFECTIVE DATE

I.    DEFINITIONS

    A.    Authorized Emergency Vehicle:   Wisconsin State Statute 340.01(3a) - Police vehicles, whether publicly or privately owned.   An agency vehicle equipped with operable emergency equipment designated by state law. Police vehicles include bicycles being operated by a law enforcement officer.

    B.    Tire Deflation Device "Stop Stick" Temporary Roadblock: A portable device intended to deflate pneumatic tires.

    C.    Vehicular Pursuit:    An active attempt by an officer in an authorized emergency vehicle to apprehend a fleeing suspect who actively is attempting to elude the police.

    D.    Primary Officer/Unit:   The police unit which initiates a pursuit or any unit which assumes control of the pursuit.

    E.    Roadblock: a deliberate obstruction by physical means at one or more locations on the roadway.

II.   USE OF SEAT BELTS

Officers and passengers are required to utilize seat belts when operating any emergency vehicle, in accordance with the provisions of Wisconsin State Statute 347.48(2m).

III.  USE OF AUTHORIZED EMERGENCY EQUIPMENT ON POLICE VEHICLES

    A.    All department vehicles used for patrol or investigative purposes shall be equipped with authorized emergency equipment.

B.    A supervisor may authorize the use of vehicles not equipped with emergency lights or siren.   Officers utilizing such vehicles shall not drive in a manner that would otherwise require the use of emergency equipment.

C.    Officers shall use red and blue emergency lights and siren whenever engaged in emergency driving or pursuit driving with the exception of gathering evidence of speeding violations or silent responses to felony in progress calls as authorized in state statutes and this policy.

D.    Emergency lighting alone may be used to effect a simple traffic stop.   However, the siren shall be engaged if the target vehicle fails to respond, increases speed or otherwise fails to obey the initial signal to pull to the side of the road.

E.    Alternating headlights and 4-way hazard warning lights may be used in conjunction with, but not in lieu of authorized emergency lighting or equipment.

F.    "Take-down" spotlights, side "alley" lights and hand-held spotlights may be used by officers at their discretion for visibility purposes but should not be used so as to blind or obstruct the vision of other motorists.

G.    If necessary, the public address system on police vehicles may be used by officers at their discretion for enhanced communications over distances.

IV.   OPERATION OF EMERGENCY VEHICLES

A.    In accordance with Wisconsin State Statute 346.03 the operator of an authorized emergency vehicle may:

1.    Stop, stand, or park, irrespective of Wisconsin State Statues Chapter 346, but only when the operator of such vehicle is giving visual signal by means of at least one flashing, oscillating or rotating red light.

2.    Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation.

3.    Exceed the speed limit.

4. Disregard regulations governing direction of movement or turning in specified directions, but only when the operator of the emergency vehicle is giving both such visual signal and also an audible signal by means of a siren or exhaust whistle, except as otherwise provided in section IV.B.

B. A law enforcement officer operating a police vehicle may exceed the speed limit without giving audible and visual signal under the following circumstances:

1. If the officer is obtaining evidence of a speeding violation, or

2. If the officer is responding to a call which the officer reasonably believes involves a felony in progress and the officer reasonably believes any of the following:

a. Knowledge of the officer's presence may endanger the safety of a victim or other person.

b. Knowledge of the officer's presence may cause the suspected violator to evade apprehension.

c. Knowledge of the officer's presence may cause the suspected violator to destroy evidence of a suspected felony or may otherwise result in the loss of evidence of a suspected felony.

d. Knowledge of the officer's presence may cause the suspected violator to cease the commission of a suspected felony before the officer obtains sufficient evidence to establish grounds for arrest.

C. The exemptions granted the operator of an authorized emergency vehicle by this section do not relieve such operator from the duty to drive with due regard under the circumstances for the safety of all persons nor do they protect such operator from the consequences of their reckless disregard for the safety of others.

V. CONSIDERATIONS

In all cases, when an officer decides to exercise the exemptions provided under Wisconsin State Statute 346.03 they shall consider the following factors and will drive accordingly:

A.     Time and Day- Emergency response occurring during a time when there is a high level of business, school, or other activity are deemed as more hazardous than those occurring during periods of low activity.

B.     Volume of Vehicular Traffic- Emergency response occurring during periods of heavy traffic flow are deemed more hazardous than those occurring at other times.

C.     Density of Population- Emergency response through residential areas or along streets near or adjacent to schools are viewed as more hazardous than those in lightly populated areas.

D.     Weather Conditions- Emergency responses during periods of inclement weather, which restricts visibility, is viewed as more hazardous than during good weather.

E.     Road Conditions- Snow, ice, pavement defects, and other obstructions will make emergency response more hazardous.

F.     Severity of Reported Crime- The exercise of emergency response exemptions are more justifiable when responding to serious crimes or serious threats to public safety than when responding to less serious incidents.

G.     Volume of Pedestrian Traffic- Emergency response occurring in areas where pedestrian traffic is heavy is viewed as more hazardous than at times when it is light or absent.

H.     Intersections- When operating an emergency vehicle under the exemptions of Wisconsin State Statute 346.03, officers shall slow upon approaching an intersection and be prepared to stop if necessary.   When proceeding past a red or stop signal or stop sign, officers shall proceed at speeds, which enable them to yield to any vehicle(s) with the right of way.

I.     Unmarked Police Vehicles- Unmarked vehicles present a greater hazard than marked vehicles when operating under the exemptions of Wisconsin State Statute 346.03.

Operators of unmarked emergency vehicles shall use extreme caution when utilizing these exemptions.

VI.     EMERGENCY RESPONSE

A.      An emergency is defined as a situation in which there is a high probability of either death or personal injury to an individual or serious property damage, and prompt action by a law enforcement officer may avert or reduce the seriousness of the incident.   An emergency is an occurrence which calls for officers to use patrol vehicles as emergency vehicles.

B.      Officers receiving the request for service will consider the following response code guidelines (examples provided) in making a determination as to the appropriate level of response. The three response codes that will be considered are defined as follows:

1.      **Code 1**- (Normal Response – No Lights/Siren)

a.      Situations where police presence is desirable but, rapid response will not affect the outcome.

b.      The officer will obey all traffic laws.

c.      Examples:   vehicle lockout, barking dog, parking complaint, loitering, animal complaint, loud music, fireworks, any incident not in progress.

2.      **Code 2**- (Manual Activation of Lights/Siren)

a.      Situations requiring an immediate police response, but without the apparent element of serious threat to life or property.

b.      The officer will obey all traffic laws with the following exception:   after coming to a complete stop, the officer may use lights and siren to cross an intersection.

c.      Officers may be drawn from calls of lesser priority to respond to this code.

        d.      Examples:   verbal domestic dispute, PDO accident, shoplifter, alarms.

    3.     **Code 3**- (Lights/Siren Fully Activated)

        a.      Situations representing a serious threat to life or property or crimes in progress.

        b.      The officer will use lights and siren and may use all the exceptions granted under Wisconsin State Statute 346.03. **The officer will operate the vehicle at a speed that is reasonable and prudent.   Due regard for public safety shall always be the primary consideration when engaged in emergency driving and police vehicle operation.**   The officer will regularly advise the dispatcher of their location and route, when possible.   <u>The officer will not exceed the speed limit unless lights and siren are activated</u>.

        c.      In addition to any assigned officers, a supervisor shall be assigned.

        d.      Examples:   officer down/in danger/disarmed/disabled, PI accident, physical/injuries domestic dispute, emergency detention.

C.    The officer(s) dispatched to an emergency will be driving the primary response unit(s).

D.    Non-dispatched officers may proceed to the emergency, but will use a Code 1 response.   Non-dispatched officers may advise dispatch if they are closer to the call and should then advise that they will be responding using an emergency mode.   <u>The officer will not exceed the speed limit unless lights and siren are activated</u>.

E.    Officers should utilize their radio to inform other units of their location and direction of travel to the emergency.

VII    RESPONSE TO CRIMES IN PROGRESS

A.  An appropriate response to a crime in progress is a concerted effort put forth by both the officers and telecommunicators in a number of specific areas. The object of this policy is to guide the officer's approach to the scene of a crime in a safe and efficient manner, armed with as much information as possible concerning the incident. The telecommunicator's role is to be an effective coordinator of the Department's response to the crime in progress and a key source of information to the responding officers.

B.  Under most circumstances, the telecommunicator will receive the initial report of a crime in progress. The telecommunicator should determine:

1.  Whether the crime is still taking place or whether the suspect(s) have fled.

2.  The precise location (including the address/name of business).

3.  Upon receiving the initial call of a crime in progress, the telecommunicator will assign a primary squad and secondary squad to respond.

a.  The primary squad, under most circumstances, is usually the first called squad on the radio and the squad in whose assigned area the event is taking place. The primary squad will respond to the scene in the appropriate mode.

b.  Secondary squad(s) will respond to the scene in the appropriate mode.

c.  Each squad involved will advise dispatch and other squads of the location from which it will respond, and the route to be used when responding.

C.  If the event has been completed and the suspect(s) have left the scene, the telecommunicator will advise the responding squads of this fact. The telecommunicator should gain as much descriptive data as possible from the reporting party and relay this immediately to the officers in the field. Data gathered would include:

1.  Number and description of the suspect(s).

2.    Description of vehicle(s) used.

3.    Direction of flight.

4.    Type of weapon brandished, etc.

D.    If the reporting party indicates that the suspect(s) is still on the scene, as soon as the telecommunicator determines the location, they will:

1.    Notify the primary and secondary squads of the event.

2.    **Keep the reporting party on the phone as long as possible (particularly if they are in a position to view the scene).**

3.    Gain descriptive data from the reporting party and relay this information immediately to the responding squads.

E.    In all cases, squads responding will use due regard in their approach to the scene.

1.    Safe driving techniques will be utilized while the squad is in the emergency mode.   An officer can be of little use at the scene if they are involved in a crash on the way to it.

2.    An officer's response must take into account:

a.    Weather conditions

b.    Traffic density

c.    Road conditions

d.    Pedestrians in the area, etc.

e.    How many officers are already on scene

3.    In accordance with Wisconsin State Statute 346.03(4)(b) when responding to a report of a crime in progress, a law enforcement officer operating a police vehicle may exceed the speed limit without giving audible and visual signal (as enumerated in IV.B.).

4.      The primary squad, upon arriving at the scene, will:

        a.      Take up an observation position of the front of the building, by placing their squad a distance away from the premises on one of its corners.

        b.      From that position, advise the secondary squad to take a position opposite theirs at the rear of the building.

        c.      Coordinate positions and duties for all other responding units.

        d.      Advise other units and dispatch of any supplementary information gathered at the scene.

        e.      Remain in control at the scene until the arrival of the shift supervisor.

## VIII.   PURSUIT

Vehicular pursuit of fleeing suspects can present a danger to the lives of the public, officers and suspects involved in the pursuit. It is the responsibility of the Department to assist officers in the safe performance of their duties. To fulfill these obligations, it will be the policy of the Department to regulate the manner in which vehicular pursuits are undertaken and performed.

A.      High-speed pursuit occurs when a violator of the law appears to be eluding an officer who is giving an audible and visible signal.

B.      No more than two (2) South Milwaukee police vehicles shall be in direct pursuit of the suspect vehicle at any time. This shall include police vehicles from other agencies that pursue a vehicle into South Milwaukee or join a pursuit initiated by the SMPD that enters another jurisdiction. Police vehicles, other than the two in direct pursuit, may parallel or otherwise position themselves to assist or observe escape routes but shall not directly be involved in the pursuit. Officers, at no time, shall operate a police vehicle at such a rate of speed that may cause them to lose control over the operation or direction of the vehicle.

C. During a pursuit involving two SMPD squads, the secondary unit shall take over communications with dispatch.

D. Emergency lights and siren shall be utilized by all officers involved in the pursuit.

D. Due to the possible serious consequences of a pursuit with an unmarked police vehicle, any pursuit initiated by an officer in an unmarked police vehicle shall be assumed by or directed to a marked police vehicle as soon as practical. The officer in the unmarked police vehicle shall weigh the gravity of the offense against the severity of the consequences prior to making the decision to pursue.

F. Officers shall not engage in a vehicle pursuit while there is a citizen occupant in the police vehicle, including, but not limited to persons arrested, victims, witnesses, ride-along individuals, Auxiliary Officers, or non-sworn members of the Department.

G. When an officer becomes involved in a pursuit, their first concern should always be the safety of all who can be affected by the pursuit. Officer's should consider whether continuation of the pursuit would likely create a danger to the public, officer(s) or subject(s) which is apparently greater than the value of apprehending the subject(s), due to factors such as, but not limited to, the time of day, vehicular and pedestrian traffic, weather and road conditions, density of population, severity of the crime involved, type of police vehicle being operated and the necessity of vehicular pursuit. Officers should also consider whether the vehicle's registration or violator's identification has been established so that later apprehension may be accomplished, and, in the officer's opinion there is no apparent need for immediate apprehension (per provision of Wis. Stats 346.175)

If in the officer's good judgment, it is relatively safe to continue the pursuit, they should fully utilize their radio by informing other units of:

1. Their unit number and the fact they are in pursuit.

2. **The reason for the pursuit.**

3. Location, speed and direction of travel.

4.  The identification of the vehicle (license plate and description) and its occupants (if possible, description and number).

5.  Continual updates on location and direction of travel, speed of vehicle, weather, road conditions, pedestrian traffic, road traffic; maintain radio contact with the Communications Center and the shift commander.

6.  Notify the Communications Center if they lose sight of the pursued vehicle or if they terminate the pursuit.

H.  Termination of Pursuits

The primary pursuing unit shall continually re-evaluate and assess the pursuit situation and terminate the pursuit if he/she reasonably believes that the risks associated with the pursuit are greater than the public safety benefit of making an immediate apprehension.   When an officer decides to terminate a pursuit they shall bring the squad to a stop on the side of the road, de-activate the lights and siren and notify the telecommunicator of their location.

1.  Law enforcement officers will terminate vehicle pursuits under the following conditions:

a.  Any time a supervisor orders termination.

b.  When the continuing distance between the pursuing and fleeing vehicle is such that further pursuit is futile.

c.  When the pursued vehicle's location is unknown.

d.  When the officer's vehicle or emergency equipment malfunctions.

e.  When it is necessary to stop and render aid to an injured person/persons and no other unit is available to do so.

I.  Supervisor's Responsibilities in Pursuit Incidents

A pursuing officer has the authority to initiate, continue or terminate a pursuit. On-duty supervisors should be notified of pursuits and should monitor progress of pursuits. Supervisors have the responsibility to monitor and control a pursuit from the point of the pursuit notification to its conclusion and to rule on the advisability of pursuit. Control in this sense does not require the supervisor to broadcast over the radio during the pursuit as long as they feel the continuance of the pursuit is justified. Control may be further accomplished by directing and coordinating police units during the pursuit. Any police supervisor may order termination for any reason. Supervisors shall respond to the scene of the pursuit termination.

J.  Communications Center Actions During a Pursuit:

1.  Upon notification, the Communications Center shall advise all officers that a pursuit is in progress (location, direction of travel, speed, make, model, license number, and reason for the pursuit) and shall restrict radio traffic on Frequency 1 for exclusive use by personnel involved in the pursuit.

2.  The Communications Center shall immediately inform the supervisor that a pursuit is in progress.

3.  The Communications Center shall keep all involved units advised of updated information from the pursuing officer and shall assist in directing other units to assist, intercept, or place themselves in a position of surveillance during the pursuit.

4.  The Communications Center shall coordinate with other police agencies that are or may become involved in the South Milwaukee pursuit of a vehicle fleeing South Milwaukee into their jurisdiction. The other police agencies will be notified of the termination of the pursuit.

