# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

Estate of Le'Quon J. McCoy, et al.,

    Plaintiffs,

v.                                                 Case No. 2:22-cv-320

The City of Milwaukee, Wisconsin, et al.,

    Defendants.

## Plaintiffs' Plaintiffs' Civil L.R. 56(b)(2)(B)(ii) Statement of Potentially Disputed Facts Requiring Denial of Summary Judgment

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction). (Complaint, dkt. # 1, ¶ 201, not denied in Answer, dkt. # 11, Fed. R. Civ. Pro. 8(b)(6).)

2. The Court has jurisdiction over the supplemental state claims pursuant to 28 U.S.C. § 1367. (Complaint, dkt. # 1, ¶ 202, not denied in Answer, dkt. # 11, Fed. R. Civ. Pro. 8(b)(6).)

3. The Eastern District of Wisconsin is the proper venue for this action because the Plaintiff's claims arose within the geographical boundaries of the Eastern District of Wisconsin within the meaning of 28 U.S.C. § 1391(b). (Complaint, dkt. # 1, ¶ 203, not denied in Answer, dkt. # 11, Fed. R. Civ. Pro. 8(b)(6).)

4. On August 1, 2019, Defendants Jose Flores, Nikolas Zens, David Michaels, and Douglas Pavlik were employed as police officers for the City of Milwaukee (dkt. # 18-1, ¶ 1), acting under color of law within the meaning of 42 U.S.C. § 1983, and within the scope of their employment as that term is used in Wis. Stats. §895.46. (Complaint, dkt. # 1, ¶ 303, admitted in Answer, dkt. # 11.)

5. Officers Jose Flores and Nikolas Zens, were in a marked Milwaukee Police Department squad car equipped with red and blue emergency lights and an audible siren. Both officers were wearing full Milwaukee Police Department uniforms. Officer Flores was driving. (Complaint, dkt. # 1, ¶¶410-411, admitted in Answer, dkt. # 11.)

6. When Officers Flores and Zens activated the emergency lights and siren of their squad car in an attempt to conduct a traffic stop, the Buick was in the 3700 block of West Congress Street traveling east. (Complaint, dkt. # 1, ¶¶415-416, admitted in Answer, dkt. # 11.)

7. The Buick turned right to proceed south on North 35th Street, increasing its speed to approximately 70 miles per hour. When the Buick got to the intersection of West Capitol Drive and North 35th Street, it turned left without stopping for the red light and proceeded east on West Capitol Drive. The Buick continued east on West Capitol Drive reaching speeds in excess of 80 miles per hour, and nearly striking several eastbound vehicles. (Complaint, dkt. # 1, ¶ 418, admitted in Answer, dkt. # 11.)

8. Officers Flores and Zens followed behind the stolen Buick, with their flashing lights and siren activated, in pursuit. (Complaint, dkt. # 1, ¶ 419, admitted in Answer, dkt. # 11.)

9. When the Buick reached North 20th Street, it made a right turn to proceed south on North 20th Street. The Buick failed to stop for the red light at the intersection of North 20th Street and North Teutonia Avenue, bearing left to travel south by southeast on North Teutonia Avenue and reaching speeds of approximately 70 miles per hour. (Complaint, dkt. # 1, ¶ 420, admitted in Answer, dkt. # 11.)

10. The Buick then cut through a parking lot and turned north on North 18th Street and continued north to West Keefe Avenue. It turned right onto West Keefe Avenue and then left onto North 16th Street. (Complaint, dkt. # 1, ¶ 421, admitted in Answer, dkt. # 11.)

11. Officers Flores and Zens continued to follow behind the stolen Buick, with their flashing lights and siren activated, in pursuit. (Complaint, dkt. # 1, ¶ 422, admitted in Answer, dkt. # 11.)

12. At this point, two additional Milwaukee police officers, Patrol Officer David Michaels and Patrol Officer Douglas Pavlik, who were on duty in Vehicle #549, which is a marked Milwaukee Police Department Ford Explorer equipped with red and blue oscillating police lights, joined the pursuit of the Buick being driven by Fitzgerald. (Complaint, dkt. # 1, ¶ 423, admitted in Answer, dkt. # 11.)

13. After traveling north approximately one block on North 16th Street, the Buick stopped and two passengers exited the vehicle on the passenger side.

