# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ESTATE OF LE'QUON J. MCCOY, et al.,

        Plaintiffs,

v.                                                                              Case No. 2:22-cv-320

CITY OF MILWAUKEE,
JOSE FLORES, NIKOLAS ZENS,
DAVID MICHAELS and
DOUGLAS PAVLIK,

        Defendants.

## REPLY TO PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants submit this reply to Plaintiffs' Response in Opposition to Defendants' original Motion for Summary Judgment. [ECF No. 56 – 66.] As a threshold matter, Plaintiffs fail to identify even a single disputed fact, or any fact at all which would support a constitutional violation by any of the individually named Defendants. As Plaintiffs have failed to raise even the slightest showing of a violation by the named Defendants, this lawsuit is ripe for decision by the Court. Furthermore, Plaintiffs fail to prove any facts to meet the high burden of proof under *County of Sacramento v. Lewis*, 523 U.S. 833 (1998), or do they raise any facts in support of their alternate legal theory the Defendants had even a moment for any deliberation whatsoever to invoke a lesser standard. As such, their attendant *Monell* and state law claims should also be dismissed as a matter of law. For the reasons explained more fully below, Defendants request this Court grant their Motion for Summary Judgment, and dismiss all claims against them with prejudice.

# ARGUMENT

### I. PLAINTIFFS HAVE FAILED TO IDENTIFY ANY UNDERLYING CONSTITUTIONAL VIOLATION BY ANY INDIVIDUALLY NAMED DEFENDANT.

In their complaint, Plaintiffs allege that the four named Defendants violated "Le'Quon J. McCoy's right to substantive due process, secured to him by the Fourteenth Amendment to the Constitution of the United States, based on the reckless initiation, continuation, and conduct of a vehicular pursuit through the streets of Milwaukee that resulted in a crash that proved fatal to Mr. McCoy…" [ECF No. 1, ¶ 101.] In *County of Sacramento v. Lewis*, the Court states "Just as a purpose to cause harm is needed for Eighth Amendment liability in a riot case, so it ought to be needed for due process liability in a pursuit case. Accordingly, we hold that high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressible by an action under § 1983." *County of Sacramento v. Lewis,* 523 U.S. 833, 854 (1998).

As addressed in Defendants' initial brief, Plaintiffs have failed show how the Defendants' actions rose to the standard of "intent to harm" as mandated by the Supreme Court under *Lewis*. *Id.* [ECF No. 60, p. 7-12.]. None of the facts established in the record demonstrate any of the individually named Defendants had an intent to harm. Without establishing the intent, Defendants cannot be held liable under the Fourteenth Amendment or § 1983.

In their response brief, Plaintiffs attempt to muddy the waters and suggest there are two standards: a higher intent to harm, or a lower conscious disregard of a great risk of harm with an opportunity for deliberation. Just as poignant as their failure to point to any fact indicating—direct or circumstantially—an intent to cause harm, Plaintiffs also fail to make any showing the Defendants' had the requisite time for deliberation.

2

### A. Plaintiffs have failed to identify any moment for deliberation as Defendants pursued an unknown, fleeing subject in a rapidly evolving situation.

Citing *Sauers v. Burough of Nesquehoning*, Plaintiffs identify three categories of culpability based on how much time a police officer has to make a decision: 1) Actions that are taken in a "hyperpressurized environment" are not held to shock the conscience unless the officer has an intent to cause harm; 2) Actions that allows an officer to engage in "hurried deliberation" are not held to shock the conscience unless the officer has a conscious disregard of a great risk of serious harm; and 3) Actions that are taken with "unhurried judgments" with time for careful deliberation are held to shock the conscience if they are done with "deliberate indifference." *Sauers v. Burough of Nesquehoning*, 905 F.3d 711, 717-18 (3d Cir. 2018). This authority, while persuasive, is inapplicable to the facts in this matter, as well as in the context of 7th Circuit case law.