5.  The Communications Center shall be responsible for notifying officers involved in the pursuit when a "patch" of the pursuit to the Milwaukee County Sheriff's Department "OALAWCAL" Frequency (county-wide pursuit channel) occurs for communication purposes. The telecommunicator will then broadcast on the county-wide pursuit channel

"ATTENTION ALL UNITS, SOUTH MILWAUKEE POLICE DEPARTMENT SQUAD # -- IS IN A PURSUIT". The telecommunicator should then broadcast the following information:

 a. Location, speed and direction of travel

 b. Description of the vehicle and occupants

 c. Reason for the pursuit

 d. Number of squads involved

 e. Identity of primary unit and secondary unit, if in place.

K. Assisting Officer's Actions During a Pursuit:

Assisting officers may either be directly involved in the pursuit, with no more than two squads in direct pursuit of the fleeing vehicle, or may assist by covering possible routes of escape; blocking cross-traffic to prevent collisions; setting up on possible routes of travel to obtain the license number or description of the fleeing vehicle; broadcasting pertinent information to the pursuing officer(s) regarding road conditions, hazards, etc.; or to establish roadblocks, if authorized by a supervisor. Officer(s) who join the primary officer in the pursuit will immediately notify the Communications Center. Assisting officers shall be ready to assist when the pursued vehicle is stopped.

L. An officer may engage in high-speed pursuit in cases where the person pursued is suspected of a violent felony or a misdemeanor involving substantial harm to person or property. Experience has shown the pursuit of a mere traffic violator presents a hazard to life and property far beyond the value of the apprehension.

 1. If pursuing a traffic violator the officer will discontinue the pursuit if they obtain enough information to later identify the driver or;

 2. If they are advised to discontinue the pursuit by a supervisor for whatever reason or;

 3. If they decide that continuing the pursuit is

unreasonably dangerous to themselves, the violator or the public.   A decision by the pursuing officer to discontinue the pursuit does not reflect on the officer's courage, but rather is recognized by all members of the Department as a decision, which indicates concern for life and property (the first consideration of all police officers).   When a decision has been made by an officer or supervisor to terminate a pursuit, the pursing officer shall immediately:

    a.    Notify all units they are discontinuing the pursuit.

    b.    Give the suspect vehicle's last known location and direction of travel.

    c.    Pull to the side of the road, deactivate the squad lights and siren, and provide the address/location where the pursuit was terminated.

4.    When a pursuing officer follows a violator beyond South Milwaukee city limits, the officer is reminded they are in all likelihood proceeding into an area which they are less familiar with, necessitating increased alertness and caution on the part of the officer.   The officer shall continue to communicate with the Communications Center via their squad radio.   If necessary, the telecommunicator shall contact any other agencies that may be needed to aid the officer, and to advise them of the information available about the pursuit.

M.    When a pursuit from another jurisdiction enters South Milwaukee, SMPD will assist in all possible ways, keeping in mind that it is not the SMPD's original pursuit.   When possible, the reason for the pursuit shall be determined.

In the event that the pursuit leaves South Milwaukee city limits and the original pursuing squad from another jurisdiction is still in contact with the fleeing vehicle, the SMPD shall disregard the pursuit and allow the original jurisdiction to continue.   Generally, SMPD officers will not continue a pursuit, from another jurisdiction, outside of the City of South Milwaukee, unless the original pursuit reason warrants it.

**In no case** shall a SMPD squad get between the fleeing vehicle and the original jurisdiction vehicle unless it is very evident the original pursuing squad is so far back they may lose contact.

N.    Rendering Aid to the Injured:

1.    Any time during the course of a pursuit, an injury occurs and there are two (2) pursuing vehicles, the secondary unit shall stop and render assistance to the injured.

2.    Any time during the course of a pursuit, an injury occurs and there is only one (1) pursuing vehicle, that unit shall immediately terminate the pursuit and render assistance to the injured.

O.    Operational Review of Pursuits/Pursuit Documentation:

1.    All pursuit situations involving South Milwaukee police officers shall be reviewed.

2.    For the purpose of this operational review, a pursuit shall be defined as any violation meeting the criteria established in Wisconsin State Statute 346.04(6), regardless of whether the violator is charged with that offense.

3.    The review process shall include a detailed report of the pursuit completed by the officer(s) involved, and a Supervisory Review - After Action Pursuit Report which is to be completed by the Shift Supervisor (Addendum A).   The incident report and the Supervisory Review - After Action Pursuit Report shall be forwarded to the Operations Commander for review.

P.    1997 Act 88 - Law Enforcement Pursuit Data Collection:

Pursuant to 1997 Act 88, Wisconsin State Statute 85.07(8)(b), the South Milwaukee Police Department will report all pursuits to the State of Wisconsin using the Wisconsin Law Enforcement Pursuit Report. This report form will be completed by the Operations Commander or their

supervisor designee after receiving the incident report and the Supervisory Review - After Action Pursuit Report. The Operations Commander or their supervisor designee is responsible for submitting the report to the State of Wisconsin by use of the Electronic Pursuit Reporting Form.

IX.    ROADBLOCKS/STOP STICK TEMPORARY ROADBLOCK

A. Experience demonstrates that roadblocks often result in serious injury and damage and only rarely accomplish their intended purpose (i.e., stopping a fleeing suspect safely).

B. All officers will be trained in roadblock techniques and properly equipped to respond to a roadblock situation. The training will consist of roadblock operations, justification, use of force (deadly and non-deadly) issues, tire deflation device deployment, and other practical matters concerning the use of roadblocks.

C. The circumstances under which a roadblock may be implemented will be properly justified. Roadblocks will be established in cases of compelling law enforcement and public concern (e.g., prison or jail escape where escapees have been determined to be a risk to society, serious felony offense having just occurred, or in any case for which the need for stopping a vehicle is substantial and outweighs the intrusion to motorists). The use of force issue will be considered in the justification process as certain types or aspects of roadblocks may constitute deadly or non-deadly force. Roadblocks may be set up using the following guidelines:

1.    Use of Vehicle as Roadblock:

a.    Never set up a vehicle in a dark or blind area, such as just over hills, around curves, etc.

b.    Use well lighted spots whenever possible, using all emergency visual aid equipment to help light up the roadblock such as:   rotating top red and blue lights, headlights, spotlights.

c.    Outside vehicle speaker for radio chase following.

d.    Always leave an avenue of escape.

     e.    When vehicles are in place and/or block is complete, all officers shall remain far enough back from the block so as to prevent any injury to officers should the fleeing vehicle(s) attempt to run through or around the block.

   2.    Use of the "Stop Stick"/Tire Deflation Device: A portable device intended to deflate pneumatic tires.

     a.    Deploy allowing pursuing squads an alleyway of passage. Under normal circumstances this will be to the right side of the stop stick.

     b.    Once deployed, the officer should stand back a safe distance that ensures their safety from: the fleeing vehicle attempting to avoid the strip; the fleeing vehicle ramming the parked squad; or any part of the strip being projected as a result of the fleeing vehicle striking it.

     c.    Normally, the stop stick will not be used for motorcycles unless deadly force is justified.

D.    The officer in charge/supervisor must authorize the use of any roadblock. Prior to authorizing the use of a roadblock the officer in charge/supervisor must evaluate the gravity of the offense (reason for the pursuit), the pursuit considerations and the severity of the consequences prior to making the decision to authorize the use of a roadblock. In all cases, all personnel shall be immediately advised of the location and type of roadblock setup. The officer in charge/supervisor may order termination of the use of a roadblock or stop sticks for any reason.

X.   **DEADLY FORCE**

A.    An automobile used to force a vehicle off of the road is considered deadly force. This method of stopping a vehicle should never be used in misdemeanor cases and, only as the last resort, to be considered in the most serious types of felonies. In making a decision to use deadly force, officers shall be familiar with Wisconsin State Law regarding the use of deadly force.

B.    No firearms shall be used in high-speed pursuits (see G. O.

ORG – 7:  Use of Force, and G. O. ORG – 9:  Firearms).

XII.  VEHICLE ESCORTS, EMERGENCY AND NON-EMERGENCY

A.  Escorts of emergency vehicles from the SMPD or other agencies by emergency vehicles of the SMPD are generally discouraged.   While officers may stop traffic at intersections or otherwise control the movement of traffic to assist the passage of the emergency vehicle, actual escort of the emergency vehicle is not recommended except in unusual circumstances.   Officers shall obtain prior permission from an on-duty supervisor before escorting another emergency vehicle.

B.  Escort of Civilian Vehicles in Medical Emergencies:

1.  Escorting civilian vehicles under emergency circumstances is an extremely dangerous practice and is not authorized.

2.  Officers who encounter situations where medical transport is needed shall immediately render first aid, as appropriate, and shall summon medical assistance and transport, if needed, through the Communications Center.   If the operator of a civilian vehicle refuses to wait for medical transport and prompt medical assistance is needed, the officer may lead the civilian vehicle to the nearest medical facility but shall not use emergency equipment, shall obey all traffic regulations and shall take the most direct route.

3.  Officers shall not convey injured or ill persons to a medical facility for treatment in department vehicles. While officers cannot force persons to obtain medical assistance or accept medical transport, except in limited circumstances, officers shall encourage persons to accept these services and shall provide all necessary assistance until the emergency medical services arrive at the scene.

C.  Escort of Non-emergency Vehicles:

1.    Requests for routine, non-emergency escorts of dignitaries, oversized vehicles, parades, funerals, special events or hazardous or unusual cargo shall be approved by the shift supervisor.

2.    During a non-emergency escort, the officer at no time shall exceed the posted fixed speed limit. Emergency lights and flashers shall be in operation at all times during such escorts and the siren shall be used only to attract attention to such escorts.

3.    In compliance with WI. State Statute. 346.215 escorts of oversized vehicles, or processions of vehicles will only be allowed if the procession or oversized vehicle is escorted by at least two (2) police vehicles, at least one of which is leading the procession and at least one of which is at the rear of the procession of vehicles.

In the event two (2) police vehicles are not available to assist in the procession, then the procession will not be escorted.

## XII.   IN MEMORIAM

This General Order is dedicated to the memory of Officer John J. Stoll who tragically lost his life while operating an emergency vehicle while responding to a rescue call on June 7, 1987.

## XIII.   RE-EVALUATION DATE

This policy will be reviewed by June 30th of each even numbered year (Wisconsin State Statute 165.85(4)(cm)(2a).

## XV.   EFFECTIVE DATE

The effective date of this order is December 21, 2022.

William Jessup
Chief of Police

Addendum A:   Supervisory Review - After Action Pursuit Report

Addendum B:   Wisconsin Law Enforcement Pursuit Report



# SOUTH MILWAUKEE POLICE
## SUPERVISORY REVIEW-AFTER ACTION PURSUIT REPORT

1. **INCIDENT NUMBER:** Click here to enter text.

2. **DATE:** Click here to enter text.

3. **TIME INITIATED:** Click here to enter text.    **TIME TERMINATED:** Click here to enter text.

4. **AGENCY INVOLVEMENT:**    Initiation of Pursuit    _____
   ("X" that apply)    Primary Pursuit Vehicle    _____
   Assist Other Agency    _____

5. **PRIMARY OFFICER & ID #:** Click here to enter text.    **SQUAD #:** Click here to enter text.
   Marked \_\_\_\_    Unmarked \_\_\_\_

6. **SECONDARY OFFICER & ID #:** Click here to enter text.    **SQUAD #:** Click here to enter text.
   Marked \_\_\_\_    Unmarked \_\_\_\_

7. **OTHER AGENCIES INVOLVED (Dept. Name, # of squads, officer(s) names:**
Click here to enter text.

8. **PURSUIT LOCATION INITIATED:** Click here to enter text

9. **PURSUIT LOCATION TERMINATED:** Click here to enter text.

10. **PURSUIT DISTANCE:**    **MILES:** Click here to enter text.    **TENTHS:** Click here to enter text.

11. **MAXIMUM SPEED (primary unit only):** Click here to enter text.

12. **REASON FOR PURSUIT: ("X" THOSE THAT APPLY)**
    Criminal Traffic Violation _____    Wanted Person _____
    Misdemeanor Violation _____    Felony    _____
    Other    _____

13. **PURSUIT CONSIDERATIONS:**
    Time of Day: Click here to enter text.
    Volume of Vehicular traffic: Click here to enter text.
    Density of Population: Click here to enter text.
    Weather Conditions: Click here to enter text.
    Road Conditions: Click here to enter text.
    Severity of Reported Crime: Click here to enter text
    Volume of Pedestrian Traffic: Click here to enter text.

**14. MONITORING OF PURSUIT**: (describe how pursuit was monitored, reasons why pursuit was allowed to continue or was terminated)

**15. PURSUIT TERMINATED BY**: ("X" one or more)

| | | | |
|---|---|---|---|
| Pursuing Officer | ___ | Crash (during active pursuit) | ___ |
| Supervisor's order | ___ | Crash (after pursuit terminated) | ___ |
| Apprehension | ___ | Violator stopped of own accord | ___ |
| Other | ___ | Violator vehicle failure | ___ |
| | | Violator escape | ___ |

**16. ROAD BLOCKS/SPIKE STRIPS USED**    *YES   Click here    NO   Click here

*If yes, summarize who authorized and staffed them, by location, on a supplementary report.

**17. VIOLATIONS**:

|  | KNOWN | DISCOVERED LATER |
|---|---|---|
| (Enter charge/statute # under the columns) | | |
| ORDINANCE VIOLATIONS | Click here to enter text. | |
| TRAFFIC VIOLATIONS | Click here to enter text. | |
| CRIMINAL TRAFFIC | Click here to enter text | |
| MISDEMEANOR | Click here to enter text. | |
| FELONY | Click here to enter text. | |
| OTHER/WANTED PERSON | Click here to enter text. | |

**18. INJURIES**:    *YES    .                    NO .

**19. INJURED SUBJECT(S)**:  Click here to enter text

**20. HOSPITALIZATION REPORT**:  YES .        NO   .

**21: MOTORIST**:
Name: Click here to enter text.        DOB:   Click here to enter text.   PHONE: Click here .
Address:Click here to enter text.
Arrested:      YES      NO
Injured :       YES      NO      (photos required)
Passengers    YES*    NO      (*list passenger names and info in Comments Section #27)

**22: VEHICLE**:
COLOR:   Click here to enter text.  YEAR: Click here to enter text.
VEHICLE DAMAGED (IF YES, DESCRIBE):  Click here to enter text.
LICENSE #: Click here to enter text.        MAKE: Click here to enter text.

**23: PROPERTY DAMAGE**:
DESCRIBE Click here to enter text

24. **POLICE EQUIPMENT MALFUNCTIONS**:  Click here to enter text

**SQUAD DAMAGE**       -- If yes, describe: Click here to enter text
**Radios:**Click here to enter text.
**Sirens:**Click here to enter text.
**Lights:**Click here to enter text.
**Vehicle:**Click here to enter text.

25. **CRASH INFORMATION**:
Legend
Unit A----Primary Pursuit Veh.          Unit I---Violator Veh.
Units B,C,D assisting law enf. veh      Units II, III, IV – 3rd party veh, passenger, pedestrian, etc.

Deaths:
List Unit  and # of persons killed:  Click here to enter text.

Great Bodily Injury:
List unit number and # of persons injured: Click here to enter text.

Property Damage:
List unit number and estimated $ amount of damage:  Click here to enter text.

26: **EVALUATION OF COMMUNICATIONS CENTER'S RESPONSIBILITIES IN PURSUIT:** Click here to enter text.

27. **COMMENTS:**  Click here to enter text.