(Complaint, dkt. # 1, ¶ 432, admitted in Answer, dkt. # 11; dkt. # 51-1, p. 8 of 9, Flores Interview: "The vehicle stopped at N. 16th street and W. Finn PL. and let two occupants out of the vehicle.")

14. The pursuing officers at that point were in two marked Milwaukee Police Department vehicles, but did not make any attempt to physically block the Buick or to otherwise disable it from driving away when it stopped to discharge passengers. (Dkt. # 55, Zens Deposition, 21:3-11.)

15. Any such action would have been prohibited by the Milwaukee Police Department's Pursuit Policies, which prohibit "deliberate contact between vehicles or forcing the pursued vehicle into parked cars, ditches, or any other obstacle, boxing in, heading off, ramming, driving alongside the pursued vehicle while it is in motion, or the use of roadblocks." (Dkt. # 55, Zens Deposition, 21:12 -22:16; 22:21 – 23:3.)

16. None of the Defendants have been trained in how to terminate a vehicular pursuit through the use of physical intervention tactics like ramming, boxing in or the PIT maneuver, because these tactics are prohibited by the Milwaukee Police Department's Pursuit Policies. (Dkt. 51, Flores Deposition, 12:20 – 13:3; dkt. # 55, Zens Deposition, 10:16-22; dkt. # 52, Michaels Deposition, 8:17-23; dkt. # 54, Pavlik Deposition, 7:12-24.)

17. None of the Defendants know whether it would have been possible to terminate the flight of the Buick by employing physical intervention tactics when it stopped to discharge passengers because none of them have been trained in physical intervention tactics. (Dkt. # 55, Zens Deposition, 23:4-10, dkt. # 51, Flores Deposition,

4

31:23 – 32:15; dkt. # 52, Michaels Deposition, 26:9-14; dkt. # 54, Pavlik Deposition, 26:9-14.)

18. Instead, the squad car occupied by Flores and Zens stopped behind the Buick, (dkt. # 55, Zens Deposition, pp. 19-20; dkt. # 51, Flores Deposition, 25:16-25), and the Michaels-Pavlik squad pulled alongside the Flores-Zens squad on its left. (Dkt. # 54, Pavlik Deposition, 15:12-24.)

19. In the opinion of Plaintiffs' police practice expert, Scott DeFoe, which the Court has ruled admissible, a properly trained Police Officer would have attempted to utilize one or more Vehicle Intervention Tactics when Mr. Fitzgerald stopped the stolen 2014 Buick Encore, License Plate 537WRT at N. 16th Street and W. Finn Place and let two occupants out of the vehicle. (DeFoe Report, dkt. # 30-1, at 16.)[1]

20. The Buick then sped away, weaving down numerous residential streets in the area at high rates of speed. (Complaint, dkt. # 1, ¶ 435, admitted in Answer, dkt. # 11.)

21. The Pavlik/Michaels squad car at this point became the lead vehicle in the pursuit and the Flores/Zens squad car became the secondary vehicle in the pursuit. (Complaint, dkt. # 1, ¶ 436, admitted in Answer, dkt. # 11.)

---

[1] Although this opinion is included in the part of Mr. DeFoe's report headed "Opinion 4" and the Court has excluded Opinion 4, it really goes with opinion 1, which dealt with what properly trained officers acting consistently with commonly accepted police practices would have done in the circumstances, rather than Opinion 4, which dealt with Mr. DeFoe's criticism of the Milwaukee Police Department Pursuit Policy.

22. The pursing officers, under the Milwaukee Police Department's Pursuit Policies, had the discretion to simply stop pursuing the Buick at any point if they had chosen to do so. (Dkt. # 55, Zens Deposition, 26:22-25.)

23. The four pursuing officers had no plan for terminating this dangerous pursuit through residential and commercial streets in metropolitan Milwaukee either by effecting the immediate apprehension of the Buick through the application of physical force or by just ending the pursuit, and did not consult with their superiors regarding the termination of the pursuit. (Dkt. # 55, Zens Deposition, 27:1-8; 32:9-12.)

24. Since the pursuit was occurring in darkness, in the early hours of the morning near tavern-closing time, continuing it indefinitely without any plan to effect the immediate apprehension of the fleeing driver created a situation in which "the prevailing traffic, roadway, or environmental conditions so enhance[d] the risk involved in continuing the pursuit that termination [was] warranted," and continuing the pursuit therefore violated para. G.3.c. of the Milwaukee Police Department Standard Operating Procedure on Vehicle Pursuits and Emergency Vehicle Operations. (Dkt. # 55-3, Zens Deposition, Exhibit 7.)