Even if the Court were to entertain applying a standard from the 3rd Circuit from *Sauers,* the Defendants' conduct is nowhere near the standard of conscious disregard of a great risk of serious harm or deliberate indifference. In this particular case, Defendant-officers, Detective Flores and Officer Zens, observed the suspect driver drive through a red light at a high rate of speed. [ECF No. 56, ¶¶ 1 – 2.] Officers then conducted a check on the suspect vehicle's license plate and discovered it was stolen. [ECF No. 56, ¶ 3.] After the officers activated their marked squad's emergency lights and sirens, the suspect vehicle fled. [ECF No. 56, ¶ 4-5.] A secondary squad, occupied by Officers Michaels and Pavlik, was tasked to join the pursuit of a then-unknown and unidentified fleeing suspect. [ECF No. 56, ¶ 6.] The pursuit lasted approximately five minutes, with a brief pause when the suspect driver stopped the vehicle to allow two passengers to exit and flee on foot. [ECF No. 59, ¶¶ 5, 7-8.] The pursuit ended shortly thereafter with a vehicle

collision. [ECF No. 59, ¶¶ 11-12.] At the time of the collision, Defendant-officers were only traveling, at maximum, 45 miles per hour. [ECF No. 59, ¶¶ 2-3, 11-12.]

Based on the above facts, Plaintiffs unsuccessfully assert that the Defendants had time to carefully deliberate the circumstances of the pursuit and make careful, unhurried judgments and these judgments were done with deliberate indifference. In support of their assertions, Plaintiffs cite to *Feist v. Simonson*, 222 F.3d 455 (8th Cir. 2000). In *Feist*, during a pursuit, the Defendant pursued a reportedly stolen vehicle down multiple, busy one way streets and, eventually onto the interstate. *Id.* at 459. The Defendant pursued the driver across a grassy median and exited the interstate only for the driver to re-enter the interstate via the off-ramp. *Id.* at 460. Defendant and three other squad vehicles continued the pursuit of the driver despite driving westbound in the eastbound lanes and speeds reaching 70 miles per hour. *Id.* The pursuit ended when the driver died in a vehicle collision. *Id.* The court found that, although the initial traffic stop and pursuit was lawful, based on how the pursuit progressed, this case was properly analyzed under the deliberate indifference standard. *Id.* at 465.

The subject pursuit did not escalate to the extremes seen in *Feist*. The Defendants did not drive on the wrong side of the road or drive over medians and, at the time of the collision, the Defendants and the suspect vehicle were only driving approximately 10 miles per hour over the speed limit. Plaintiffs seem to suggest that Defendants had the time and the ability to carefully deliberate their every move during this five-minute pursuit, but fails to pinpoint when or how this deliberation could have occurred during the pursuit.

Plaintiffs assessment of the facts of this case fails to consider the very nature of a vehicle pursuit. Fitzgerald was a danger to the public, and an unknown suspect. During the five minutes of the pursuit, the Defendant officers had little time to reflect on the situation and carefully

4

deliberate their options. After being spotted by police engaged in reckless driving, Fitzgerald continued driving recklessly through the streets with complete disregard for anyone else. The squad and body camera clearly demonstrate the intensity of the pursuit and the necessity for the Defendant-officers to make split-second decisions. Additionally, these same officers who Plaintiffs allege acted with conscious disregard of the risk of harm and deliberate indifference, are the same officers who ran towards the burning vehicles to assist both Fitzgerald and Plaintiff McCoy. [ECF No. 59, ¶¶ 13-14.] Plaintiffs' substantive due process claim should be dismissed as a matter of law.

### B. Plaintiffs misstate the law and facts to conclude a reasonable officer would have known pursuing a fleeing vehicle would have been "highly likely" to end with a fatality.

Plaintiff references two cases, *Hill v. Shobe* and *Bublitz v. Cottey*, when reaching the conclusion that "it was obvious to the Defendants that this pursuit would lead to an intersection collision with an uninvolved innocent motorist" [ECF No. 66, p. 13] and "Defendants had to have known that there was an excessive risk that conducting a vehicular pursuit in a densely populated urban area (where the fleeing vehicle was not only speeding but disregarding red lights) in such a way that the pursuit would continue until the fleeing vehicle ran out of gas or hit something would cause a collision." [ECF No. 66, p. 13.] While both cases have distinguishable facts from the present case, it is most notable these two case support this Court finding that Defendants lawfully executed a vehicular pursuit and are not in violation of Plaintiffs' substantive due process.