SUPERVISOR SIGNATURE _____          Date Submitted _____

COMMAND REVIEW:          _____          Operations Commander

                         _____          Admin & Services Commander

                         _____          Chief

**COMMENTS:**

_____

_____

_____

_____

**8XM07K4SFC**

# Wisconsin Motor Vehicle
# Agency Pursuit Report

SOUTH MILWAUKEE POLICE
DEPARTM
2424 15TH AVENUE

| Reporting Person<br>**JILL KALLAY** | | | Report Date |
|---|---|---|---|
| Initiating Agency | | | |

| Start Date<br>12/03/2017 | Start Time | End Date<br>12/03/2017 | End Time |
|---|---|---|---|

| Starting Location<br><br>**INTERSECTION**<br>**ON**<br>**AT**<br>**IN THE**<br>**IN  COUNTY** | | Ending Location<br><br>**INTERSECTION**<br>**ON**<br>**AT**<br>**IN THE**<br>**IN  COUNTY** | |
|---|---|---|---|
| Latitude | Longitude | Latitude | Longitude |
| X Coordinate | Y Coordinate | X Coordinate | Y Coordinate |
| Number of Agency Units | Agency Pursuit Distance | Pursuit Conclusion Reason | |

Police Interventions

Pursuit Outcome

## Details

| # Other Known Agencies | Total Known Crashes | Light Condition | |
|---|---|---|---|
| ☐ **Monitored by Agency Supervisor** | | Traffic Conditions | |
| Max Pursuit Speed MPH | Average MPH Over Limit | | |
| Demographics | | Air Support | |
| Road Surface Condition(s) | | Weather Condition(s) | |

## Injuries/Fatalities/Property Damage

| | Injury | Fatality | Property Damage | Estimate |
|---|---|---|---|---|
| *Law Enforcement* | | | ☐ | |
| *Pursued Vehicle* | | | ☐ | |
| *Uninvolved Vehicle/Person* | | | ☐ | |
| *Other Property Damage* | | | ☐ | |
| ***TOTALS*** | 0 | 0 | | $0.00 |

Agency Space

# Policy – Wauwatosa Police Department

**POLICY:** **Vehicle Pursuits**

**CHAPTER & SECTION:** **5.5.2**

**DISTRIBUTION:** Sworn Officers, Dispatch, and City Attorney

**AUTHORITY:** Chief James H. MacGillis

**PREPARED BY:** Capt. Luke Vetter

**EFFECTIVE DATE:** April 14, 2023

**REVIEW DATE:** April 14, 2025

## POLICY #: 23-04

## I. INTRODUCTION

The Purpose of this policy is to establish guidelines for making decisions with regard to vehicle pursuits. Vehicle pursuits present a danger to the officer, suspect and the general public. It is the responsibility of this agency to assist officers in the safe performance of their duties. To fulfill these obligations, it shall be the policy of the Wauwatosa Police Department to regulate the manner in which pursuits are conducted. This policy will be reviewed on an annual basis in order to comply with WI SS 346.03(6).

This policy rescinds policy **#20-16** and any other correspondence regarding vehicle pursuits.

## II. DEFINITIONS

A. **Vehicle pursuit:** An active attempt by a law enforcement officer in an authorized emergency vehicle to apprehend one or more occupants of a moving motor vehicle, providing the driver of such motor vehicle is aware of the attempt and is

Exhibit 37

resisting apprehension by maintaining or increasing speed or by ignoring the officer's attempt to stop the violator**.**

**B. Authorized Emergency Vehicle SS. 347.25(1m)(a)(b):** Police vehicle equipped with a siren and flashing, oscillating, or rotating red and/or blue lights.

1. Unmarked vehicles must comply with Emergency Vehicle Operation Policy 5.5.1, Section III, G:

   (a) If an unmarked car is equipped with the 360-degree LED emergency light package; and all the LED lights are operational, then a portable red emergency light does not have to be placed on the roof of the car when operating as an emergency vehicle.

   (b) Those unmarked vehicles that do not have the 360-degree LED emergency light package (e.g. detective and administrative bureau vehicles) must have the portable emergency light operating on the roof of the car when operating as an emergency vehicle.

**C. Primary Unit:** The police unit that initiates the pursuit or any unit that assumes the lead position of the pursuit.

**D. Secondary Unit:** Any police vehicle that becomes involved as a direct backup to the primary unit.

**E. Direct Pursuit (Directly Involved):** In the direct line of pursuit of the suspect vehicle and in a position to apprehend the suspect at the conclusion of the pursuit.

**F. Assisting Units (Indirectly Involved):** Any police vehicle not directly involved, that is approved to assist in the pursuit. This may include an officer getting into a position to deploy a TDD.

**G. P.I.T. Maneuver:** A specialized, trained maneuver used to temporarily immobilize a suspect vehicle.

## III. PURSUIT GUIDELINES

**A. Pursuit Initiation**

1. A law enforcement officer in an authorized vehicle **may** initiate a vehicle pursuit when the subject vehicle is attempting to avoid apprehension and the officer has determined that a pursuit is legal, justifiable and desirable.

**B. Continuation of Pursuits**

1. In determining whether or not to continue a pursuit, the officer **shall** consider the following factors:

   (a) Whether continuing the pursuit would likely create a danger to the public; officer(s); or subject(s); that is apparently greater than the value of apprehending the fleeing subject(s).

   (b) Road, weather, and environmental conditions.

   (c) Population density, vehicle, and pedestrian traffic.

   (d) Severity of the crime (Excluding the actual fleeing charge).

   (e) Necessity of pursuit by vehicle.

   (f) Officer's driving abilities.

   (g) Capabilities / restrictions of the emergency vehicle.

   (h) Information received from officers that have first-hand knowledge of specific information or circumstance that could directly affect the pursuit. (Officers with said first-hand knowledge shall report it via radio as soon as practical.)

2. No more than three Wauwatosa Police vehicles shall be in Direct Pursuit unless authorized by a supervisor.

   (a) A supervisor may approve additional officer(s) as Assisting Units or to become involved in the Direct Pursuit when it is necessary for officer safety or the apprehension of the suspect(s).


**C. Termination of Pursuits**

1. A pursuit should be terminated when:

   (a) The pursuing officer believes that the risks associated with the continued pursuit are greater than the public safety benefit of making an immediate arrest.

   (b) The suspect can be identified and is not an imminent threat.

   (c) The officer loses sight of the suspect vehicle.

3

(d) It is necessary to stop and render aid to an injured person and no other unit is available.

(e) The distance between the police squads and the fleeing vehicle make the pursuit futile.

(f) The officer's vehicle malfunctions.

2. A pursuit may be terminated at any time by:

(a) The primary pursuit unit.

(b) Any unit in direct pursuit.

(c) Order of a department supervisor.

(d) Any officer with first-hand knowledge of specific information or circumstance that could directly affect the pursuit. (Officer with said first-hand knowledge shall, as soon as practical report it via radio.)

3. To terminate a pursuit, the terminating officer or supervisor will inform all squads, via radio broadcast, of the decision to terminate the pursuit, along with an update of any "last known" information related to the fleeing vehicle / suspect(s).

4. When terminated, all units in either Direct or Indirect Pursuit will:

(a) Reduce speed to the speed limit or below.

(b) Turn off emergency lights and siren.

(c) Pull over and stop briefly, if possible and safe to do so (to make it clear to the public you are no longer in pursuit).

(d) Acknowledge the termination via radio.

(e) Check the immediate area of the suspect's route for accidents or other problems created by the fleeing suspect.

5. Once a pursuit is terminated, Wauwatosa Police Units will not re-engage pursuit of the fleeing auto unless authorized by a supervisor (does not preclude foot pursuit of the suspect(s)).

# IV. PURSUIT PROCEDURES

## A. Primary Unit Responsibility:

1. All emergency vehicle operations shall be in conformity with applicable state traffic laws.

2. Upon engaging in a pursuit, the officer will activate emergency lights and siren, in-car camera (if equipped), and body camera.

3. Notify and frequently update via radio of the:

    (a) Jurisdiction (Wauwatosa Police), squad number, location, speed and direction.

    (b) Reason for the pursuit.

    (c) Description and license plate of the fleeing vehicle and any information relating to the occupant(s).

    (d) Road, weather, traffic and pedestrian conditions.

4. When feasible, a marked patrol vehicle shall be used as the primary pursuit vehicle.

5. Per Police Motorcycle Operating Procedure 5.6.1, Police motorcycles are authorized for pursuit; however, absent exigent and tactical circumstances, should disengage from the pursuit when any other Wauwatosa Police Department unit (marked or unmarked squad car) becomes engaged in the pursuit.

## B. Secondary Unit Responsibility:

1. All emergency vehicle operations shall be in conformity with applicable state traffic laws.

2. Activate emergency lights and siren, in-car video camera (if equipped), and body camera.

3. Advise dispatch of involvement.

4. When feasible, a marked patrol vehicle shall be used as a secondary unit.

## C. Assisting Unit Responsibility

1. Will seek approval from a supervisor, when feasible; advise dispatch of involvement / location.

2. Operate police vehicles in conformity with applicable state traffic laws.

3. May operate in emergency mode.

4. If operating in emergency mode, activate emergency lights and siren, in-car video camera (if equipped), and body camera.

5. May follow the pursuit on parallel streets or possible escape routes.

6. May respond to a safe location to deploy TDD.

7. Immediately discontinue upon pursuit termination.

**D. Supervisor Responsibility:**

1. Acknowledge over the radio, as soon as possible, that you are monitoring the pursuit.

2. Monitor communications during the entirety of a pursuit.

3. Supervisors should terminate the pursuit for safety reasons, if the required radio information as listed in IV. A. 3 is not being broadcast by the primary or secondary unit's Officer(s).

4. Assess the necessity of the pursuit in progress, using the considerations regarding continuation of the pursuit (as stated in section III (B)), and should give strong and continuing consideration to terminating the pursuit (as stated in section III (C)), if, in his/her judgment, the necessity of immediate apprehension is outweighed by the level of danger.

**E. Dispatcher Responsibility:**

1. Receive and acknowledge all incoming information regarding the pursuit.

2. Control all radio traffic and relay relevant information to assisting squads.

3. If necessary, notify surrounding agencies of the approaching pursuit.

4. If a foot pursuit ensues, assign all available patrol units to respond.

**F. Multi-jurisdictional Pursuits**

1. Officers may continue pursuit into another jurisdiction.

2. Officers may become involved in a pursuit initiated by another jurisdiction only with supervisor authorization.

3. Officers engaged in multi-jurisdictional pursuits must comply with the standards of this policy regardless of the policy of any other involved jurisdiction.

## V. PURSUIT TACTICS

### A. Tire Deflation Devices (T.D.D.)

1. See Operating Procedure: 5.5.3 Tire Deflation Devices

### B. Roadblocks

1. Roadblocks with full road blockage (no pass-thru route) are a Force-To-Stop technique --- stop or crash--- and are only to be used upon order of a supervisor and only in instances where deadly force is justified.

2. No roadblock, with full road blockage, will be authorized for a pursuit initiated by another agency unless known, extreme circumstances exist.

3. Roadblocks with staggered blockage (a pass-through route) are an Induce-to-Stop technique --- convince/show of non-deadly force --- and may be utilized to enhance TDD deployment, if feasible.

4. No person will remain inside a vehicle used in ANY roadblock.

5. "Moving roadblock" or "box in" techniques will not be used where high pursuit speeds exist.

6. Only government-owned vehicles may be used in a roadblock.

7. If a roadblock is established, officers should make a reasonable effort to select a location that is clear and visible, which will give the suspect a reasonable opportunity to stop.

   (a) Officers must also consider time of day, traffic and pedestrian presence, and environmental conditions.

   (b) Squads will activate all emergency lights on the vehicle.

   (c) Headlights will not be intentionally pointed toward the suspect's path of approach.

### C. Ramming

1. Ramming is considered an application of **deadly force**, and is not a trained technique. However, it may be used as a last resort under extreme

circumstances and only if deadly force is justified. It should only be used if all other options are exhausted or are judged ineffective.

**D. Pursuit Intervention Technique (P.I.T.)**

1. This Department prohibits the use of P.I.T. maneuvers.

**E. Positive Vehicle Contacts (P.V.C.)**

1. P.V.C is a tactical technique that incorporates the element of surprise to distract the occupants of a target motor vehicle, and uses undercover vehicles to physically contain the target vehicle while police personnel take the target vehicle's occupants into custody.

2. The purpose of a P.V.C. is to *prevent* a Vehicle Pursuit from beginning.

3. P.V.C. will only be used under the direction and approval of a supervisor who is trained in the planning and application of the technique.

4. Only trained members of this Department are authorized to participate in the application of a P.V.C. maneuver.

# VI. RESTRICTIONS

**A. Spotlight – Take Down Lights**

1. Spotlight and take down lights will not be intentionally used to distract / blind the operator of a vehicle actively fleeing an officer.

2. Spotlights and take down lights may be used to assist with the apprehension of offenders at the conclusion of a pursuit.

**B. Firearms**

1. Officers shall not fire their weapons at or from a moving vehicle except when deadly force is justified.

**C. Other Restrictions**

1. Officers will not become involved in a pursuit with a non-police person as a passenger, except a Wauwatosa Police Reserve.

2. Officers shall not pursue or follow any vehicle the wrong way on a freeway or interstate highway, any divided roadway, or one-way ramps to such roadways.

8

3. Officers shall not become involved in any Direct Pursuit while operating an undercover vehicle.

4. Undercover vehicles are not Authorized Emergency Vehicles and shall NOT be operated in emergency mode (Emergency Vehicle Operations Policy 5.5.1, III, H, Safety Considerations).

5. Non-standard police vehicles including the prisoner transport van, mini-vans, parking jeeps, the evidence technician van, CSO vehicles, and any other non-standard police vehicles are not authorized to operate in emergency response mode and therefore shall not become involved either in direct pursuit or as an assisting unit.

## VII. ARREST TACTICS

1. Occupants of eluding vehicles will be considered "high risk" and "high risk" arrest tactics and procedures will be used in taking persons into custody until / unless specific circumstances show otherwise.

2. All available Patrol units should be assigned to assist should a "foot pursuit" ensue regarding any or all of the eluding vehicle occupants.

## VIII. REPORTING

**A.** An incident report will be completed for all vehicle pursuits, regardless of the pursuit's duration, including those pursuits that do not result in the apprehension of the suspect(s). In accordance with Section 85.07(8)(b) of the Wisconsin Statutes, the report will include the following minimum requirements:

1. The length of the pursuit in miles and tenths.

2. The duration of the pursuit in minutes and seconds.

3. The top speed of the primary police vehicle engaged in the pursuit.

## IX. TRAINING

**A.** All sworn officers will receive emergency vehicle training and pursuit training in accordance with state statute and Wisconsin Training and Standard guidelines.

## X. OPERATIONAL REVIEW PROCESS

**A.** The Chief of Police or designee will review all pursuits (regardless of duration) involving department officers. The purpose of this review is to determine if:

1. The pursuit was necessary and within policy.

2. Any additional training is needed.

3. Any corrective action is needed.

**B.** The supervisor coordinating the pursuit will conduct a debriefing with the involved officers.

**C.** The appropriate Shift / Bureau Commander will see that a Pursuit form is completed and transmitted to the State of Wisconsin via the TraCS program. This form should be completed soon after the Operational Review, and must be submitted by the 15th of August of the following year, as per Act 88 Annual Pursuit Reporting requirements.

**D.** The Chief of Police, respective Bureau Captain, and appropriate Shift / Bureau Commander will receive a written copy of the police report and / or accident report and a supervisor after action report (completed by coordinating supervisor). Squad video will be reviewed using the secured squad video system.

**E.** The Chief of Police or designee will review the after action report, and notify the officer(s) involved in the pursuit, and the officer's Supervisors, as to the outcome of the review.

James MacGillis
Chief of Police

[THIS PAGE LEFT BLANK FOR ADMINISTRATIVE REASONS]



**West Allis
Police Department
Standard
3.8.2**


**WILEAG Standard
6.1.4**


Patrick S. Mitchell
Chief of Police


Prepared by
Deputy Chief Robert
Fletcher
&
Lieutenant Michael
Kempinski


*Last Update
Deputy Chief Robert Fletcher
02/21/2018*


*Last Review
Sergeant Phillip Noche
03/05/2019*


Exhibit 38

# Vehicular Pursuits

### Introduction

Vehicular pursuit of fleeing suspects can present a danger to the lives of the public, officers, and suspects involved in the pursuit. It is the responsibility of the West Allis Police Department to assist officers in the safe performance of their duties. To fulfill these obligations, it shall be the policy of this law enforcement agency to regulate the manner in which vehicular pursuits are undertaken and performed.