25. In the opinion of Plaintiffs' police practice expert, Scott DeFoe, which the Court has ruled admissible, the Defendants should have discontinued the vehicle pursuit based on the dangerous manner and excessive speeds while Mr. Aaron Fitzgerald was operating the stolen 2014 Buick Encore. (DeFoe Report, dkt. # 30-1, at 9.)

26. In the opinion of Plaintiffs' police practice expert, Scott DeFoe, which the Court has ruled admissible, if Fitzgerald had been allowed to flee, it would not have presented a danger to human life or caused serious injury, as the Defendant officers did not have any information that Fitzgerald or the Buick Encore had been involved in a violent crime and or that there was any other potential danger should Mr. Fitzgerald have been allowed to remain at large. (DeFoe Report, dkt. # 30-1, at 9.)

27. In the opinion of Plaintiffs' police practice expert, Scott DeFoe, which the Court has ruled admissible, the Defendants violated the then-current version of the Milwaukee Police Department vehicular pursuit policy by continuing the pursuit. (DeFoe Report, dkt. # 30-1, at 9.)

28. The Buick ultimately made a right turn from West Burleigh Street onto North 12th Street, after which it was traveling south. (Complaint, dkt. # 1, ¶ 442, admitted in Answer, dkt. # 11.)

29. The individual Defendants continued simply following the Buick without making any effort to stop it through the application of physical force. (Dkt. # 55, Zens Deposition, 32:9-12.)

30. Throughout the pursuit, the involved officers regularly radioed information about speed and conditions to their dispatcher and supervisor, and nothing interfered with this activity. (Dkt. # 55-1 Zens Deposition, Exhibit 1, DAC Log; dkt. # 53, Second Michaels Deposition, 23:2 – 24:13; see also Flores Aff., dkt. # 18-1, ¶ 17; Zens Aff., dkt. # 18-6, ¶ 17; Michaels Aff., dkt. # 18-3, ¶ 13; Pavlik Aff., dkt. # 18-4, ¶ 12; Schneider Aff., dkt. # 18-5, ¶ 19; dkt. # 18-7, Exhibits A-1 to A-4.)

31. As the Buick approached West Locust Street, it failed to stop for the red light at the intersection of North 12th Street and West Locust Street and struck Le'Quon J. McCoy's eastbound 2018 Jeep Renegade, which was proceeding through that intersection with the right of way. (Complaint, dkt. # 1, ¶ 444, admitted in Answer, dkt. # 11.)

32. The driver and sole occupant of the Jeep, Le'Quon J. McCoy, was pronounced deceased at the scene. The driver and sole occupant of the Buick was extricated from the vehicle and transported to Froedtert Hospital for treatment of serious injuries. (Complaint, dkt. # 1, ¶ 445, admitted in Answer, dkt. # 11.)

33. The Plaintiff has obtained copies of the pursuit policies of Brookfield, Green Bay, Greenfield, Hales Corners, Manitowoc, South Milwaukee, Wauwatosa, West Allis, West Milwaukee, Whitefish Bay, and the Wisconsin State Patrol, and lodged them with the Court. (Olson Declaration (dkt. # 62), ¶ 2, Exhibits 31-41 (dkt, # 62-1).) None of them contain an outright prohibition on the use of physical intervention tactics to terminate a vehicular pursuit. (*Id.*) In contrast, the Milwaukee Police Department's Standard Operating Procedure 660, entitled Vehicle Pursuits And Emergency Vehicle Operations, provides:

> 2. Intervention Options
>
> In the course of a vehicle pursuit, deliberate contact between vehicles or forcing the pursued vehicle into parked cars, ditches, or any other obstacle, boxing in, heading off, ramming, driving alongside the pursued vehicle while it is in motion, or the use of roadblocks is prohibited.

(Declaration of Jennifer Williams, Exhibit F, dkt. # 60-9, at 10.)

34. Over his career as a Milwaukee Police Officer, prior to August 1, 2019, Defendant Michaels had been involved in, he estimates, 50 to 60 vehicular pursuits. (Dkt. # 53, Second Michaels Deposition, 31:14 – 32:2.)