Plaintiffs first cite to *Hill* and pay particular attention to the court's findings that "motor vehicle accidents caused by public officials or employees do not rise to the threshold of a constitutional violation actionable under §1983, absent a showing that the official knew an accident was imminent but consciously and culpably refused to prevent it" and the standard of

5

whether or not a Defendant was "willing to let a fatal collision occur." *Hill v. Shobe,* 93 F.3d 418, 421 (7th Cir. 1996). In *Hill,* Officer Shobe, when not responding to an emergency, was driving over the speed limit without headlights, emergency lights or siren operating collided with plaintiff's vehicle, which eventually resulted in plaintiff's tragic death. *Id.* at 420. Based on these facts, the Court found that the resultant accident did not violate Hill's Fourteenth Amendment rights as "a plaintiff must demonstrate that the defendant had actual knowledge of impending harm which he consciously refused to prevent." *Id.* at 421.

Plaintiffs seem to base the entirety of their argument on the two quotes mentioned previously without providing any sort of support or considering the facts and findings of the Court in *Hill.* It is Defendants' position that if the Court found that an officer, who was not responding to an emergency and was driving at excessive speeds without headlights, emergency lights or sirens, did not have the requisite knowledge that an accident was imminent, the willingness to let a fatal collision occur or purpose to cause harm, then how could the Defendant-officers who were in pursuit of a dangerous criminal and were following all of the Milwaukee Police Department's established policies possess the requisite knowledge that an accident was imminent, willingness to allow a fatal collision to occur, or purpose to cause harm.

In *Bublitz v. Cottey*, 327 F.3d 485, 487 (7th Cir. 2003), defendant deployed a tire-spike system to stop a fleeing vehicle (notably a physical intervention tactic Plaintiffs complain were not generally available to officers in Milwaukee). While the tire-spike was successful in stopping the fleeing vehicle, the vehicle veered off course ultimately colliding with the plaintiffs' vehicle, resulting in the tragic death of two passengers. *Id.* The court found that the plaintiffs did not suffer a deprivation of rights and that the defendant officer could not know "of an excessive risk that

6

using the system under the conditions then existing would cause a collision, but nevertheless proceeded to deploy the deflation device." *Id.*

When making their decision, the Court acknowledged the defendant had adequate time to deliberate the use of the tire spikes. *Id.* at 491. The Court also noted that the decision of whether or not to use the tire spikes required the defendant to consider the rapidly changing traffic conditions and positions of the suspect and pursuing officers. *Id.* Deploying the system meant weighing all of the potential risks, including the risk posed by allowing the pursuit to continue onto public streets. *Id.*

Using the *Bublitz* facts and findings, Plaintiffs again stretch the present facts to fit their narrative that Defendants had to have known that there was an excessive risk in conducting a vehicular pursuit. However, with the Court's finding in *Bublitz*, the Defendants, who also had to consider a rapidly evolving pursuit and weigh all of the risks of allowing the pursuit to continue will also be found to have not violated the Fourteenth Amendment, Defendants could not have known, that under the conditions existing on August 1, 2019 a collision would occur.

## II. PLAINTIFFS' *MONELL* CLAIMS MUST BE DISMISSED AS THERE IS NO SUPPORT FOR AN UNDERLYING CONSTITUTIONAL VIOLATION.

Defendants have outlined above the Plaintiffs failure to properly claim a constitutional violation by any individually named Defendants. The Supreme Court held "that high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressible by an action under §1983." *Lewis* at 854. Because there is no underlying constitutional violation by a municipal employee, a municipality cannot be liable under *Monell*. *Sallenger v. City of Springfield, Ill.*, 630 F.3d 499, 504 (7th Cir. 2010). The

City of Milwaukee cannot be found liable under *Monell,* because Plaintiffs have failed to show that the Defendant-officers had an intent to harm.