### Purpose

The purpose of this standard is to minimize risk to the public and officers during the course of a police pursuit, to establish procedures which will increase the likelihood of apprehension of persons who are attempting to evade arrest, to specify the manner of vehicle operation during the course of a police pursuit, and to provide guidance to supervisors and officers in determining when to terminate a pursuit.

### Application

This standard shall apply to all members of the West Allis Police Department.

### Related Standards/Directives

WAPD Standard 4.1.1-Management of Resistance/Aggression
WAPD Standard 4.1.2-Use of Deadly Force
WAPD Standard 3.6.1-Special Purpose Canine Unit
WAPD Standard 3.8.5-Safety Restraining Devices
WAPD Standard 3.7.2-Stopping & Approaching Vehicles
WAPD Standard 8.2.8-Ride Along Program
WAPD Standard 1.4.22-Stop Stick

### Definition(s)

Due Regard - The degree of care that a reasonably careful person, performing similar duties, and acting under similar circumstances would show.

Vehicle Pursuit: An active attempt by a law enforcement officer, on-duty in an authorized law enforcement vehicle to apprehend one or more occupants of a moving motor vehicle, providing the driver of such vehicle is aware of the attempt and is resisting apprehension by maintaining or increasing his or her speed or by ignoring the law enforcement officer's attempt to stop him/her.

Authorized Emergency Vehicle: A motorized vehicle of this Department equipped with operable emergency equipment as designated by State law.

Primary Unit: The authorized emergency vehicle that initiates a pursuit or any authorized emergency vehicle from this or another police department that assumes control of the pursuit.

Secondary Unit: Any authorized emergency vehicle from this or another police department that becomes involved as a backup to the primary unit and follows the primary unit at a safe distance.

Roadblock (with escape route) - A roadblock is the placement of vehicles or other objects on the roadway to impede or alter the normal flow of traffic. In roadblock with escape route, the roadway is either not completely blocked or an alternate escape route is provided. The intention is to provide a show of force to convince the suspect that escape is impossible and induce him or her to give up.

Moving Roadblock (boxing in) - A moving roadblock may be appropriate in low-speed pursuits. In this technique, the suspect vehicle is surrounded by three squad cars—one in front, one in back, and one on the side. The squads gradually slow, bringing the suspect vehicle to a safe, gradual stop. Achieving and maintaining the formation requires careful communication, as does coordinating the slowing down. Because the actions of the suspect cannot be controlled, this is a high-risk maneuver with considerable potential for the technique to go wrong and result in a crash.

Channelization- Channelization is not itself a technique that induces a fleeing driver to stop; it is used to divert a driver to a preferred location. That location might be one that is less populated or less traveled, or it might be one more conducive to a forcible stop. As with roadblocks with an escape route, the goal is to leave the driver with only one available route to travel by blocking off alternatives. The number of squads required depends on the number of alternative routes that must be blocked. The same guidelines apply with respect to providing sufficient warning and adequate distance for the driver to avoid the blocked-off road and choose the preferred route. As with an roadblock with an escape route, other traffic should be kept out of the area.

Pursuit Intervention Technique (PIT) - This technique, commonly known as PIT, is a controlled contact between the patrol unit and the pursued vehicle at low speeds intended to cause the operator of the pursued vehicle to lose control of his or her car. The pursuing officer positions the squad so that its front corner is next to the suspect vehicle's rear corner. The officer matches speed with the suspect, makes gentle contact between the vehicles, and then steers his or her squad into the suspect vehicle. This maneuver causes the suspect vehicle to spin, while the officer is able to maintain control of the squad. PIT is a specific technical maneuver that requires advanced practical training prior to use.

Force-to-Stop – Force to stop techniques give the suspect only two options: surrender or crash. As a result, the courts consider them to be an application of deadly force. The justification for an officer's use of deadly force is behavior that presents an imminent threat of death or great bodily harm to the officer or others. For behavior to present an imminent threat, the suspect must have:
- Intent to cause death or great bodily harm
- A weapon capable of inflicting such harm
- A delivery system for using that weapon

The force-to-stop techniques included in this Standard are:
- Roadblock (no escape route)
- Ramming

Roadblock (no escape route) - In a roadblock with no escape route, the roadway is completely blocked, and no alternate route is provided. If the suspect does not voluntarily stop, he or she will crash, with great potential for injury to suspect and others in the area.

Ramming - Unlike PIT, ramming is not a trained maneuver. Instead, it involves the pursuing officer using his or her vehicle to attempt to disable the suspect vehicle and prevent its further operation. When a moving vehicle rams another, the results are unpredictable and involve a high likelihood of injury or death to those involved—including officers. Even though lawful vehicle intervention is not a trained technique, it may be justified as a last resort under extreme circumstances. It should only be used if all other options are exhausted.

## Motor Vehicle Pursuits

***Evaluating the circumstances for initiation and continuation of a pursuit:***

A law enforcement officer in an authorized vehicle **may** initiate a vehicle pursuit when the subject vehicle is attempting to avoid apprehension and the officer has determined that the pursuit is legal, justifiable, and desirable.

1) The decision to initiate a pursuit must be based on the pursuing officer's conclusion that the immediate danger to the officer and /or the public created by the pursuit is less than the immediate or potential danger to the public should the suspect remain at large.
2) Any law enforcement officer in an authorized emergency vehicle has the authority and responsibility, if reasonable, of initiating a vehicle pursuit when the suspect exhibits the intention to avoid apprehension by refusing to stop when properly directed to do so.
3) Pursuits shall not be initiated with civilian personnel in the authorized emergency vehicle.
4) In deciding whether to initiate and/or continue a pursuit, an officer shall take into consideration:
   - The seriousness of the offense.
   - Road, weather, and environmental conditions.
   - Population density and vehicular and pedestrian traffic.
   - Vehicle speed
   - Recklessness of fleeing vehicle
   - Time of Day
   - The ability to identify and apprehend the vehicle and/or operator.
   - The performance capabilities of the pursuit vehicle and the vehicle being pursued.
   - Age of driver of eluding vehicle
      o Officers should not engage in pursuits with suspected pre-teens unless the severity of the underlying offense outweighs age of offender.
5) First-hand knowledge provided by officers or the public of specific information or circumstance that could directly affect the pursuit decision. (Officers/Dispatchers with this knowledge shall report it via radio as soon as practical).

***Requirements and Restrictions for Primary Pursuit Squads***

When engaged in a pursuit, officers shall drive with due regard for the safety of other road users and pedestrians.

- Upon engaging in a pursuit, the pursuing officer shall activate the unit's emergency lights and siren. Both the emergency lights and siren shall remain activated during the entire pursuit.

- While engaged in the pursuit, a safe distance is maintained between the squad and the suspect vehicle, except in cases where the PIT maneuver or ramming is being utilized.

- Upon engaging in a pursuit, the officer shall advise the communication center of his/her unit number, location, direction and reason for the pursuit, speeds of vehicles involved, recklessness of fleeing vehicle, number of vehicle occupants, road/weather conditions, vehicular/pedestrian traffic and population density. This shall be done on the primary radio channel.

The pursuing officer shall then keep the communication center /supervisors updated on the pursuit and provide updates on the following information:

- Speeds of pursuit.

- Recklessness of fleeing vehicle.

- Number of vehicle occupants.

- Road, weather and environmental conditions.

- Population density and vehicular and pedestrian traffic.

If the pursuing officer fails to provide the above information, a supervisor shall terminate the pursuit.

- Pursuing officers shall allow supervisors radio air time to manage the pursuit.

- All patrol units that are in-service shall remain on the primary channel during the pursuit unless they are instructed to switch to the countywide pursuit channel. This should only be done at the direction of a supervisor. If the pursuit is switched to the countywide pursuit channel, mobile (in-squad) radios shall be tuned to this channel and portable radios shall be turned on and tuned to the WAPD's primary channel to maintain contact with the communication center during the incident.

- Whenever possible, a marked patrol unit shall be used as the primary pursuing unit. When an unmarked emergency vehicle initiates a pursuit and a marked unit becomes available, the marked unit shall coordinate taking over the primary position from the unmarked squad via radio and perform this overtaking maneuver when safe to do so.

- If the suspect abandons the vehicle, the dispatch center must be notified of the location of the suspect and vehicle. The ignition key of the squad should be removed before pursuing on foot.

- Upon notification by a supervisor to terminate the pursuit, the pursuit will be ended immediately.

- After stopping the pursued vehicle, officers shall utilize appropriate officer safety tactics and shall be aware of the necessity to utilize only reasonable and necessary force to take a suspect or suspects into custody.

*Requirements and Restrictions for Secondary Pursuit Squad(s)*

A pursuit shall consist of only the number of squads necessary to adequately perform a high risk stop at the completion of the pursuit.

Should the pursuit leave the city limits, only the squads necessary to adequately perform a high risk stop should leave the city. All officers leaving the city for the pursuit should advise dispatch of their location as soon as the pursuit concludes. The chances of squad versus squad crashes increases greatly when several squads are responding to the area of a pursuit. Officers shall be aware of this and shall use extreme caution in how they drive, particularly when approaching intersections.

*Passing of Squad Cars in Pursuit*

Passing other squads during a vehicle pursuit is a dangerous practice and should not occur without advanced coordination between the squads via radio.

*Termination of the Pursuit*

Any officer involved in a pursuit or any patrol supervisor has an obligation to continually evaluate changing conditions and to terminate the pursuit when appropriate.

Each pursuit is unique and an officer must use his/her best judgment in a continuous appraisal of whether or not the pursuit shall be continued. It is always better that a violator escape than to unnecessarily risk lives or injury. A decision not to pursue a violator or to discontinue a pursuit does not reflect on an officer's courage. Rather, it is a decision that is recognized by all members of the Department as a decision, which indicates a concern for life and safety - the first consideration of all police officers.

A pursuit shall be terminated when:

- Ordered by a supervisor or voluntarily terminated by the primary pursuing officer.

- The pursuing officer or the general public would, in the judgment of the officer, be unreasonably endangered. (when evaluated by all factors including those specifically mentioned in pursuit continuation considerations)

- When the suspect has been identified and there is no apparent need for immediate apprehension.

- Distance between the pursuit and fleeing vehicles becomes so great that further pursuit is futile.

- When officers no longer know the suspect's location.

- When the primary pursuit officer's equipment suffers a major malfunction, a secondary unit may take over. If the primary unit is alone, the pursuit shall be terminated.

- When the primary pursuit officer needs to stop to render aid to an injured person and no other unit is available to provide aid.

Actions to terminate a pursuit:

- Notify the communication center of his/her decision to terminate the pursuit and his/her location.

- Reduce speed to the speed limit.

- Turn off his/her emergency lights and siren.

- After terminating, officers may continue to drive within posted speed limits along the suspect's last known route to check for accidents or other problems created by the fleeing suspect. Officers must operate with due regard and not continue pursuing vehicle at this time.

- Debrief the pursuit with the road supervisor or commanding officer at the completion of the pursuit.

Once a pursuit is terminated, West Allis PD units will not re-engage in a pursuit of the fleeing auto unless authorized by a supervisor.

## Other Agency Pursuit

When an outside agency motor vehicle pursuit enters our city, only the number of outside agency and West Allis squads necessary to adequately perform a high risk stop at the completion of the pursuit may become actively involved in the pursuit after receiving supervisor approval. The assisting squad is determined by either dispatch assigning the responsibility to a squad or an officer designating himself/herself as the assisting squad due to his/her close proximity to the pursuit.

Additional officers may position themselves along the pursuit route to attempt to assist with the culmination of the pursuit should it occur or to deploy stop sticks if approved.

Once the pursuit leaves our city, the assisting squad will terminate the pursuit unless there are no other supporting squads available. If this occurs and the WAPD assisting squad stays involved in the pursuit, they must notify the supervisor of their intent to do so. The assisting WAPD squad will terminate in its assistance when a squad from the new jurisdiction arrives to assist. If multiple squads from the original jurisdiction are involved in the pursuit, West Allis squads will terminate their involvement at our city limits.

*Squads involved in a multi-jurisdictional pursuit must comply with the standards of this policy regardless of the policy of any other involved jurisdiction.

## Non-Moving Vehicle Containment

Non-Moving Vehicle Containment is a slow-speed coordinated maneuver, where two or more law enforcement vehicles simultaneously approach and block the movement of a non-moving suspect vehicle, the driver of which may be unaware of the impending enforcement stop. The squads will not make contact with the non-moving vehicle. The goal is containment and preventing a pursuit. This is not a moving or stationary road block.

Prior to performing this technique, officers should communicate their intentions to do so over the radio. This should include specifically articulating assignments during this action.

Officers shall be aware of the potential for crossfire while performing this technique. Officers shall determine who will be the primary officer/s encountering the occupants of the vehicle and which officers will re-position to avoid crossfire situations.

The non-moving vehicle technique is different from positive vehicle containment (PVC) technique. Positive vehicle containment is not a Department approved patrol technique. Positive vehicle containment should only be utilized by trained personnel, during SIU/SWAT deployments and with prior coordination.

**Stop Stick Deployments**

*For deployment considerations and operating guidelines refer to WAPD Standard 1.4.22 – Stop Stick.*

When probable cause for an eluding has been established under the guidelines of this Standard, Stop Sticks may be utilized. Officers in place to deploy stop sticks must notify pursuing squads of their location and intent to do so. If an officer does not have sufficient time or a safe location to deploy the Stop Sticks they shall not be deployed. The use of the Stop Stick system is intended to decrease the speeds and distance of the pursuit and as a result reduce the risk of injury to civilians and officers through a prolonged high speed pursuit.

**Continuation of a Pursuit after Stop Sticks are Struck**

Due to the high probability of the vehicle involved becoming disabled after a successful stop stick deployment a continuation of the pursuit may be conducted to monitor for the effectiveness of tire deflation and ensure the safety of the suspect vehicle occupants and the public. As in any pursuit, an ongoing risk assessment should be conducted to assess the likelihood of apprehension verse the ongoing risk to the public by the continuation of the pursuit.

**Intervention Options as Applied to EVOC**

The modes of the Intervention Options can be adapted to apply to vehicle operation as show in the table below:

| **Mode** | **Tactic(s)** | **Purpose** |
|---|---|---|
| Presence | Authorized emergency vehicle | To present a visible display of authority |
| Dialog | Emergency lights<br>Siren<br>Communication with dispatch<br>Approach contact | To persuade |
| Control Alternatives | Multiple units<br>Tire devices<br>Barricades<br>Channelization<br>Non-approach contact | To overcome passive resistance, active resistance or their threats |

| Protective Alternatives | Pursuit intervention technique (PIT)<br>Moving roadblock (boxing-in)<br>Roadblock (with escape route)<br>High-risk contact | To overcome continued resistance, assaultive behavior or their threats |
|---|---|---|
| Deadly Force | Ramming<br>Roadblock (no escape route)<br>Shooting from a moving vehicle<br>High-risk contact with shots fired | To stop an imminent threat |

## Use of Deadly Force in Pursuits

Deadly forced is defined as the intentional use of a firearm or other instrument that creates a high probability of death or great bodily harm. In a pursuit situation, deadly force shall be used only as a last resort when faced with an imminent threat of death or great bodily harm. Behavior which justifies the use of deadly force is that which has caused or imminently threatens to cause death or great bodily harm to an officer or to another person.

## Ramming

Unlike PIT, ramming is not a trained maneuver. Instead, it involves the pursuing officer using his/her vehicle to attempt to disable the suspect vehicle and prevent its further operation. When a moving vehicle rams another, the results are unpredictable and involve a high likelihood of injury or death to those involved – including officers.

Even though ramming is not a trained technique, it may be justified as a last resort under extreme circumstances. It should only be used if all other options are exhausted.

## Use of Weapon

Shooting at a fleeing motor vehicle is the use of deadly force and is prohibited, except in cases where there is an imminent threat of death or great bodily harm to an officer or member of the public.

## Roadblock (no escape route)

The use of a roadblock with no escape route is a force-to-stop technique which gives the suspect only two options: surrender or crash. As a result, the courts consider them to be an application of deadly force. Because of the obvious dangers inherent with the use of closed roadblocks, they shall not be used when the high probability of danger to innocent persons exists.