35. Some of those pursuits ended when the driver of the fleeing vehicle decided to give up and pull over. (Dkt. # 53, Second Michaels Deposition, 32:3-6.)

36. About twenty of the pursuits in which Defendant Michaels had been involved over his career as a Milwaukee Police Officer, prior to August 1, 2019, had ended when the pursued vehicle crashed into something, including trees, light poles, curbs and other vehicles. (Dkt. # 53, Second Michaels Deposition, 32:7-25.)

37. Sometimes people have been injured in those crashes. (Dkt. # 53, Second Michaels Deposition, 33:1-4.)

38. Prior to the McCoy crash, about five people other than the suspects in the pursued vehicles had been injured due to pursuits in which Defendant Michaels was involved. (Dkt. # 53, Second Michaels Deposition, 33:6-13.)

39. The City of Milwaukee produced in discovery a 139-page spreadsheet entitled "Injuries in Vehicle Pursuits," containing, for each vehicular pursuit from January 2, 2009, to December 24, 2019, the Incident Number and Incident Date, and, for each pursuit, an indication as to whether there was an injury to a city employee, whether there was an injury to the subject being pursued, whether there was an injury to one or more uninvolved third parties, and whether there was any property damage. (Olson Declaration, dkt. # 62, ¶¶ 5-6.)

40. Over the one-year period prior to the death of Le'Quon McCoy on August 1, 2019, City of Milwaukee police officers engaged in 59 vehicle pursuits that resulted in a crash in which a third party was injured. (Olson Declaration, dkt. # 62, ¶¶ 5-6.)

41. The Wisconsin Law Enforcement Accreditation Group Accreditation Guideline 6.1.4.4 says that a police department's written procedures governing pursuits should include "Guidance on use of roadblocks and other forcible means of stopping a fleeing vehicle." (Olson Declaration Authenticating WILEAG Accreditation Standards, Exhibit 45, dkt. # 64-1, 45-46.)

42. The Wisconsin Law Enforcement Accreditation Group Accreditation Guideline 6.2.11 provides in its entirety:

> 6.2.11 Roadblocks and Forcible Stopping Techniques
>
> A written directive requires the agency to regulate the use of roadblocks and forcible stopping techniques, specifies procedures for implementation, and includes, at a minimum:
>
> 6.2.11.1 Circumstances justifying the use of roadblocks or forcible stopping techniques.
>
> 6.2.11.2 Authority and responsibility for implementing and canceling a roadblock or forcible stopping technique and on-scene coordination of personnel.
>
> 6.2.11.3 Types of roadblocks or forcible stopping techniques permitted, such as moving, fixed, vehicle disabling tire deflation devices, ramming, etc.
>
> 6.2.11.4 Training on proper use of equipment and techniques.

(Olson Declaration Authenticating WILEAG Accreditation Standards, Exhibit 45, dkt. # 64-1, 51.)

Dated this Tuesday, January 02, 2024.

    Respectfully submitted,

    Estate of Le'Quon J. McCoy,
    By Special Administrator
    Antoinette L. Broomfield,
    Antoinette L. Broomfield as the assignee
    of the claims of Latredriana N. McCoy,
    and Antoinette L. Broomfield, on her own behalf,

    Plaintiffs

        By

        CARLSON, BLAU & CLEMENS, S.C.
        RANDALL M. ARONSON
        State Bar No. 1007585
        3535 W. Wisconsin Ave.
        Milwaukee WI 53208-3847
        Phone:    (414) 342-1000 x52
        Fax:    (414) 342-5060
        Email:    rmawcbc152@gmail.com

        FOX & FOX, S.C.
        MICHAEL R. FOX
        State Bar No. 1015173
        124 W. Broadway
        Monona, WI 53716-3999
        Phone:    (608) 258-9588
        Fax:    (608) 258-9105
        Email:    mfox@foxquick.com

        THE JEFF SCOTT OLSON LAW FIRM, S.C.
        JEFF SCOTT OLSON
        State Bar Number 1016284
        1025 Quinn Drive, Suite 500
        Waunakee, WI 53597-2502
        Phone:    608 283-6001
        Email:    jsolson@scofflaw.com

/s/   Jeff Scott Olson
_____

ATTORNEYS FOR PLAINTIFFS