As stated in Defendants' brief, a municipality is liable in a section 1983 claims under *Monell* if the constitutional violation was caused by "(1) an express municipal policy; (2) a widespread, though unwritten, custom or practice; or (3) a decision by a municipal agent with 'final policymaking authority.'" *Milestone v. City of Monroe,* 665 F.3d 774, 780 (7th Cir. 2011); [ECF No. 60, p. 15]. Without a constitutional violation under section 1983, the City of Milwaukee cannot be held liable under *Monell* and Plaintiffs' claim is moot.

If this Court were to find that a constitutional violation did exist, the City of Milwaukee would still not be liable under *Monell* because Plaintiffs have continued to fail to demonstrate that any constitutional violation was caused by a widespread custom or practice or a decision by a municipal agent with "final policymaking authority. As explained in Defendants' initial brief, in order for a municipality to be held liable under *Monell*, Plaintiffs must show that a widespread custom or practice exists and that policymakers were deliberately indifferent to the obvious consequences. [ECF No. 60, p. 16].

Plaintiffs attempt to circumvent the standard of a widespread custom or practice by arguing that this matter falls into a unique category where a single incident can give rise to *Monell* liability if this risk is obvious. [ECF No. 66, p. 16.] Defendants do not deny that a risk exists when any officer engages in any vehicular pursuit. Policing, by its very nature, is inherently risky. However, Defendants do deny that a single incident is sufficient to establish a claim under *Monell*. In their assessment of Milwaukee Police Department's Standard Operating Procedure (SOP) 660 and the related exception listing those who have been trained in stationary vehicle containment, vehicle assault techniques and stationary vehicle blocking maneuvers, Plaintiffs fail to consider, or

8

develop an argument, as to the dangers posed by less experienced officers implementing intervention techniques during a vehicular pursuit in a populated, urban area.

Alternatively, in support of their claim a constitutional violation is a widespread custom or practice, Plaintiffs cite to a spreadsheet entitled "Injuries in Vehicle Pursuits". [ECF No. 66, p. 19]. Plaintiffs note that the spreadsheet, which includes the vehicular pursuits that occurred from January 2, 2009 through December 24, 2019, indicates the Incident Number, Incident Date and an indication as to whether there was an injury to a city employee, an injury to the pursued subject, and injury to uninvolved third parties and whether there was property damage. Although this information appears relevant, statistics listing the number of vehicle pursuits engaged in by Milwaukee police officers that resulted in a crash in which an employee, a pursued subject or third party was injured does little to support Plaintiffs' claim that the City of Milwaukee is liable under *Monell* for their no intervention policy. The statistics cited to by Plaintiffs does not establish a widespread custom when such statistics fail to establish whether or not intervention techniques were used and how a city employee, pursued subject or an uninvolved third party was injured, and to what extent.

Plaintiffs have failed to establish that a constitutional violation occurred under section 1983 and, thus, the City of Milwaukee cannot be found liable under *Monell*. If this Court were to find that a constitutional violation did occur under section 1983, the City of Milwaukee is still not liable under *Monell* because there is no evidence to substantiate Plaintiffs' attempt to impose *Monell* liability based on a single incident or a theory of a widespread practice or custom.[1]

---

[1] Defendants acknowledge other circuits have allowed *Monell* claims to continue contrary to the principle a municipality is not liable absent an underlying constitutional violation; however, as Plaintiffs have not raised that argument in briefing, Defendants will not respond to an argument not made by Plaintiffs.

### III. PLAINTIFFS' STATE LAW CLAIMS MUST BE DISMISSED AS A MATTER OF LAW, AND NO VAGUE TECHNICALITY CAN SAVE THEM FROM THIS REALITY.

Plaintiffs do not object to this Court dismissing their state law negligence claims should their federal claims not survive summary judgment. [ECF No. 66, p. 22.] In the alternative, Plaintiffs ask, should the federal claims survive summary judgment, the Court to find Defendants have waived defense of those state law claims under a novel, yet outrageously vague theory of procedure. Plaintiffs point to a nonspecific, one-sentence paragraph in their original Complaint in support of this claim, in which they allege "[a]ll conditions precedent to this action … have been performed or have otherwise occurred." [ECF No. 1, ¶ 701.]