Closed Roadblocks are prohibited, unless authorized by a Commanding Officer and the use of deadly force is justified. If authorized, a road supervisor and/or an officer designated by the Commanding Officer must be present at the site of the roadblock to ensure the following:

- Other traffic must be diverted or stopped before reaching the roadblock area.

- The roadblock must be identified with emergency lighting to give warning.

- The suspect must have adequate sight distance and time to stop if he or she chooses to do so.

- Officers must immediately relocate to a safe location to avoid being struck by the suspect vehicle.

## Roadblock (with "escape route")

The use of an open roadblock with "runout" lane is prohibited, unless authorized by a Commanding Officer.

If authorized, using an open roadblock with a "runout" lane is the use of a high degree of force. Therefore, open roadblocks shall be utilized only as a last resort where the suspect being pursued constitutes an immediate and continuing threat to the safety of the public.

Some guidelines for using open roadblocks are:

- The roadblock should be set up on a straight, level stretch of roadway with adequate sight distance to give the suspect time to stop.
- If possible, other traffic should be diverted away from the location.
- Emergency lights must be turned on and visible to warn the suspect (and any other motorists) of the roadblock in time to stop.
- The roadway can be blocked with squads (with emergency lights on), traffic cones, flares, and/or other barricades.
- The "escape route" should be obvious.

When a Commanding Officer authorizes an roadblock with "escape route", if possible and dependent on the intervention the officer shall exit his marked squad and take a position that will offer the maximum level of officer safety.

## Pursuit Intervention Technique

The Pursuit Intervention Technique (PIT) is prohibited, unless the primary officer has been trained in this intervention and its use has been authorized by a Commanding Officer.

In order for an officer to be authorized to perform the PIT maneuver, the officer must have received basic training in the technique and must receive refresher training in PIT on a biennial basis. The use of the PIT technique without proper training is <u>considered deadly force.</u>

## Moving Roadblocks and Channelization

The use of Moving Roadblocks and Channelization is prohibited, unless authorized by a Commanding Officer

## Dispatch Operation – Pursuit in Progress

Upon notification of a pursuit in progress, one dispatcher or dispatch supervisor will assume the responsibility of handling the pursuit radio traffic. The dispatch center will advise all squads of the pursuit and that radio traffic will be restricted to "emergency communications only" until the pursuit is terminated. Channel #1 will be used as the primary channel for the pursuit.

Whenever practical, the dispatcher handling the pursuit will immediately log as much information as possible regarding the pursuit, i.e., the location, direction of travel, speed, make, model and license number, if available, and the reason for the pursuit.

When it is possible, the dispatch supervisor will ensure that other jurisdictions are notified that the pursuit may leave our city and enter another jurisdiction.

## Supervisory Responsibilities

All on-duty patrol supervisors shall monitor, via radio, all motor vehicle pursuits from the time notified until concluded and shall authorize the number of squads allowed to participate in the pursuit

The decision to initiate a motor vehicle pursuit rests with the officers involved. The decision to continue a pursuit is the responsibility of the patrol supervisors as well as the primary pursuing officer. The sworn supervisor(s) monitoring the pursuit have the authority to terminate pursuits.

Supervisors will monitor the number of personnel needed for the pursuit and confirm that law enforcement coverage for the city is maintained.

Upon completion of a pursuit, the shift commander (or his/her designee) shall:

- Review Incident Report.

- Complete Pursuit Data Entry in IAPro.

- Ensure the Pursuit Reporting Form was submitted via TraCS.

The Shift Commander shall be responsible for notifying the Deputy Chief of Police - Operations and the Patrol Captain via e-mail or voice mail of the pursuit by the end of the shift.

## Vehicle/Traffic Related Critical Incidents

If during the course of a pursuit, officer initiated actions or omissions in which death, or injury which may result in death, including traffic accident resulting from police pursuits, the procedures outlined in WAPD Standard 9.1.1 – Investigation of Officer Involved Critical Incidents and the Milwaukee County Law Enforcement Executives Association (MCLEEA) – Protocol to Investigate Officer Involved Critical Incidents in Milwaukee County should be utilized. Vehicle collisions where law enforcement actions are the proximate cause of the fatality shall be investigated by the Milwaukee County Investigative Team. They may be joined by collision investigation specialists from the Wisconsin State Patrol or any other non-involved member agency. The vehicle collision reconstruction specialists have the primary responsibility for documentation, collection, and the preservation of physical evidence related to the collision.

## Documentation of Pursuit

All pursuit reports will be tracked in a database that will include date, time, event and incident number, location, report type description, and squads involved.

Upon conclusion of the pursuit, the pursuing officer(s) should write a detailed report that gives a full account of the event. The report should include at minimum:

- The reason for the pursuit

- The basis on which the officer decided to initiate, continue and (if applicable) terminate the pursuit.

- A detailed description of the pursuit itself, including the suspect's actions, the officer's responses, and other key aspects (duration, route of travel, speeds, weather and traffic conditions, etc.).

- Actions taken (if any) to induce or force the suspect to stop.

- How the pursuit concluded (voluntary stop, involuntary stop, crash, termination).

- Description of suspect(s) and vehicle, and how suspects were identified.

- Names and statements of citizen witnesses.

- Physical evidence collected.

- Follow-through procedures undertaken after the pursuit concluded

*Any officers who deploy stop sticks (successfully or unsuccessfully) should complete a brief supplemental report documenting the location and attempt for review purposes.*

## Pursuit Data – Officer Report

In the event of a pursuit, the primary officer is required to complete this report and submit it to the shift commander who was in charge during the pursuit. ALL ELEMENTS of this report must be completed, prior to submission. The report can be found under the Phoenix Q/A case tab for the eluding incident report.

## State of Wisconsin Law Enforcement Pursuit Reporting

Pursuant to Wisconsin Statutes, the West Allis Police Department is required to report all police pursuits to the Wisconsin State Patrol via TraCS, which is the responsibility of the pursuing officer.

The pursuing officer shall document the completion and submission of the Wisconsin Law Enforcement Pursuit Reporting form as a separate subheading in the Incident Report.

## Pursuit Squad Safety Inspection

All primary and secondary squads involved in a pursuit that lasts for five miles or more must be taken out of service and inspected by garage personnel. Any squad that suffers damage must be taken out of service and inspected by garage personnel.

Any officer involved in a pursuit, regardless of the pursuit length, can request that his or her car be taken out of service and inspected by garage personnel.

Any Commanding Officer or supervisor, regardless of the pursuit length, can order a car to be taken out of service and inspected by garage personnel.

## Training

In accordance with Wisconsin Department of Justice – Training and Standards requirements,

the WAPD Training Bureau shall provide all sworn members with EVOC and pursuit training on a biennial basis. Such training will be facilitated by Wisconsin Department of Justice certified EVOC instructors during in-service training.

If EVOC and pursuit training cannot be accomplished through WAPD in-service training with WAPD instructors, the Department may utilize other area police departments, the Waukesha County Technical College and/or Milwaukee Area Technical College with authorization from the Chief of Police. If approved, the Training Commander will supply these entities with WAPD Standards 3.8.1 –Emergency Vehicle Operations and Standard 3.8.2 – Vehicular Pursuits. A copy of the training materials will be requested from these entities to ensure content is consistent with Department Standards.

Additional training reinforcement/repetition will be accomplished via other department training programs, which include but are not limited to, Shift Briefing Training, Inservice Training, New Officer Training, Field Training, Legal Update/Training Newsletters, Off-Site and On-Site Training Programs.

**Date Issued: October 1, 2008**
**Review/Revised: November 10, 2021**
**Last Review/Revised: April 13, 2022**
WILEAG   6.1.3   6.1.4   6.1.4.1   6.1.4.2   6.1.4.3   6.1.4.4   6.1.4.5   6.1.4.6   6.1.4.7   6.1.6   6.2.11
6.2.11.1   6.2.11.2   6.2.11.3   6.2.11.4

### 129.1   PURPOSE

The operation of a police vehicle under emergency driving conditions requires the operator to continuously evaluate the risk to themself, other officers, and the general public and law violators.  This policy is intended to guide the officer in exercising sound judgment during the operation of an emergency vehicle.

### 129.2   POLICY

Department vehicles shall be operated with due regard for the safety of all persons and property.  Officers must understand that the exemption provided by law to authorized emergency vehicles does not protect an operator from the consequences of reckless disregard for the safety of others.  Unless permitted by law, whenever there is a response to a call of an emergency nature, department vehicles shall respond using both audible and visual signals.  The geographic size, volume of traffic, and population density of the Village of West Milwaukee preclude the necessity, except in serious emergencies, for the operation of emergency vehicles at exceptionally high speeds.

### 129.3   DEFINITIONS

A. **Authorized Police Emergency Vehicle**: A vehicle used in response to an emergency situation or police pursuit which is equipped with one or more flashing, oscillating or rotating red and blue lights, so designed and mounted to be plainly visible and understandable from a distance of five hundred (500) feet during normal sunlight, and during the hours of darkness, and is also equipped with a device that will produce an audible signal, such as a siren or whistle.

B. **Deadly Force:** The intentional use of a firearm or other instrument, the use of which would result in a high probability of death.

C. **Due Regard**: A phrase implying that a reasonably careful person, performing similar duties and acting under similar circumstances, would act in the same manner.

D. **Negligence**: The failure of a law enforcement officer to conform his or her conduct to the standard to which a reasonable law enforcement officer would have conformed under the same or similar circumstances.

Exhibit 39

**Date Issued: October 1, 2008**
**Review/Revised: November 10, 2021**
**Last Review/Revised: April 13, 2022**
**WILEAG 6.1.3 6.1.4 6.1.4.1 6.1.4.2 6.1.4.3 6.1.4.4 6.1.4.5 6.1.4.6 6.1.4.7 6.1.6 6.2.11 6.2.11.1 6.2.11.2 6.2.11.3 6.2.11.4**

E. **Pursuit**: An event involving a peace officer attempting to apprehend a person in a motor vehicle while that person is trying to avoid capture by willfully failing to yield to the officer's signal to stop.

F. **Silent Emergency**: An emergency situation in which police do not use a siren or other audible signal in response to a crime.

G. **True Emergency**: A situation in which there is a high probability of death or serious injury to an individual, or significant property loss, and action by an emergency vehicle operator may reduce the seriousness of the situation.

H. **Vehicle, Marked:** An authorized emergency vehicle equipped with emergency roof light, siren and displaying police agency identification decals.

I. **Vehicle, Unmarked:** An authorized emergency vehicle without external indicators or identification decals that it is a law enforcement vehicle.

J. **Code 1:** Calls are routine in nature, and the response should be in accordance with all traffic regulations without use of emergency equipment.

K. **Code 2:** Calls are urgent in nature, and the response should be the utilization of emergency lights. Siren may be used to clear traffic and negotiate intersections.

L. **Code 3:** Calls are life threatening in nature, and the response will be with full emergency equipment in operation. Response speed will be determined with consideration of the following conditions:

M. **"Use Pursuit Guidelines"**, Wis. Dept. of Justice, Law Enforcement Standards Board, 1995

   1. **Section 345.05(2)** Municipal liability for motor vehicle accidents.

   2. **Section 346.03** Applicability of rules of road to authorized emergency vehicles.

   3. **Section 346.04(3)** Eluding an Officer

   4. **Section 346.175** Vehicle Owner's Liability for Fleeing a Traffic Officer

   5. **Section 346.19(1) (2)** Duties on Approach of Emergency Vehicle

## 129.4 <u>SAFETY RESTRAINT DEVICES</u>

**Date Issued: October 1, 2008**
**Review/Revised: November 10, 2021**
**Last Review/Revised: April 13, 2022**
**WILEAG 6.1.3 6.1.4 6.1.4.1 6.1.4.2 6.1.4.3 6.1.4.4 6.1.4.5 6.1.4.6 6.1.4.7 6.1.6 6.2.11**
**6.2.11.1 6.2.11.2 6.2.11.3 6.2.11.4**

When operating any Village owned vehicle, including police emergency vehicles, the driver and all occupants shall wear safety restraints except where allowed by law or when an officer safety issue presents.

## 129.5 <u>EMERGENCY VEHICLE OPERATIONS – NON-EMERGENT Code 1</u>

When responding to a call that is non-emergent in nature, the officer should operate an emergency vehicle without activation of any emergency equipment while obeying all traffic laws.

## 129.6 <u>EMERGENCY VEHICLE OPERATIONS —EMERGENT Code 2</u>

A. In-progress felony calls that warrant a Code 2 response are the following:
   1. Armed Robbery
   2. Burglary
   3. Forgery
   4. Auto Theft
   5. Larceny
   6. Hold-up alarm calls

B. A Code 2 response will only be used in situations to prevent the likelihood of escape of offender(s) and for the protection of life and property.

## 129.7 <u>EMERGENCY VEHICLE OPERATIONS –EMERGENT Code 3</u>

A. When human life is known to be in immediate danger, the first unit dispatched may respond CODE 3. Additional units dispatched may respond CODE 2 or CODE 1 depending on the nature of the call. When known that human life is not in immediate danger, the first unit may down-grade the response to CODE 2.

B. All units dispatched to an "officer in trouble" call may respond CODE 3. Cover units may respond CODE 2.

C. Any officer that is in a position to evaluate a situation may, at any time request that back-up units respond CODE 3.

## 129.8 <u>EMERGENCY VEHICLE OPERATION - NO SIREN AND/OR LIGHTS</u>

A. Under statute, a law enforcement officer may operate an emergency vehicle without using both lights and siren if obtaining evidence of a speed violation or

**Date Issued: October 1, 2008**
**Review/Revised: November 10, 2021**
**Last Review/Revised: April 13, 2022**
WILEAG   6.1.3   6.1.4   6.1.4.1   6.1.4.2   6.1.4.3   6.1.4.4   6.1.4.5   6.1.4.6   6.1.4.7   6.1.6   6.2.11
6.2.11.1   6.2.11.2   6.2.11.3   6.2.11.4

responding to a call which the officer reasonably believes involves a felony in progress and the officer reasonably believes any of the following:

1. Knowledge of the officer's presence may endanger the safety of a victim or other person.

2. Knowledge of the officer's presence may cause the suspected violator to evade apprehension.

3. Knowledge of the officer's presence may cause the suspected violator to destroy evidence of a suspected felony or may otherwise result on the loss of evidence of a suspected felony.

4. Knowledge of the officer's presence may cause the suspected violator to cease the commission of a suspected felony before the officer obtains sufficient evidence to establish grounds for arrest.

5. The exemptions listed above do not relieve the officer operating an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor does it protect the officer from the consequences of the reckless disregard for the safety of others.

B. Factors to be Considered for Operation without Siren and/or Lights

1. An officer responding to an emergency incident for which the exercise of the above exemptions is justified may decide that the use of visual and/or audible signals is required if the failure to use the emergency equipment would pose an unreasonable risk of harm to himself or others. The following factors should be considered and may suggest using visual and/or audible signals even if an exemption is otherwise applicable:

   - **Time of Day** - emergency response occurring during a time when there is a high level of businesses, school, or other activity is deemed to be more hazardous than those occurring during periods of low activity.

   - **Volume of Traffic** - emergency response occurring during periods of heavy traffic flow is deemed more hazardous than periods of lower traffic volumes.

   - **Density of Population** - emergency response through residential areas or along streets near or adjacent to schools is deemed more hazardous than those in lesser-populated areas.

**Date Issued: October 1, 2008**
**Review/Revised: November 10, 2021**
**Last Review/Revised: April 13, 2022**
**WILEAG   6.1.3   6.1.4   6.1.4.1   6.1.4.2   6.1.4.3   6.1.4.4   6.1.4.5   6.1.4.6   6.1.4.7   6.1.6   6.2.11**
**6.2.11.1   6.2.11.2   6.2.11.3   6.2.11.4**

- **Weather Conditions** - emergency responses during inclement weather which restricts visibility is deemed to be more hazardous than during good weather conditions.