This is a challenge for both Defendants and this Court. It is impossible to respond to the paragraph in question, ¶ 701, with any specificity whatsoever, as it is so vague and non-specific itself. Instead, Plaintiffs would prefer to perpetrate a fraud upon Defendants and this Court by claiming Defendants have forfeited any response or defense because *their objection* to a paragraph so vague was equally vague as the originally vague allegation. The City is entirely unable to read opposing counsel or Plaintiffs' minds in the context of ¶ 701, and therefore unable to deny or admit with specificity anything as to a condition precedent accomplished or performed. Defendants did raise the failure of Plaintiffs to comply with the Notice of Claims state law in their original Answer. [ECF No. 11, p. 13, ¶ 6.] Any conclusion the Plaintiffs' state law claims can survive summary judgment through this creative, technical "gotcha," is both unfair, and unfounded. Accordingly, Plaintiffs' argument as to the viability of their state law claims under the "gotcha" theory must be denied.

## IV. PLAINTIFFS' STATE LAW CLAIMS MUST BE DISMISSED AS A MATTER OF LAW EVEN IF THEY HAD COMPLIED WITH THE NOTICE OF CLAIMS STATUTE.

Plaintiffs' state law claims must be dismissed as they fail to show any facts—disputed or agreed upon—which would support a finding of negligence in a rapidly evolving situation of short duration, in which the officer Defendants complied with training and department policy. Plaintiffs raise a number of arguments as to why and how they should be allowed to proceed on a theory of negligence should the federal claims survive summary judgment. First, Plaintiffs claim a reasonable jury could find the individual Defendants negligent. Second, Plaintiffs claim Defendants are not entitled to state immunity. Third, Plaintiffs claim public policy is not a bar to their claim, and the Defendants can and could be held vicariously liable for Plaintiffs' injury. This is entirely wishful thinking, and circular reasoning the Court should deny.

First, as explained and argued above, Plaintiffs fail to point to a single fact which would establish negligence or a theory of recovery based on the factual record. Instead, Plaintiffs take issue with the underlying policy by the Milwaukee Police Department (MPD). It is neither reasonable, nor prudent to conclude that adherence to training and policy is *per se* negligent, as their briefing seems to suggest. Instead, Plaintiffs suggest tactics which create a much higher risk of harm and injury prohibited by the Department under policy would have been somehow less negligent—yet Plaintiffs never develop this argument. Plaintiffs alternatively offer policies by neighboring *suburban* jurisdictions with less densely populated areas have better policies, and request this Court substitute its judgment for the professional law enforcement officials entrusted to promote public safety. This is not only nonsensical, and absurd, but patently undemocratic. The policies set forth by Plaintiffs in the neighboring suburban jurisdictions are easily distinguishable from the realities facing a large, densely populated, impoverished urban

11

jurisdiction. The Court must deny this attempt to circumnavigate common sense, and professional judgment.

## **CONCLUSION**

The Plaintiffs' Brief in Opposition to Defendants' Motion for Summary Judgment should be denied, and Defendants' Motion for Summary Judgment must be granted in its entirety for the reasons as stated above.

Dated and signed at Milwaukee, Wisconsin this 17th day of January, 2024.

                                          TEARMAN SPENCER
                                          City Attorney

                                          *s/Jennifer Williams*
                                          JENNIFER L. WILLIAMS
                                          Deputy City Attorney
                                          State Bar No. 1058087
                                          *Attorneys for Defendants*
                                          *The City of Milwaukee,*
                                          *Jose Flores, Nikolas Zens,*
                                          *David Michaels, and Douglas Pavlik*

**ADDRESS**:
200 E. Wells Street
CH 800
Milwaukee, WI 53202
Tele: 414-286-2601
Fax: 414-286-8550
Email: jewill@milwaukee.gov

1032-2022-381/289328