- **Road Conditions** - emergency response is deemed more hazardous when there is snow, ice, pavement defects, road construction or other obstructions.

- **Severity of Reported Crime** - the exercise of the emergency response exemptions are more justifiable when responding to serious crimes or serious threats to public safety than when responding to less serious incidents.

- **Volume of Pedestrian Traffic** - emergency response which occurs in areas where there is heavy pedestrian traffic is deemed to be more hazardous than times when pedestrian traffic is light or absent.

### 129.9   VEHICLE PURSUITS

A. Evaluating the circumstances for initiation and continuation of a pursuit;

1. A law enforcement officer in an authorized vehicle may initiate a vehicle pursuit when the subject vehicle is attempting to avoid apprehension and the officer has determined that the pursuit is legal, justifiable, and desirable.
   - The decision to initiate a pursuit must be based on the pursuing officer's conclusion that the immediate danger to the officer and /or the public created by the pursuit is less than the immediate or potential danger to the public should the suspect remain at large.

2. An Officer is permitted to attempt to stop a vehicle and/or stay with the vehicle long enough to identify and attempt to determine if the vehicle or occupants are wanted for a violent felony if the vehicle refuses to stop.
   - Dispatch will as quickly as possible run and return the results to the officer trying to stop the vehicle.
   - A violent felony would be those incidents that involve the use of or threatened use of force by use of a deadly weapon as well as an offense that involves a use of force capable of causing life threatening injuries or the high probability of death or life threatening injuries to a victim.

3. In deciding whether to initiate and/or continue a pursuit, an officer should also take into consideration:
   - The seriousness of the offense

**Date Issued: October 1, 2008**
**Review/Revised: November 10, 2021**
**Last Review/Revised: April 13, 2022**
**WILEAG   6.1.3   6.1.4   6.1.4.1   6.1.4.2   6.1.4.3   6.1.4.4   6.1.4.5   6.1.4.6   6.1.4.7   6.1.6   6.2.11**
**6.2.11.1   6.2.11.2   6.2.11.3   6.2.11.4**

- Road, weather, and environmental conditions
- Population density and vehicular and pedestrian traffic
- Vehicle speed
- Recklessness of fleeing vehicle
- Time of day
- The ability to identify and apprehend the vehicle and/or operator
- The performance capabilities of the pursuit vehicle and the vehicle being pursued
- Age of driver of eluding vehicle

B. Prohibited Reasons for Initiation and/or Continuation of a Pursuit

1. All Traffic Offenses, including Eluding (Fleeing an Officer), Suspicion of Operating Under the Influence of an Intoxicant and/or Controlled Substance, and Hit/Run-property Damage crashes.
2. All Ordinance Violations
3. All Misdemeanor Violations
4. All Non-Violent Felony Violations

C. Initiating Officer

1. When initiating a pursuit, the officers shall drive with due regard for the safety of other road users and pedestrians. The first concern should always be the safety of all who can be affected by the pursuit.

2. If, in the officer's good judgment it is relatively safe to continue the pursuit and permitted under department policy, the officer should fully utilize the radio by informing the dispatcher and other squads of:
   - Squad number and the fact that they are in pursuit
   - Location, direction of travel and speed
   - Specific criminal activity that is the reason for the pursuit
   - Detailed description of the fleeing vehicle and all occupants

3. All communications from the pursuing officer will be done on the primary channel. Dispatch will be responsible for patching the main channel with the county chase channel for simulcast

4. The pursuing officer will have priority on the radio over all other squads. If there is a backup West Milwaukee squad, the backup squad should assume

**Date Issued: October 1, 2008**
**Review/Revised: November 10, 2021**
**Last Review/Revised: April 13, 2022**
**WILEAG   6.1.3   6.1.4   6.1.4.1   6.1.4.2   6.1.4.3   6.1.4.4   6.1.4.5   6.1.4.6   6.1.4.7   6.1.6   6.2.11**
**6.2.11.1   6.2.11.2   6.2.11.3   6.2.11.4**

responsibility for radio broadcasting in order to allow the primary vehicle to concentrate on vehicle operation.

5. The pursuing officer shall use both the siren and emergency lights. Officers must understand that the effectiveness of the siren diminishes as the vehicle speed increases. While engaged in a pursuit, a safe distance will be maintained between the squad and the fleeing vehicle, except in circumstances where the use of deadly force is necessary.

6. The pursuing officer will keep dispatch and the supervisor updated on the progress of the pursuit by providing updated information;
   - Speeds of the pursuit
   - Recklessness of the fleeing vehicle
   - Number of vehicle occupants
   - Road, weather and environmental conditions
   - The density of both vehicular and pedestrian traffic

7. If the pursuing officer fails to provide the information above the supervisor shall terminate the pursuit.

8. A squad will not take up pursuit nor assist in any pursuit if there is a prisoner or civilian in the squad at the time.

D. Assisting Officers

1. Other units in the area may position themselves at strategic locations along the probable pursuit route for response to any emergency that may develop, but shall not become active participants unless authorized by the supervisor. Assisting squads will notify the dispatcher and other participating squads of their location in order to reduce the risk of collisions between responding officers. Officers should avoid 'paralleling' a pursuit as it can create a dangerous situation.

E. Pursuits Involving Unmarked Squads

1. If an unmarked squad initiates a pursuit, extra caution is required, as the vehicle may not be equipped with more visible emergency lights. At the earliest possible moment, a marked vehicle shall become the primary pursuit vehicle. The unmarked squad will then become the backup pursuit vehicle.

**Date Issued: October 1, 2008**
**Review/Revised: November 10, 2021**
**Last Review/Revised: April 13, 2022**
**WILEAG   6.1.3   6.1.4   6.1.4.1   6.1.4.2   6.1.4.3   6.1.4.4   6.1.4.5   6.1.4.6   6.1.4.7   6.1.6   6.2.11**
**6.2.11.1   6.2.11.2   6.2.11.3   6.2.11.4**

2. If another marked vehicle becomes available, that marked vehicle will assume the backup role and the unmarked vehicle will terminate active involvement. The "less visible" presence of the unmarked unit in a pursuit just compounds the hazards already in existence.

F. Pursuits on Divided Roadways and Expressways

1. Officers shall never pursue any vehicle the wrong way on a divided highway or expressway. The pursuing squad(s) will operate on the proper side of the roadway and continuously broadcast the direction of the pursuit.

G. Pursuits into Other Jurisdictions

1. When a pursuit initiated by department personnel leaves the jurisdictional boundaries of the Village of West Milwaukee and police units from other jurisdictions are immediately available, only the primary West Milwaukee pursuit vehicle and one back up will remain in the pursuit. All other West Milwaukee units will abandon the pursuit. If only one West Milwaukee squad is involved at the point the pursuit leaves the Village limits, no other West Milwaukee unit will try to "catch up" in order to become actively involved in the pursuit. A supervisor or back up unit will immediately respond in the direction of the pursuit and be available for assistance. The supervisor shall use his discretion concerning the needs of the Village, manpower allocation and the nature of the pursuit.

H. Outside Agency Initiated Pursuits

1. When an outside agency motor vehicle pursuit enters our Village, only the number of outside agency and West Milwaukee squads necessary to adequately perform a high risk stop at the completion of the pursuit may become actively involved in the pursuit after receiving supervisor approval. The assisting squad is determined by either dispatch assigning the responsibility to a squad or an officer designating himself/herself as the assisting squad due to his/her close proximity to the pursuit.

2. Additional officers may position themselves along the pursuit route to attempt to assist with the culmination of the pursuit should it occur or to deploy stop sticks if approved.

3. Once the pursuit leaves our Village, the assisting squad will terminate the pursuit unless there are no other supporting squads available. If this occurs and the

**Date Issued: October 1, 2008**
**Review/Revised: November 10, 2021**
**Last Review/Revised: April 13, 2022**
**WILEAG   6.1.3   6.1.4   6.1.4.1   6.1.4.2   6.1.4.3   6.1.4.4   6.1.4.5   6.1.4.6   6.1.4.7   6.1.6   6.2.11   6.2.11.1   6.2.11.2   6.2.11.3   6.2.11.4**

WMPD assisting squad is to continue in the pursuit, they must notify the supervisor of their intent to do so. The assisting WMPD squad will terminate in its assistance when a squad from the new city jurisdiction arrives to assist. If multiple squads from the original jurisdiction are involved in the pursuit, West Milwaukee squads should terminate their involvement at our village limits.

4. *Squads involved in a multi-jurisdictional pursuit must comply with the standards of this policy regardless of the policy of any other involved jurisdiction.

I. Termination of Pursuits

1. The pursuing officer must use his best judgment in determining whether the pursuit will continue or be terminated. It is always better to lose a violator than to risk lives or injury unnecessarily. An officer's decision to terminate a pursuit indicates a high regard for life and property and should be recognized as such by all department members. The personal challenge to the officer should never enter into his decision regarding the continuation or termination of the pursuit.

2. **A Pursuit Shall Be Terminated When:**

   - It constitutes an unwarranted risk to the officer or the public.

   - Road, weather, or environmental conditions exist that would make safe vehicle operation hazardous (e.g. school zone, heavy vehicular or pedestrian traffic, speed, road construction, etc.).

   - A supervisor directs termination.

3. **Manner of Termination:**

   - The pursuing officer will notify the dispatcher the location the pursuit was terminated.

   - All involved squads will return to the legal speed limit.

   - Emergency lights and siren will be turned off.

   - Squads will continue in the direction of the fleeing vehicle for a short distance to check for traffic accidents or other problems that may have been caused by the fleeing vehicle.

**Date Issued: October 1, 2008**
**Review/Revised: November 10, 2021**
**Last Review/Revised: April 13, 2022**
**WILEAG 6.1.3 6.1.4 6.1.4.1 6.1.4.2 6.1.4.3 6.1.4.4 6.1.4.5 6.1.4.6 6.1.4.7 6.1.6 6.2.11**
**6.2.11.1 6.2.11.2 6.2.11.3 6.2.11.4**

J. Supervisor Responsibilities

    1. The supervisor in charge of the shift involved in a pursuit is RESPONSIBLE to actively monitor the situation and to continuously evaluate all circumstances to decide whether the pursuit will continue or be terminated. In addition to the factors listed above, the supervisor must also consider the AGE, EXPERIENCE, and PAST DRIVING PERFORMANCE OF THE INVOLVED OFFICERS AND THE SQUAD THEY ARE DRIVING. The supervisor should not hesitate to terminate a pursuit that he considers dangerous or too long in duration.

K. Telecommunicator Responsibilities

    1. Acknowledge the pursuing squad's initial transmissions and actively monitor and document pursuit information.

    2. Advise all other squads of pursuit if necessary.

    3. When the pursuit is headed toward another municipality, notify that agency via phone.

    4. When a pursuit by an outside agency is about to enter our Village, the telecommunicator shall advise all squads of all pertinent information regarding the pursuit.

L. Use of Deadly Force - Firearms

    1. In a pursuit situation, deadly force should only be used as a last resort when faced with an imminent threat of death or great bodily harm.

    2. Shooting at a fleeing motor vehicle is the use of deadly force and is prohibited, except in the cases where there is an extreme and immediate threat of death or great bodily harm to an officer or a member of the public and no other options exist.

    3. Shooting from a moving police vehicle is prohibited.

M. Forcible Stops

    1. Any type of forcible stop involves a high potential for injury or death.

**Date Issued: October 1, 2008**
**Review/Revised: November 10, 2021**
**Last Review/Revised: April 13, 2022**
**WILEAG   6.1.3   6.1.4   6.1.4.1   6.1.4.2   6.1.4.3   6.1.4.4   6.1.4.5   6.1.4.6   6.1.4.7   6.1.6   6.2.11**
**6.2.11.1   6.2.11.2   6.2.11.3   6.2.11.4**

   2. Since the hazard created by the use of a forcible stop technique should never exceed the hazard created by the escape of the fleeing vehicle, their use should only be considered when the use of deadly force is justified.

   3. The use of forcible stops requires supervisor approval. The officer is responsible for implementing the forcible stop in a safe manner. The supervisor can cancel the use of forcible stops if circumstances change or for any other reason.

   4. Non-police vehicles shall never be used to affect a forcible stop.

N.  Roadblock (with Escape Route)

   1. These normally require two police vehicles located in an area of roadway which is straight and level and with sufficient sight distance to allow the fleeing vehicle to safely stop.

   2. The squads' emergency warning lights must be activated and visible for a distance of at least 500 feet in either direction and non-involved traffic should be diverted away from the roadblock site.

   3. Officers should exit their vehicles and take up a safe position away from the roadblock.

   4. There must be a reasonable avenue of escape for the fleeing vehicle if the driver refuses to stop.

O.  Complete Roadblock

   1. A complete roadblock involves the same techniques as listed above except there is a total blockage of the roadway and no avenue of escape.

   2. This type of roadblock is considered deadly force and should be used under extreme circumstances that warrant the use of deadly force.

P.  Rolling Roadblock

   1. This is an extremely dangerous technique involving multiple squads to surround the fleeing vehicle and force it to a safe and gradual stop.

   2. This type of roadblock is not permitted.

**Date Issued: October 1, 2008**
**Review/Revised: November 10, 2021**
**Last Review/Revised: April 13, 2022**
**WILEAG   6.1.3   6.1.4   6.1.4.1   6.1.4.2   6.1.4.3   6.1.4.4   6.1.4.5   6.1.4.6   6.1.4.7   6.1.6   6.2.11**
**6.2.11.1   6.2.11.2   6.2.11.3   6.2.11.4**

Q. Vehicle Ramming

    1. The use of a police vehicle to stop another vehicle is the application of deadly force.

    2. Ramming should only be used where there is an extreme and immediate threat of death or great bodily harm to an officer or member of the public and no other options exist.

R. Pursuit Intervention Technique (PIT)

    1. The use of the Pursuit Intervention Technique (PIT) is prohibited.

S. Use and Deployment of a Tire Deflation System

    1. **Stop Stick and Magnum Spike** are the brand name of devices used by this department that will cause the controlled deflation of a motor vehicle's tires when driven over.
- All sworn personnel will be trained in accordance with the Tire Deflation Systems recommendations prior to being allowed to deploy.
- Retraining based on the manufacturer's recommendations will be conducted or no less than biennial.

    2. Restrictions on Use of Tire Deflation Systems

- Tire Deflation Systems may be deployed when such action represents the most effective and expedient means of apprehending a suspect, who if not apprehended, represents a substantial threat to the physical safety of the community.

- Tire Deflation Systems shall only be used to stop a vehicle with four (4) or more tires.

- Tire Deflation Systems should not be considered for deployment unless one of the two following conditions exists:

    1. The occupant(s) of the vehicle are reasonably believed to have been involved in the commission of a felony involving the actual, threatened or implied use of deadly force (OR)

**Date Issued: October 1, 2008**
**Review/Revised: November 10, 2021**
**Last Review/Revised: April 13, 2022**
**WILEAG   6.1.3   6.1.4   6.1.4.1   6.1.4.2   6.1.4.3   6.1.4.4   6.1.4.5   6.1.4.6   6.1.4.7   6.1.6   6.2.11**
**6.2.11.1   6.2.11.2   6.2.11.3   6.2.11.4**

     2. The continuing manner of operation of the vehicle or fleeing vehicle represents a substantial risk of great bodily harm or death to any person.

   3. Deployment of Tire Deflation Systems

- The use of Tire Deflation System by an officer must be approved by the shift supervisor prior to deployment.

- Placement of Tire Deflation Systems should be avoided in an intersection or any location where the fleeing motorist may enter another street or an alley to avoid contact.

- If possible, the officer should notify the dispatcher and other squads of the location where the Tire Deflation Systems are going to be deployed.

- A marked squad should when practical be positioned in the opposite lane of travel of the pursuit with the emergency lights fully activated. The officer should not let traffic in the blocked lane proceed around the marked squad. Parking of the squad at the curb is permissible but may impede retrieval of the cord due to traffic flow.

- The officer should toss or place the pre-loaded Tire Deflation Systems on the opposite side of the road (in the pursuit lane), on either the sidewalk or grassy area, but not directly in the roadway. Allow the cord to lay flat on the road.

- Once the Tire Deflation Systems have been deployed, the officer should **seek cover** preferably behind a tree or other fixed object that is a safe distance from the side of the road. This is important so the officer is protected from physical injury should the fleeing vehicle attempt to avoid the Tire Deflation Systems, ram the parked squad, or have a portion of the Tire Deflation Systems become an airborne projective after being driven over by the fleeing vehicle.

- As the target vehicle approaches, the officer will pull the Tire Deflation Systems by the locked reel, across the roadway into the path of the fleeing vehicle. Do not wrap the cord reel line around any part of your body at any time.

**Date Issued: October 1, 2008**
**Review/Revised: November 10, 2021**
**Last Review/Revised: April 13, 2022**
**WILEAG   6.1.3   6.1.4   6.1.4.1   6.1.4.2   6.1.4.3   6.1.4.4   6.1.4.5   6.1.4.6   6.1.4.7   6.1.6   6.2.11   6.2.11.1   6.2.11.2   6.2.11.3   6.2.11.4**

- Once the fleeing vehicle has passed your location, reel or pull the 'Stop Sticks' out the traffic lanes as quickly as possible to avoid puncturing the tires of any law enforcement vehicle or third-party vehicle. Advise dispatch and all pursuing squads whether or not the deployment was successful.

T.  Reports

1.  All department-initiated pursuits shall be documented in a complete and detailed Incident Report consistent with existing procedures.

2.  All outside agency initiated pursuits in which department personnel become involved will be documented in Calls for Service unless there are events that would merit an Incident Report.

U.  Pursuit Review Process

1.  Every vehicle pursuit will be subject to supervisory review.

2.  The primary purpose is to reduce the inherent risks of police pursuits through continuous evaluation.

3.  The officer's regular shift supervisor shall review the pursuit within (5) days and insure the TraCS Pursuit form has been completed.

4.  The supervisor will evaluate and compare the pursuit to the principals of DUE REGARD, NEGLIGENCE and the statutory required OFFICER CONSIDERATIONS FOR EMERGENCY OPERATIONS, as described in this policy.

5.  If the supervisor identifies areas of concern, he will take and/or make recommendations as to corrective/disciplinary actions.

6.  The review report will be forwarded up the chain of command.

7.  Pursuant to Wisconsin State Statute 85.07(8)(b), the West Milwaukee Police Department will report all pursuits to the State of Wisconsin using the Pursuit report in TraCS. This report form will be completed by the initiating officer and a Watch Commander will review and transmit it to the state after the Supervisory Review.

**Date Issued: October 1, 2008**
**Review/Revised: November 10, 2021**
**Last Review/Revised: April 13, 2022**
**WILEAG  6.1.3  6.1.4  6.1.4.1  6.1.4.2  6.1.4.3  6.1.4.4  6.1.4.5  6.1.4.6  6.1.4.7  6.1.6  6.2.11**
**6.2.11.1  6.2.11.2  6.2.11.3  6.2.11.4**

    8. The Watch Commander is responsible for submitting any after action report if necessary to the Chief of Police with the Vehicle Pursuit Review report.



# STANDARD OPERATING PROCEDURE
## WHITEFISH BAY POLICE DEPARTMENT

| | |
|---|---|
| SUBJECT: **VEHICLE PURSUITS** | NUMBER: 6.02 |
| | ISSUED: 07/15/2019 |
| SCOPE: All Sworn Personnel | EFFECTIVE: 07/15/2019 |
| DISTRIBUTION: Standard Operating Procedure Manual | ☒ RESCINDS 2014 revision |
| | ☐ AMENDS |
| REFERENCE: WI State Statutes: 346.03, 85.07, 175.40, 165.85(4)(bn)1m | WILEAG 5TH EDITION STANDARDS: 6.1.4, 6.2.11 |

---

**INDEX AS**: Pursuits
Stopping Devices
Use of Force
Use of Weapon
Vehicle Pursuits

**PURPOSE**: The purpose of this Policy & Procedure is to establish written guidelines to be followed by members of the Whitefish Bay Police Department while making a determination whether to engage in a vehicle pursuit and during vehicle pursuits pursuant to section 346.03(6) of the Wisconsin Statues and the Law Enforcement Standards Board rule, Sec. LES 3.07, Wis. Adm. Code.

**REFERENCE**: Use of Force SOP, Emergency Vehicle Operation SOP,

**DEFINITIONS**:

**VEHICULAR PURSUIT (AKA PURSUIT):** An active attempt by an officer in an authorized emergency vehicle to apprehend a fleeing subject who is attempting to elude the police.

**AUTHORIZED EMERGENCY VEHICLE:** A vehicle of this agency equipped with operable emergency equipment as designated by Wisconsin state law.

**PRIMARY UNIT:** The police unit that initiates a pursuit or any unit that assumes control of the pursuit as the lead vehicle.

**SECONDARY UNIT:** Any police vehicle that becomes involved as a backup to the primary unit and follows the primary unit at a safe distance.

6.02

Exhibit 40

**INDUCE-TO-STOP:** A technique that is intended to induce, but not force, the fleeing driver to stop. Included in this definition is tire deflation devices, channelization, moving road blocks (boxing in) roadblock (with escape route), and pursuit intervention technique (P.I.T.)

**FORCE-TO-STOP**: A technique that gives the fleeing subject only two options, surrender or crash. The techniques are considered an application of deadly force. Included are roadblock (no escape route) and ramming.

**NON-PURSUIT RATED VEHICLE:** The following vehicles are not designed for pursuit operation: Dodge Durango (Detective Squad), Ford Escape (CSO Vehicle).

**RECKLESS DRIVING (Wis. Stat. SS 346.62(2) and 939.25):** No person may endanger the safety of any person or property by the negligent operation of a vehicle. Criminal negligence means the creation of a substantial and unreasonable risk of death or great bodily harm to another, of which the actor should be aware.

## A. INITIATION OF PURSUIT:

1. To initiate, continue and/or to terminate a pursuit consider: road, weather, visibility, time, population density, pedestrian/vehicular traffic, offense severity, necessity if the suspect is known/can be apprehended later, and if pursuit poses a significant threat of death or great bodily harm to the public. WI ss. 346.03, 346.04.

2. Non-Pursuit rated vehicles and unmarked authorized emergency vehicles should first attempt to follow and coordinate the involvement of marked police vehicles before initiating or becoming involved in a pursuit. In exigent circumstances, they may initiate or assist in a pursuit but shall relinquish primary and secondary unit status immediately upon the participation of marked police vehicles.

3. In deciding whether to **initiate, continue or terminate** a pursuit, the officer shall take into consideration:

   a. The time of day
   b. Road and environmental factors such as rain, fog, darkness, snow, sleet
   c. Population density and vehicular and pedestrian traffic
   d. The relative performance capabilities of the pursuit vehicle and the vehicle being pursued
   e. The seriousness of the offense
   f. The presence of other persons in the police vehicle
   g. The need to render aid to injured parties
   h. Whether the vehicle's registration or violator's identification has been established so that later apprehension may be accomplished and there is no apparent need for immediate apprehension. WI ss 346.175

6.02

**B. PURSUIT OPERATIONS:**

1. All emergency vehicle operations shall be conducted in conformity with applicable traffic laws and regulations that govern emergency vehicle operations.

2. Upon engaging in a pursuit, the pursuing vehicle shall activate appropriate emergency equipment.

3. Upon engaging in a pursuit, the officer shall notify the Bayside Communications Center (BCC) of:

   a. Location
   b. Direction
   c. Reason
   d. Speed of the pursuit

4. Bayside Communications Center (BCC) should be advised of:

   a. Description of the pursued vehicle/license plate number if known
   b. Description or number of occupants if known
   c. Description of road/weather conditions
   d. Traffic conditions – pedestrian and other motor vehicle traffic.

5. The officer shall keep the Bayside Communications Center (BCC) updated on the pursuit.

6. When engaged in pursuit, officers shall drive with due regard for the safety of themselves, public and occupants of vehicle pursued.

7. A pursuit shall consist of no more than two police vehicles, a primary and a secondary unit. Additional units must be authorized by the shift supervisor.

8. A secondary unit joining in the pursuit shall immediately notify dispatch and, if possible be responsible for taking over radio communications.

9. All other personnel may attempt to anticipate the direction of the pursuit in order to utilize the induce-to-stop technique of stop sticks or to assist at the termination of the pursuit.

10. Officers shall drive with due regard for the safety of themselves and public while attempting to reach their destination to deploy stop sticks or assist at the scene of the pursuit termination.

**C. SUPERVISORY RESPONSIBILITIES:**

1. When made aware of a vehicular pursuit, the shift supervisor on duty should avoid becoming engaged in the pursuit unless initiating the pursuit or, based on proximity, becomes the secondary unit.

6.02

2. The on-duty shift Supervisor will:

a. Monitor incoming information

b. Coordinate and direct activities as needed to ensure that proper procedures are followed

c. Have the discretion to terminate the pursuit.

d. Supervisors shall terminate the pursuit when the immediate danger to the officer(s) and/or the public is greater than allowing the pursuit to continue and the occupants to escape apprehension.

e. A supervisor will respond to the scene where a vehicle has been stopped following a pursuit

f. Response need not be immediate as priority should be given to monitoring, coordinating and directing activities related to the pursuit.

## D. PURSUIT TACTICS:

1. Officers shall not follow the pursuit on parallel streets unless authorized by a supervisor.

2. When feasible, available units having the most prominent markings and emergency lights shall be used to pursue, particularly as the primary unit.

3. The only induce-to-stop technique authorized by this SOP is a tire deflation device (Stop Sticks©), when it is possible to do so in safe manner and when the officer utilizing them have received appropriate training in their use.

4. The location of possible stop stick deployment shall be made known to all emergency vehicles involved in the pursuit prior to deployment.

5. Decisions to discharge firearms at or from a moving vehicle shall be governed by this agency's Use of Force SOP.

6. The use of any form of a force-to-stop technique is prohibited unless deadly force is justifiable per WI SS 939.48.

7. Once the pursued vehicle is stopped, officers shall utilize appropriate officer safety tactics and shall be aware of the necessity to utilize only reasonably necessary force to take suspects into custody.

6.02

**E. TERMINATION OF THE PURSUIT:**

1. The primary pursuing unit shall continually re-evaluate and assess the pursuit situation including all of the initiating factors and terminate the pursuit whenever he or she reasonably believes the risks associated with continued pursuit are greater than the public safety benefit of making an immediate apprehension.

2. The primary pursuit unit may terminate the pursuit at any time.

3. A Pursuit shall be terminated if:

a. A supervisor orders the termination of a pursuit.

b. If the suspect's identity has been determined whether it be by vehicle registration or violator's identification; immediate apprehension is not necessary to protect the public or officers, and apprehension at a later time is feasible. Wis. Stats 346.175

c. When the continuing distance between the pursuing and fleeing vehicles is such that further pursuit is futile or the pursued vehicle's location is unknown.

d. The pursuing officer is unfamiliar with the area and/or unable to accurately provide their location and/or the direction that the pursuit traveling.

e. When the officer's vehicle or emergency equipment malfunctions or the pursuing squad becomes involved in an accident.

f. When it is necessary to stop to render aid to an injured person(s) and no other unit is available to do so.

g. Dispatch will be advised that the pursuit is terminated and that the officer has deactivated their emergency equipment.

h. After the termination of a pursuit the primary vehicle should continue to follow the projected route of the pursued vehicle in a non-emergency mode.

i. Dispatch will be advised when the officer begins travelling the projected route.

**F. INTER-JURISDICTIONAL PURSUITS:**

1. The pursuing officer shall notify communications when it is likely that a pursuit will continue into a neighboring jurisdiction.

2. When a pursuit from Whitefish Bay leaves the Village every attempt should be made to change all pursuit related communications to the Sheriff's F-2 frequency.

3. The supervisor of the agency that initiated a vehicle pursuit shall at all times remain in command of personnel from their agency, regardless of whether or not the pursuit enters another jurisdiction. That supervisor has the authority to order termination

6.02

of a pursuit for any reason. Supervisors from other agencies are responsible for their personnel and for following their individual agency's policies and procedures.

4. When other jurisdictions notify Whitefish Bay Police Department of a pursuit entering Whitefish Bay, officers shall assist the pursuing agency as dictated by direction of the Whitefish Bay Police Department supervisor on duty request of the pursuing agency, the Department's SOP and State Statutes regarding mutual aid.

**G. DEBRIEFING AND REVIEWS:**

1. Whenever an officer(s) engages in a pursuit, the officer(s) shall file a written supplement within the Record Management System detailing the circumstances.

2. A debriefing shall occur upon the direction of the chief of police or designee.

3. The shift supervisor conducting the debriefing shall prepare a document with an overview of the pursuit that includes reason for pursuit, pursuit length, time, and route followed. This document shall address tactics utilized leading up to, during and post termination of the pursuit.

4. A Lieutenant that was not on duty at the time of the pursuit shall complete an administrative review of the pursuit concerning Standard Operating Procedure.

5. A document will be prepared that may include information from the shift supervisor debriefing.

6. The department shall periodically analyze police pursuit activity and identify any additions, deletions, or modifications warranted in departmental pursuit procedures.

7. It shall be the responsibility of the shift supervisor on duty at the time of the pursuit to ensure that the pursuit is reported in a *TraCS Vehicle Pursuit Form* per Wisconsin Statute 85.07(8)(b).

8. No officer or supervisor shall be criticized or disciplined for a decision not to engage in a pursuit or to terminate an ongoing pursuit based on the risk involved, even in circumstances where this SOP would permit the commencement or continuation of the pursuit.

**H. TRAINING:**

1. Sworn officers who drive police vehicles shall be given initial and periodic update training of the agency's pursuit SOP. In addition, each officer shall biennially complete at least 4 hours of training on pursuit driving/operations approved by the Wisconsin Department of Justice.

2. Sworn officers who drive police vehicles shall be given annual training of the agency's pursuit SOP. Officers will have annual assessments conducted by their supervisor to ensure they understand and adhere to the agency's pursuit SOP.

6.02

3. Each sworn officer shall biennially complete at least 4 hours of training on pursuit driving/ operations approved by the Wisconsin Department of Justice.

4. Each sworn officer shall receive annual training on the agency's authorized induced-to-stop techniques.

**I. REVIEW:**

1. By June 30th of each even-numbered year the Department shall review this policy and if appropriate, shall revise the guidelines for its officers and employees that use authorized emergency vehicles regarding exceeding speed limits and when otherwise in pursuit of actual or suspected violators.

Michael D. Young
Chief of Police

This Standard Operating Procedure cancels and supersedes any and all previous written directives relative to the subject matter contained herein.

Initial 07/15/2019



**Division of State Patrol
Policy and Procedure**

| Subject | |
|---|---|
| **PURSUIT OPERATIONS** | |

| Author/Originator | Approved by | **Superintendent** |
|---|---|---|
| Bureau of Field Operations | | |

| Records Management Statement |
|---|
| Supersedes P&P 3-9 dated May 19, 2016 |
| Posted on WisDOT Internal Website (SharePoint) at https://wigov.sharepoint.com/sites/dot-dsp/policy/SitePages/Home.aspx |

## I.    POLICY

It is the policy of the Division of State Patrol (DSP) to set forth guidelines on police pursuit operations for all Division employees in the performance of their duties as troopers, inspectors, supervisors and law enforcement dispatchers.

## II.    BACKGROUND

Division troopers and inspectors are authorized to pursue fleeing vehicles whenever the pursuit can be accomplished without creating an unreasonable danger. Officers have a personal and professional interest in the pursuit. They are concerned about both their own safety and the safety of the general public.

Police pursuit involves some element of risk. The risk of pursuit in certain situations is necessary to avoid the even greater loss that could occur if law enforcement agencies were not allowed to aggressively pursue violators.

The law permits necessary escalation of force directed against an offender to effect the apprehension so long as it is the minimum force reasonably necessary to overcome the offender's efforts either to evade apprehension or to cause harm to others.

Negligent or reckless actions committed by officers during a pursuit are prohibited. The duty to avoid injury to innocent third parties is superior to that of pursuit. Officers must balance the necessity of apprehension against the possibility of damage or injury that could result as a consequence of the pursuit. During the pursuit, constant evaluation of the situation must take place by the officer involved, due to changing conditions.

Exhibit 41

The pursuing officer, in a short period of time, will have to use good judgment; recall, including training and overall experience, bearing in mind applicable law, policy, procedures and guidelines outlined in this publication and apply them collectively to the existing circumstances.

## III. DEFINITIONS

A. **Crash, Injury and Death** – these terms carry the same meaning as used in crash investigation. Basically, that the crash resulted directly from the pursuit, that the injury be evident and the death be medically attributable to the crash.

B. **Due Regard** – the degree of care that a reasonably careful person, performing similar duties, and acting under similar circumstances would exercise.

C. **Primary Pursuing Unit** – the police unit that initiates a pursuit or any unit that assumes control of the pursuit by assuming the position immediately behind the pursued vehicle.

D. **Pursuit** – police pursuit means an active attempt by a traffic officer in a police vehicle to apprehend one or more occupants of a moving motor vehicle, the operator of which is resisting apprehension by disregarding the officer's visual or audible signal to stop his or her vehicle, increasing the speed of the vehicle or extinguishing the lights of the vehicle.

E. **Pursuit Intervention Technique (PIT)** – the intentional act of using a police vehicle to physically force a fleeing vehicle from a course of travel in order to impede further progress and stop it. PIT is a specific technical maneuver that requires advanced practical training prior to use. The PIT is a Protective Alternative (at speeds of 35 mph or less) or Deadly Force (at speeds over 35 mph) in the Intervention Options on the Emergency Vehicle Operation/Vehicle Contacts Disturbance Resolution Model.

F. **Ramming** – an intentional contact of a Division vehicle with another vehicle or object. For the purpose of this policy, this definition excludes the Pursuit Intervention Technique.

G. **Roadblock** – any method, including the use of a moving vehicle, restriction, or obstruction utilized or intended for the purpose of preventing free passage of vehicles on a highway in order to affect the apprehension of an actual or suspected violator in a vehicle.

H. **Tire Deflation Device** – a tool designed to stop a vehicle by deflating pneumatic tires.

## IV. GENERAL PROVISIONS

Case 2:22-cv-00320-JPS   Filed 12/20/23   Page 142 of 150   Document 62-1

A.    **Pursuit** – The pursuit of vehicles and of a suspect's eluding vehicle is authorized in accordance with the following guidelines:

    1.    Felony violations – Officers shall pursue, attempt to stop and apprehend, as expeditiously and safely as possible, any person in a vehicle who the officer has reasonable grounds to believe:

        a.    Has committed or attempted to commit a felony involving the use or threatened use of deadly force when a high probability exists that the suspect, if not immediately apprehended, may cause death or great bodily harm, or

        b.    Is operating a vehicle in a manner, which creates a high probability of death or great bodily harm.

    2.    All other criminal violations - Officers shall pursue and attempt to apprehend any person who is eluding apprehension in a vehicle when the officer has reasonable grounds to believe the person has committed any criminal violation, but shall discontinue pursuit when the act of pursuit, in itself, creates an unreasonable danger of death or great bodily harm to officers, the one being pursued or to uninvolved persons.

    3.    Traffic violations - Officers may pursue and attempt to apprehend any person who is eluding apprehension in a vehicle when the officer has reasonable grounds to believe the person has committed any traffic violation, but shall discontinue pursuit when the act of pursuit, in itself, creates an unreasonable danger of death or great bodily harm to the one being pursued or uninvolved persons.

B.    **General** – All emergency vehicle operations shall be conducted in strict conformity with existing state statutes.  Division troopers and inspectors engaged in emergency vehicle operations shall utilize both audible and visual emergency warning equipment when engaged in pursuit unless specifically exempted by statute.

    1.    An officer may exceed the speed limit without giving audible and visual signal if the officer is obtaining evidence of a speeding violation; however, the officer shall activate his/her emergency equipment and attempt to stop the violator once sufficient evidence of the violation has been obtained.

    2.    Officers responding to a call which is reasonably believed to be a felony in progress may exceed the speed limit without giving audible signal but should give visual signal when doing so will not compromise a tactical response.  When not giving a signal, the officer must reasonably believe that one of the following exists:

        a.    Knowledge of the officer's presence may endanger the safety of a victim or other person.

Case 2:22-cv-00320-JPS    Filed 12/20/23    Page 143 of 150    Document 62-1

        b.       Knowledge of the officer's presence may cause the suspected violator to evade apprehension.

        c.       Knowledge of the officer's presence may cause the suspected violator to destroy evidence of a suspected felony or may otherwise result in the loss of evidence of a suspected felony.

        d.       Knowledge of the officer's presence may cause the suspected violator to cease the commission of a suspected felony before the officer obtains sufficient evidence to establish grounds for arrest.

    3.      All personnel operating Division vehicles shall exercise due regard for the safety of all persons. No assignment shall be of such importance and no task shall be expedited with such emphasis that the principles of safety become secondary. There are no tasks of such importance that they justify the reckless disregard of safety. Additionally, Division employees must necessarily take all of the following into consideration:

        a.       Safety of all involved parties

        b.       Affected third parties

        c.       Existing road and weather conditions

        d.       Area demographics and terrain

        e.       Traffic conditions

        f.       Severity of the known offense

        g.       Pursuit speed

        h.       Necessity of pursuit

C.    **Termination of Pursuit** – Troopers and inspectors must continually evaluate the situation and continually question whether the seriousness of the crime justifies continuing the pursuit. Troopers and inspectors will not be censured for terminating pursuit when, in the officer's opinion, continued pursuit constitutes unreasonable risk. Pursuit shall be terminated under any of the following circumstances:

    1.      Division supervisory personnel order termination of pursuit.

    2.      The suspect's identity has been established to allow later apprehension and there is no other need for immediate apprehension.

Case 2:22-cv-00320-JPS   Filed 12/20/23   Page 144 of 150   Document 62-1

3.    The prevailing traffic, roadway and environmental conditions create a situation of unreasonable danger to officers or other persons in the area which outweighs the competing public interests involved in the apprehension of the one being pursued.

4.    The pursued vehicle's location is no longer known.

5.    The trooper or inspector no longer has legal authority to continue pursuit.

       Pursuit into an adjoining state is generally prohibited unless the violator is being pursued for a previously alleged felony crime.

D.    **Non-Division Vehicles** – DSP personnel shall not engage or participate in a pursuit while driving non-Division vehicles.

## V.    PROCEDURES

A.    **Primary Pursuing Unit Responsibilities** – The officer initiating a pursuit shall notify the Communications Center as soon as reasonably possible that a pursuit is underway and provide the following information:

1.    Police unit identification

2.    Location, speed and direction of travel

3.    Vehicle description including license number if known

4.    Reason for the pursuit

5.    Number of occupants if known

B.    **Operational Responsibility** – The initiating or primary unit shall be in field command and assume operational responsibility for the pursuit unless relieved by a supervisor. The primary unit may maintain pursuit as long as it is safe to do so or until directed to terminate the pursuit by a supervisor. The following guidelines shall apply:

1.    <u>Roadblocks, Blockades and Ramming</u> – These actions may be utilized only as set forth in Policy and Procedure 2-1 and 3-6.

2.    <u>Pursuit Intervention Techniques (PIT)</u> – PIT is a form of ramming, and if utilized, should be identified as such and considered deadly force at speeds above 35 miles per hour. PIT may be utilized only when in compliance with Policy and Procedure 2-1.

Case 2:22-cv-00320-JPS   Filed 12/20/23   Page 145 of 150   Document 62-1

Officers may employ the PIT against a pursued vehicle in order to terminate a pursuit or prevent a pursued vehicle from continued operation under the following circumstances:

    a.      When all other means of apprehension have been considered and rejected as impractical.

    b.      When the use of PIT is in accordance with the prescribed training guidelines.

    c.      When the risk of harm to people of a continued pursuit outweighs the risk of harm to people from an intentional vehicular collision, and;

    d.      When the officer effecting the vehicular contact has been trained in PIT.

3.      <u>Use of Firearms</u> – Policy and Procedure 2-1 regarding the use of deadly force shall be followed.  Firing at or from a moving vehicle is generally prohibited and may be utilized, but only in rare and unusual circumstances and then only when in compliance with Policy and Procedure 2-1.

4.      <u>Number of Pursuit Units</u> – Pursuits should be accomplished with a minimum number of vehicles and normally be limited to not more than two actively involved police pursuit vehicles.  The number of units involved may be adjusted to fit the situation.

5.      <u>Spacing and Following Distance</u> – All units in pursuit shall space themselves at a distance that will ensure proper braking and reaction time in the event the preceding vehicle stops, slows or turns.

6.      <u>Unmarked Patrol Vehicles and Motorcycles</u> – Officers operating unmarked patrol vehicles or motorcycles should consider yielding the primary pursuing unit position as soon as that position can be assumed by a marked patrol unit.  Factors, which may influence this decision, include circumstances such as knowledge of the area and degree of warning and protection required under the existing circumstances.  The predominant intent is to provide maximum warning and protection to all parties, which may be affected.

7.      <u>Specially Equipped Vehicles and Equipment</u> – Consideration should be given to the availability and use of vehicles and equipment appropriate for positively affecting the outcome of the pursuit.

8.      <u>Tire Deflation Device</u> – The deployment of any tire deflation device by Division officers shall be subject to the guidelines provided in Policy and Procedures 3-6, Roadblocks and 2-1, Use of Force.

Case 2:22-cv-00320-JPS   Filed 12/20/23   Page 146 of 150   Document 62-1

9.   <u>Air Support Unit Assistance</u> – Aircraft will be utilized if available.  When an air unit establishes visual contact with the pursued vehicle, ground units shall immediately be notified of that contact.  The air unit will usually be in the best position to direct the movement of the primary pursuit unit and coordinate assistance.

10.  <u>Pursuit Termination</u> – When the decision to terminate a pursuit is made, all officers will follow these steps:

   a.   Notify dispatch and fellow officers of your intent to terminate the pursuit via radio. (All other DSP responding units should also follow the guidelines below when a pursuit is terminated)

   b.   Reduce your vehicle speed to the legal speed limit.

   c.   Turn off your emergency equipment (lights and siren).

   d.   Confirm you have terminated the pursuit with the communication center/dispatch and notify them of your location after you have stopped your patrol vehicle in a safe location out of traffic.

   e.   Drive at the legal speed limit along the suspect's last known route of travel to check for vehicle crashes or other issues/situations created by the fleeing suspect.

11.  <u>Officers Involved</u> – All involved officers shall submit an electronic Offense/Incident Report (eSP4500) within 10 days, which documents their involvement with the pursuit and related events.  The report shall at a minimum include:

   a.   Location

   b.   Known offenses prior to pursuit

   c.   Offenses discovered after the pursuit has terminated

   d.   Speeds (including maximum)

   e.   Length of pursuit (time & distance)

   f.   Injured or killed (include occupant unit number and severity of injuries to correspond with the DT4000)

   g.   Crashes

   h.   Completed or abandoned pursuit

Case 2:22-cv-00320-JPS   Filed 12/20/23   Page 147 of 150   Document 62-1

    i.      All attempted and actual deployments of any tire deflation device

    j.      Property damage including tire damage caused by deployment of any tire deflation device to any involved or uninvolved vehicle

    k.      Other units involved

    l.      Dispatcher involvement

C.    **Law Enforcement Dispatcher (LED) Responsibilities** – When notified of a pursuit, the LED shall:

    1.    Clear the radio frequency when emergency traffic is broadcast by a pursuing unit and alert users on all applicable communications systems that "emergency traffic only" is allowed.

    2.    Receive and record all incoming information on the pursuit and the pursued vehicle.

    3.    Immediately inform the appropriate supervisor of the pursuit.

    4.    Dispatch backup units and provide relevant information.

    5.    Facilitate Division communication between the pursuing vehicles and any officer deploying a tire deflation device.

    6.    Notify other agencies or State Patrol Communications Centers as applicable and request assistance if needed.

    7.    Perform relevant motor vehicle and record checks.

    8.    Monitor the pursuit until conclusion and advise all affected personnel.

D.    **Supervisory Responsibility** – Upon being notified of the pursuit, the supervisor shall:

    1.    Assume operational command from primary pursuit unit when deemed necessary.

    2.    Determine that an appropriate number of units are involved in the pursuit.

    3.    Determine the appropriate Division use of any tire deflation devices.

    4.    Determine the appropriate Division application of the Pursuit Intervention Technique (PIT).

Case 2:22-cv-00320-JPS   Filed 12/20/23   Page 148 of 150   Document 62-1

5. Determine the appropriate Division application or use of any roadblocks, blockades and/or ramming.

6. Coordinate Air Support Unit assistance if available.

7. Ensure proper radio frequencies and procedures are being followed.

8. In the event that the pursuit crosses region lines, assume or yield supervisory oversight of the pursuit to the adjacent region sworn supervisor as appropriate. This change of supervisory oversight should be formally communicated and acknowledged between the two supervisors. Each supervisor will inform his/her communications center of the change in supervisory oversight.

9. Ensure that an Offense/Incident Report (eSP4500) of each pursuit is completed by all involved officers.

10. Prepare and submit all applicable pursuit data through the Wisconsin Law Enforcement Pursuit Reporting Application at http://dotnet/dsp/pursuits/.

11. Prepare and submit a post-pursuit analysis and critique of the pursuit to the Region Commander. The post-pursuit analysis and critique shall, at a minimum, include all elements as outlined in Section V. B. 11. a. through l. of this policy, and a statement as to whether or not the pursuit was performed in accordance with this policy. If there were deviations from this policy, those deviations shall be identified in the supervisor's report.

12. After the post-pursuit analysis and critique is approved by the region commander, the supervisor shall conduct a pursuit review with all involved officers and dispatchers. The results of the review are to be recorded using the electronic Pursuit Review Form in the DSP SharePoint site located at https://wisdot.sharepoint.com/sites/dsp/Lists/Test%20Pursuit%20Review%20Form/AllItems.aspx. A copy of the post-pursuit analysis and critique, and any related audio recordings, is to be attached to the Pursuit Review Form using the "Attach File" function. A copy of all pursuit related videos are to be placed in folder named with the pursuit call for service (CFS) number and saved to the following location: N:\Pursuit Videos (in folders by CFS#). Copies of all new Pursuit Review Form entries are automatically delivered to the Director of the Bureau of Field Operations and the Division Emergency Vehicle Operations Course (EVOC) Coordinator at the Wisconsin State Patrol Academy for review, training analysis and consideration.

13. Facilitate notification of appropriate court jurisdiction(s), seeking restitution from the fleeing suspect for any damage that resulted by appropriate deployment of a tire deflation device(s). This shall include any damage occurring to the tire deflation device.

Case 2:22-cv-00320-JPS Filed 12/20/23 Page 149 of 150 Document 62-1

**NOTE: Supervisory responsibility as described in this policy will normally be assumed by the designated duty supervisor. Another supervisor may assume supervisory responsibility during a pursuit and, if done, must immediately communicate this to the applicable LED and duty supervisor if one is on-duty.**

## VI.   REFERENCES

DSP Policy and Procedure 1-1, Authority Powers and Duties
DSP Policy and Procedure 2-1, Use of Force
DSP Policy and Procedure 3-6, Roadblocks
DT4000, Wisconsin Motor Vehicle Crash Form
Emergency Vehicle Operation and Control: A Training Guide for Law Enforcement
    Officers, (Wisconsin Department of Justice Training and Standards Board, December
    2014)
eSP4500, Offense/Incident Report
Wisconsin Stats. Sec. 85.07(8)(b); 346.04(3); 346.03(5); 346.03(6)